**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JENNY YOO COLLECTION, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 17-2666-JAR-GLR** |
| **ESSENCE OF AUSTRALIA, INC.,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiff Jenny Yoo Collection, Inc. ("JY" or Plaintiff) asserts claims against Defendant Essence of Australia, Inc. ("Essence") for alleged trade dress infringement in violation of section 43(a) of the Lanham Act,[1] trade dress infringement and unfair competition under Kansas common law, and patent infringement of its '120 Patent and '723 Patent. This matter is before the Court on Essence's Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) (Doc. 11). For the reasons explained in detail below, Defendant's motion to dismiss is granted in part and denied in part without prejudice to refiling with respect to the secondary meaning/collateral estoppel issue; Plaintiff is granted leave to amend its Complaint to address the defects identified in this Order.

**I.      Background and Procedural History**

The following facts are drawn from Plaintiff's Complaint; the well pleaded facts alleged therein are assumed to be true, as required on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[2]  JY designs and manufactures bridesmaid dresses, wedding gowns, and other wedding

---

[1]15 U.S.C. § 1125(a).

[2]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

apparel, including the "wildly popular, convertible 'Aidan' and 'Annabelle' bridesmaid dress designs," which were introduced in 2012 and are the subject of this litigation.[3] Plaintiff claims that "[r]eviewers, analysts and consumers immediately recognized the convertible dress as a 'game changer,'" because prior versions of convertible dresses "were bulky, awkward and utilitarian, requiring that conversions be made by tying together components of the dress in different and often unattractive configurations."[4] JY introduced both short and floor-length versions of the convertible dresses. The JY convertible dress design was "radically different" in that

> [i]t provided for use of lightweight material with two rear and two front convertible panels attached at the waist seam that blended seamlessly into the design of the bottom part of the dress, and could be easily raised by hand and rearranged for purposes of converting the dress into different neckline styles and inherently attractive, elegant looks.[5]

Plaintiff references this "unique—indeed, revolutionary ornamental feature that has become famous" throughout its Complaint.[6] Plaintiff states this feature is its trade dress, and asserts that none of the alternative designs for convertible dresses "feature two front and two rear panels attached to the waist that permit [the] elegant, seamless integration of panels into the bottom of the dress."[7] Plaintiff alleges that "it is fair to say that in the minds of most consumers, these famous designs, and the [JY] Trade Dress which they embody, have become synonymous

---

[3]Complaint, Doc. 1 ¶¶ 1–2.

[4]*Id.* ¶ 2.

[5]*Id.*

[6]*Id.*

[7]*Id.* ¶¶ 12, 34, 35.

with the designer Jenny Yoo and her company."[8]  Plaintiff asserts its Trade Dress has acquired

secondary meaning and is not functional.[9]

In connection with its "Aidan" and "Annabelle" dresses, Plaintiff secured design

patents—D 698,120 (the "'120 Patent") and D 744,723 (the "'723 Patent"), which "cover the

ornamental features" of the dress designs, "such as two rear and two front convertible panels

attached at the waist which blend naturally and seamlessly into the dress."[10]  Plaintiff also has

pending utility patent applications, which cover: (1) "functional features of the convertible

dresses, including the front and rear panels extending downward, attached to the front and rear

panes of the gathered skirt with fastening means that allow for multiple adaptations and

configuration" and (2) "unique methods for using a multi-use garment consisting of specified

functional convertible and adoptable elements."[11]

Plaintiff alleges that at least six of Essence's bridesmaid dresses—Long Solid Chiffon,

Style # 8472, Short Solid Chiffon, Style # 8471, Ombre Short Chiffon, Style #8471OM, Ombre

Long Chiffon, Style # 8472OM, Junior Short Chiffon Convertible Style #J4009, and Junior

Chiffon Convertible Style #J40010 (collectively the "Infringing Products")—misappropriate

Plaintiff's trade dress and constitute unfair competition, and infringe on one or more of

Plaintiff's intellectual property rights.  Plaintiff contends that the Infringing Products appear to

be actual JY dresses, with the same ornamental, non-functional and functional features, and that

when worn in public, the Infringing Products would be viewed as JY products.[12]  As proof of the

---

[8]*Id.* ¶ 27.

[9]*Id.* ¶ 63.

[10]*Id.* ¶ 29.

[11]*Id.* ¶ 30.

[12]*Id.* ¶ 53.

alleged infringements, Plaintiff includes side-by-side comparisons between JY's dresses and the

Infringing Products.[13]  As a result, Plaintiff alleges that Essence's adoption of its trade dress "has

caused, and is likely to cause, confusion or mistake, or to deceive consumers, purchasers, and

others into thinking that Essence's dress designs [shown in the Complaint] are [JY] dress

designs, or that they are sponsored by or affiliated with [JY], when they are not."[14]  Of particular

concern to Plaintiff is that its designs are "premium priced products," whereas Essence has a

"more budget conscious client base," and as such, the alleged infringements threaten to diminish

JY's goodwill and ability to sell its products at premium price points.[15]

In March 2016, Plaintiff filed complaints against Essence and two additional defendants,

David's Bridal, Inc. ("DBI") and Watters Designs, Inc., d/b/a Watters & Watters, and Wtoo

Partners, L.P. (collectively, "Watters"), in the Southern District of New York, alleging claims for

trade dress infringement in violation of section 43(a) of the Lanham Act, common law trade

dress infringement and unfair competition, infringement of the '120 Patent and the '723 Patent,

unfair business practices in violation of New York General Business Law ("GBL"), and unjust

enrichment (the "New York lawsuit").[16]  That court granted Watters' and Essence's motions to

dismiss for improper venue, with leave to Plaintiff to refile its claims in the proper venue.[17]  The

court also granted DBI's partial motion to dismiss all but the '793 Patent infringement claim

directed to the long dresses.  With respect to the Lanham Act and common law trade dress and

unfair competition claims, the court found that Plaintiff failed to allege sufficient facts to support

---

[13]*Id.* ¶ 56.

[14]*Id.* ¶ 58.

[15]*Id.* ¶ 59.

[16]*Jenny Yoo Coll., Inc. v. Watters Design, Inc.*, Nos. 16-2205 (VSB), 16-2647 (VSB), 16-3640 (VSB), 2017 WL 4997838, at *5 (S.D.N.Y. Oct. 20, 2017).

[17]*Id.* at *6–7.

a plausible inference that its alleged trade dress had "secondary meaning."[18] The court further held that prosecution history estoppel barred Plaintiff from claiming the DBI infringing products infringe the '120 Patent.[19] Finally, the court dismissed the New York deceptive practices and unjust enrichment claims.[20] That case subsequently settled while JY's motion for reconsideration was pending.[21]

In December 2017, Plaintiff filed this action against Essence in the District of Kansas, where Essence is incorporated and has its principal place of business.[22] Plaintiff also filed a similar complaint against Watters in the Northern District of Texas, which recently issued an opinion denying in part a similar motion to dismiss filed by Watters, which allegedly copied the JY dress design that is the subject of this litigation (the "Texas lawsuit").[23] That complaint is nearly identical to the Complaint filed in this action, with a different defendant and allegedly infringing products.[24] The Texas court upheld in part as properly pled JY's trade dress and '723 Patent claims.[25] JY was granted leave to amend to clarify what its trade dress covers beyond "two front panels and two rear panels attached to the waist."[26] The court dismissed JY's '120 Patent claim under the doctrine of prosecution history estoppel.[27]

---

[18]*Id.* at *8–9.

[19]*Id.* at *9–10.

[20]*Id.* at *10–11.

[21]*See Jenny Yoo Collection, Inc. v. David's Bridal, Inc.*, No. 16-CV-2647-VSB (S.D.N.Y. May 29, 2018).

[22]Doc. 1.

[23]*Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, No. 3:17-cv-3197-M, 2018 WL 3330025 (N.D. Tex. June 6, 2018).

[24]*See* Doc. 21, Ex. B.

[25]*Watters*, 2018 WL 3330025, at *2–6.

[26]*Id.* at *2.

[27]*Id.* at *5–6.

## II.    Standard

In order to pass muster under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[28]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[29]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[30]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[31]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[32]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[33]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[34]  "A claim has facial plausibility when the plaintiff pleads factual content

---

[28]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[29]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[30]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[31]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[32]*Id.*

[33]*Id.* at 679.

[34]*Id.*

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35]

Since December 2015, when Form 18 was eliminated from the Federal Rules of Civil Procedure,[36] the Federal Circuit applies the *Twombly* and *Iqbal* pleading standards to claims for direct patent infringement.[37]

## III.    Discussion

### A.  Trade Dress Infringement

The Lanham Act, 15 U.S.C. § 1125(a), provides a federal cause of action for trade dress infringement.[38]  "A product's trade dress 'is its overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques.'"[39]  To prevail on a trade dress infringement claim, a plaintiff must show: "(1) The trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) There is a likelihood of confusion among consumers as to the source of the competing products; and (3) The trade dress is nonfunctional."[40]  Essence argues that the Complaint fails to

---

[35]*Id.* at 678.

[36]Form 18 required a claim of direct patent infringement to set forth the following pleading elements: (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by "making, selling, and using [the device] embodying the patent; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages. *Lyda v. CBS Corp.*, 838 F.3d 1331, 1338 (Fed. Cir. 2016) (citations omitted).

[37]*Lifetime Indus., Inc. v. Trim-Lok, Inc.,* 869 F.3d 1372, 1376–37 (Fed. Cir. 2017) (noting Form 18 "effectively immunize[d] a claimant from attack regarding the sufficiency of the pleading") (citation omitted); *see Disc Disease Solutions, Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (concluding that a patent infringement complaint met the requirements of *Iqbal/Twombly*); *Artrip v. Ball Corp.*, No. 2018-1277, 2018 WL 2329742, at *5 (Fed. Cir. May 23, 2018) (stating that the plausibility standard applies to direct infringement claims).

[38]*Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

[39]*Id.* (quoting *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002)).

[40]*Id.*; 15 U.S.C. § 1125(a)(3)).

(1) adequately define the alleged trade dress; (2) sufficiently allege that the trade dress has secondary meaning; and (3) allege that the trade dress is nonfunctional.

### 1. Identification of the Trade Dress

A mark is "inherently distinctive if its intrinsic nature serves to identify a particular source. Such [marks] almost *automatically* tell a customer that they refer to a brand and immediately signal a brand or a product source."[41]  The Tenth Circuit has noted that "[s]everal courts have adopted a requirement that a plaintiff seeking to protect its unregistered trade dress do more than just point to the 'overall look' of its trade dress; it must 'articulat[e] the specific elements which comprise its distinct dress.'"[42]  "When the alleged trade dress appears on products that are not identical, courts have required the plaintiff to go further: '[A] plaintiff asserting that a trade dress protects an entire line of different products must articulate the specific common elements to be protected.'"[43]  "If the trade dress were vaguely defined as an 'overall look,' the case might 'degenerate into a question of quality, or beauty, or cachet.'"[44]

In this case, the Complaint identifies specific elements that comprise the trade dress: "two front and two rear panels attached at the waist in a manner that allows them to seamlessly blend into the bottom of the dress," regardless of the way in which the dress is worn or its length.[45] Essence argues that this type of broad imagery fails to provide the requisite trade dress clarity.

---

[41]*Forney Indus., Inc. v. Daco of Mo., Inc.*, 835 F.3d 1238, 1244 (10th Cir. 2016) (quoting *Sally Beauty*, 304 F.3d at 977) (citations and internal quotation marks omitted).

[42]*Id.* at 1252 (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997); *see also, e.g., Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014) ("[I]t is the plaintiff's duty to articulate the specific elements which comprise its distinct dress." (brackets and internal quotation marks omitted)); *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 415 (6th Cir. 2006) ("It will not do to solely identify in litigation a combination as 'the trade dress.' Rather, the discrete elements which make up that combination should be separated out and identified in a list." (brackets and internal quotation marks omitted)).

[43]*Id.* (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 118 (2d Cir. 2001)).

[44]*Watters*, 2018 WL 3330025, at *2 (quoting *Yurman*, 262 F.3d at 117).

[45]Doc. 1 ¶ 12.

In addressing this same issue, the Texas court found JY's complaint against Watters was "sufficiently specific about the trade dress having four panels and the placement of those panels in relation to the dress"[46]  The court went on to find, however, that

> the remainder of the description is too vague to give notice of what is protected beyond that. The Complaint does not define what "blend[ing] seamlessly and elegantly" means. Nor does it define "bottom of the dress," i.e., whether it refers to any portion of the dress below the waist or just the ends of the dress. Although the Complaint includes drawings of the Aidan and Annabelle dresses, which embody the trade dress, . . . the drawings are not helpful in resolving these ambiguities. . . Accordingly, Defendants and other competitors "are left to guess as to how to design a non-infringing product and are handicapped in defending against [Plaintiff's] claim of infringement."[47]

Moreover, the court noted, if JY is correct that "seamlessly blend[ing]" is a term of art in the fashion industry with an understood definition, JY should clearly explain this term to the court and the defendant in its Complaint.[48]

The Court finds the Texas court's conclusion persuasive and applies it to JY's similarly pled Complaint in this case.  The Court also agrees with the Texas court that because some elements of the alleged trade dress are sufficiently specific, it is not necessary to dismiss JY's claims entirely.[49]  Instead, JY is granted leave to amend its Complaint to clarify what its trade dress covers beyond "two front panels and two rear panels attached to the waist."

---

[46]*Watters*, 2018 WL 3330025, at *2.

[47]*Id.* (internal citations omitted).

[48]*Id.* n.2.

[49]*Id.* (citation omitted).

## 2. Collateral Estoppel/Secondary Meaning of the Trade Dress

A trade dress acquires secondary meaning "when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'"[50] A plaintiff asserting a trade dress may establish secondary meaning "through 'direct evidence, such as consumer surveys or testimony from consumers.'"[51] A plaintiff may also rely on circumstantial evidence, such as:

> (1) the length and manner of the trade dress's use; (2) the nature and extent of advertising and promotion of the trade dress; (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the trade dress and a particular product or venture; (4) actual consumer confusion; (5) proof of intentional copying; or (6) evidence of sales volume.[52]

In the New York lawsuit, DBI moved for dismissal of the trade dress infringement claims on grounds the complaint failed to plausibly allege the required non-functionality, secondary meaning, and scope and character elements.[53] In granting DBI's motion for partial dismissal, the New York court found that JY "has failed to plead the alleged dress acquired secondary meaning."[54] That court held:

> However, although Plaintiff contends that the "dress products embodying the Trade Dress became an 'instant success,'" and received "praise from reviewers and analysis for their 'game changing' features," Plaintiff does not specifically allege that the praise resulted from the alleged trade dress itself. Moreover, although Plaintiff alleges that the dress products were "featured nationwide" and "had strong sales,"—thus alleging facts related to sales success and media coverage (without indicating whether the

---

[50]*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000) (quoting *Inwood Labs, Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)).

[51]*Forney Indus., Inc. v. Daco of Mo., Inc.*, 835 F.3d 1238, 1253 (10th Cir. 2016) (quoting *Donchez v. Coors Brewing Co.*, 392 F.2d 1211, 1218 (10th Cir. 2004)).

[52]*Id.* (citing *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1148 (10th Cir. 2016)).

[53]*Jenny Yoo Collection, Inc. v. Watters Design Inc.*, 2017 WL 4997838, at *8 (S.D.N.Y. Oct. 20, 2017).

[54]*Id.* at *8–9.

coverage was solicited or unsolicited)—the DBI amended complaint does not contain any allegations with respect to its advertising expenditures (but merely references "consistent advertising,"), consumer surveys linking its trade dress to a particular source, or the length and exclusivity of use. Additionally, aside from its claims against defendants, Plaintiff does not allege any prior attempts to plagiarize its trade dress.[55]

Essence argues that JY's First and Second claims for trade dress infringement under the Lanham Act, and trade dress infringement and unfair competition under Kansas common law, are barred by the doctrine of collateral estoppel. Collateral estoppel, or issue preclusion, "bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."[56] In the Tenth Circuit, application of issue preclusion requires four elements:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[57]

Essence argues that all four elements were met when JY litigated this case in New York.

JY argues that because it has requested the New York court for leave to amend its claims against DBI to incorporate allegations of secondary meaning similar to the "bolstered" claims against Essence in this case, there can be no identity of issues with respect to the trade dress claims advanced here and in New York. JY further argues that a partial grant of a motion to

---

[55]*Id.* at *9 (internal citations omitted). By contrast, the Texas court found JY's complaint against Watters included sufficient allegations from which it could infer that the trade dress has acquired secondary meaning, noting that JY will eventually be required to offer actual evidence to support its allegations, but not at the pleading stage. *Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, 2018 WL 3330025, at *4 (N.D. Tex. June 6, 2018).

[56]*Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006) (quoting *Park Lake Res., LLC v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004)).

[57]*Id.* (quoting *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) (citation omitted).

dismiss is not a final order and that it has moved for reconsideration of the New York court's decision. Under these circumstances, JY argues, there can be no final adjudication on the merits that could give rise to claim preclusion, and JY has not had a full and fair opportunity to litigate the issue in the prior action.

The Court takes judicial notice that since the instant motion went under advisement, the parties settled the New York lawsuit and dismissed with prejudice all claims and counterclaims while JY's motion to amend and for reconsideration were pending.[58] It is not clear whether dismissal of the New York court's order alters the parties' positions on the preclusive effect on the secondary meaning issue.[59] The Court declines to perform this analysis without the benefit of briefing by the parties. And because collateral estoppel is an affirmative defense for which Essence carries the burden of proof, given the lack of briefing on these new developments, the Court cannot find that Essence has carried its burden of showing it is clearly established that it is entitled to judgment as a matter of law. Accordingly, the Court denies Essence's motion to dismiss on collateral estoppel grounds without prejudice to refiling.

### 3.      Functionality of the Trade Dress

The Supreme Court has promulgated two tests for determining the functionality of trade dress. First, under the "traditional" test, the Court has explained that "'product feature is functional,' and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'"[60] Second, under the "competitive necessity" test, a product feature is functional if it "is one the 'exclusive use of [which] would put

---

[58]*See Jenny Yoo Collection, Inc. v. David's Bridal, Inc.*, No. 16-CV-2647-VSB (S.D.N.Y. May 29, 2018).

[59]This issue is pending before the Texas court. *See Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, No. 17-CV-3197-M (N.D. Tex.).

[60]*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)).

competitors at a significant non-reputation-related disadvantage.'"[61]  The party asserting trade dress infringement bears the burden of demonstrating that the trade dress is non-functional.[62]

Essence argues that because the four panels allow the bridesmaid dresses to be converted into various configurations, they are essential to their use or purpose and thus ineligible for trade dress protection.  The Texas court addressed the same issue and concluded it was at least plausible that the overall placement of the four panels in relation to the bridesmaid dress identify JY as the manufacturer and distinguish the dress from those of JY's competitors.[63]  The Court agrees.

As the Texas court noted, courts must examine the functionality of the trade dress as a whole.[64]  Like the defendants in that case, Essence focuses on individual elements of JY's trade dress, ignoring that "a particular combination of functional elements may be protected if configured in an 'arbitrary, fanciful, or distinctive fashion.'"[65]  The Texas court found that under the "competitive necessity test," it is plausible that "there are sufficient alternative designs available to [JY's] competitors, i.e., convertible dresses that do not use the four panels arranged at the front and back of the waist, such that granting [JY] exclusive use of the trade dress would not put competitors at a significant non-reputation-related disadvantage."[66]  As the court further

---

[61]*Id.*; *see also Hartford House Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1273 (10th Cir. 1988) ("[T]he issue of functionality turns on whether protection of the combination would hinder competition or impinge upon the rights of others to compete effectively.").

[62]*See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000) (citing 15 U.S.C. § 1125(a)(3)).

[63]*Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, 2018 WL 3330025, at *3 (N.D. Tex. June 6, 2018) (citation omitted).

[64]*Id.*

[65]*Id.* (citations omitted).

[66]*Id.* (noting ¶ 25 of the Complaint states "both the Aidan and Annabelle designs feature the same unique placement and configuration of the flaps . . . a configuration that was a radical departure from prior convertible bridesmaid dress designs).

held, "because a design patent is granted only for non-functional designs, it can serve as evidence that a plaintiff's trade dress is nonfunctional."[67]  Finally, the court addressed the fact that JY had pending utility patent applications covering elements of the alleged trade dress.[68]  Although a utility patent is "strong evidence that the [elements] therein claimed are functional,"[69] pending applications do not bar a plaintiff, as a matter of law, from asserting the trade dress claim.[70]  Essence's motion to dismiss is denied on this ground.

### B.  Unfair Competition

Section 43(a) of the Lanham Act creates a federal cause of action for infringement of unregistered marks.[71]  The common law tort of unfair competition allows a similar cause of action to prevent confusion between parties' products.  To prevail under either theory, a plaintiff must prove: (1) it owns a valid, protectable trade dress and (2) defendant's product is so similar to plaintiff's it is likely to cause consumer confusion.[72]

Essence argues that Plaintiff's second claim for trade dress infringement and unfair competition premised on Kansas common law, is barred by the two-year statute of limitations for tort claims set forth in K.S.A. 60-513(a)(4).  JY alleges that "Essence . . . began producing and selling infringing products" sometime "around 2015."  Section 60-513(b) states a cause of action "shall not be deemed to have accrued until the act giving rise to the cause of action first causes

---

[67]*Id.* (citing *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1342 n.3 (C.C.P.A. 1982) (holding design patent, "at least presumptively, indicates that the design is not de jure functional."); *In re R.M. Smith, Inc.*, 734 F.2d 1482, 1485 (Fed. Cir. 1984) (existence of design patent "may be some evidence of non-functionality")).

[68]*Watters*, 2018 WL 3330025, at *3 n.5.

[69]*Id.* (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001)).

[70]*Id.* (citing U.S. Patent and Trademark Office, MANUAL OF PATENT EXAMINING PROCEDURE § 1502.01 (9th ed. 2018) ("Both design and utility patents may be obtained on an article if invention resides both in its utility and ornamental appearance.")).

[71]15 U.S.C. § 1125(a)(1)(A).

[72]*Scholfield Auto Plaza, L.L.C. v. Carganza, Inc.*, 979 P.2d 144, 148 (Kan. Ct. App. 1999).

substantial injury, or . . . until the fact of injury becomes reasonably ascertainable to the injured party."  Thus, JY's cause of action accrued on or before April 15, 2015, the date JY first contacted Essence by letter about its alleged infringement of its intellectual property portfolio. Because this action was filed on November 22, 2017, it is outside the two-year statute of limitations.[73]

JY does not seriously dispute that its state law claim is outside the statute of limitations, but argues that it is entitled to equitable tolling because the New York court granted Essence's motion to dismiss for improper venue, with leave to refile its claims against Essence in the proper venue.  JY argues that the "unique procedural history" of this case dictates that the statute of limitations be equitably tolled.  The Tenth Circuit has observed that "[e]quitable tolling may be appropriate where 'the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights.'"[74]  Neither of these circumstances is applicable here.  JY has not asserted any facts showing Essence actively misled it regarding its claims in this case.  Although JY raised the same federal statutory claims at issue here, but mistakenly did so in the wrong forum, that mistake does not extend to the Kansas common law claims, which were not asserted in the New York lawsuit.  Instead, JY asserted claims under New York state law for deceptive acts and unjust enrichment, which were dismissed by that court with prejudice.[75]  Equitable tolling does

---

[73]*See United States v. Foote*, 413 F.3d 1240, 1247 (10th Cir. 2005) (discussing whether claim under the Lanham Act is subject to Kansas's two-year statute of limitations for unfair competition claims under K.S.A. § 60-513(a)(4)).  Essence does not move for dismissal of JY's federal claims as untimely, as those claims were raised in the New York lawsuit and were dismissed without prejudice to refiling in the proper venue.

[74]*Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995) (quoting *Carlile v. South Routt Sch. Dist.*, 652 F.2d 981, 985 (10th Cir. 1981)).

[75]*Jenny Yoo Collection, Inc. v. Watters Design Inc.*, 2017 WL 4997838, at *10–11 (S.D.N.Y Oct. 20, 2017).

not apply when the plaintiff has "separate, distinct, and independent" remedies, and has simply slept on his rights with regard to one of them.[76]  Therefore, the timely filing of the federal claims and New York state law claims is not sufficient to lead to tolling of the Kansas common law claim.[77]

Accordingly, the Court dismisses JY's second cause of action brought under Kansas law. However, because JY asserts that it has not yet determined, under a conflict of laws analysis, whether the tort claims in Count 2 are governed under New York state law, the Court grants JY's request for dismissal without prejudice to amend its Complaint to bring claims pursuant to New York state law.

### C.  Patent Infringement

JY's third and fourth causes of action are for alleged infringement of the '723 Patent for long dresses and '120 Patent for short dresses.[78]  Essence moves to dismiss both claims as deficient because the designs are dictated by function, the patent drawings are inconsistent, and the accused designs do not infringe the designs in the patents.

### 1.  Scope of the Patent

Essence challenges both the '120 and '723 Patents on the ground that the claimed design is dictated by function.  "While a design may contain both functional and ornamental elements,

---

[76]*Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461 (1975).

[77]To the extent JY attempts to circumvent the statute of limitations by claiming Essence's activities constitute a "continuing violation," Kansas courts generally do not extend that theory beyond cases involving fraudulent concealment.  *See United Cities Gas Co. v. Brock Expl. Co.*, 984 F. Supp. 1379, 1389  (D. Kan. 1997) (declining to extend the continuing violation doctrine to action for statutory penalty or forfeiture, explaining that the doctrine would "do little more than render the statute of limitations superfluous and allow plaintiff to recover damages for a period when it unreasonably stood on its rights.").

[78]Both the New York and Texas courts dismissed the '120 Patent on grounds of prosecution history estoppel because JY surrendered the scope of the long dress designs in the '120 Patent; Essence does not move for dismissal on this ground, as its alleged Infringing Products include short dresses that fall under the scope of the '120 Patent.

the scope of a design patent "must be limited to the ornamental aspects of the design."[79]  The Complaint alleges that the scope of the patented design is "the two front and two rear panels attached at the waist in a manner that allows them to seamlessly blend into the bottom of the dress."[80]  Essence argues that JY makes no attempt to identify the non-functional aspects, if any, of its designs, but instead both the Complaint and concomitant utility patent applications discuss and boast about the functionality of its panels.  Moreover, Essence argues, a review of the actual design patents shows that they both illustrate the functionality of the panels by showing how to convert the dress by raising the front panels.  JY contends that the Complaint is replete with allegations concerning the ornamental nature of the dress design, emphasizing that it is the "seamless blending" of the front and rear panels into the bottom portion of the dress, regardless of the specific configuration of the dress, that is ornamental rather than functional.

The Texas court declined to dismiss JY's infringement claims on this ground, holding that JY "need not allege how the design is ornamental."[81]  That court relied on the Federal Circuit's decision in *Hall v. Bed Bath & Beyond*, where the court rejected a district court's requirement that a plaintiff allege in the complaint how the design is "new, original and ornamental, meriting the protection of a design patent."[82]  As the Texas court noted, "[a]ctually determining the scope of the design, including what is ornamental and what is functional, is reserved for the claim construction stage."[83]  The Court agrees and declines to dismiss JY's infringement claims for the '723 and '120 Patents on this ground.

---

[79]*Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016).

[80]Doc. 1 ¶13.

[81]*Watters*, 2018 WL 3330025, at *6.

[82]705 F.3d 1357, 1362 (Fed. Cir. 2013).

[83]2018 WL 3330025, at *6 (citing *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) ("'Where a design contains both functional and non-functional elements, the scope of the claim must be

## 2. Inconsistent Illustration

Essence also raises the issue of whether the drawings in the patents are inconsistent and therefore invalid. 35 U.S.C. § 112 provides that a patent

> specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same. . . . The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.[84]

For design patents, "[i]t is the drawings of the design patent that provide the description of the invention."[85] Essence maintains that from even a cursory review of the figures from JY's patents, it is impossible to discern the shape and size of the panels at issue, a defect it deems fatal to JY's infringement claims.

The Federal Circuit has observed that "an analysis under [35 U.S.C.] § 112 ¶ 2 is inextricably intertwined with claim construction."[86] Because the issue of whether a patent claim is indefinite is closely intertwined with claim construction, which has not yet occurred in this case, addressing Essence's indefiniteness argument would be premature.[87] The question of whether the claims meet the statutory requirements of § 112 ¶ 2 is a matter of construction of the claims, and numerous district courts have declined to entertain indefiniteness arguments at the

---

construed in order to identify the non-functional aspects of the design as shown in the patent.'"); *see also Hall*, 705 F.3d at 1362 ("[C]laim construction is not an essential element of a patent infringement complaint.").

[84]35 U.S.C. § 112(a) (2012).

[85]*In re Daniels*, 144 F.3d 1452, 1455 (Fed. Cir. 1998).

[86]*Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999).

[87]*See id.* at 1379.

pleading stage for precisely this reason, including the Texas court.[88]  The Court joins those

courts in denying Essence's motion to dismiss on the basis of indefiniteness as premature.

### 3. Infringement

Finally, Essence argues that even if the Court were to entertain that the patents were valid

and the designs non-functional, JY's claims are still facially defective because a comparison of

the dresses shows there can be no infringement.  "A design patent is infringed '[i]f, in the eye of

an ordinary observer, giving such attention as a purchaser usually gives, two designs are

substantially the same, if the resemblance is such as to deceive such an observer, inducing him to

purchase one supposing it to be the other.'"[89]  A patentee must prove infringement of a design

patent by a preponderance of the evidence.[90]  "Where the claimed and accused designs are

'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving

infringement as a matter of law."[91]

In applying the "ordinary observer" test, the Court applies the test to the patented design

in its entirety, not solely to "ornamental features in isolation."[92]  Thus, even though a design may

include both functional and ornamental features, application of the "ordinary observer" test

should focus on "deception that arises [as] a result of similarities in the overall design" of the

---

[88]*Watters*, 2018 WL 3330025, at *6 n.10 (deferring the issue until after claim construction); *see Stuart v. Rust-Oleum Corp.*, 272 F. Supp. 3d 1019, 1026 (S.D. Ohio 2017) (denying motion to dismiss under § 112 indefiniteness grounds as premature where claim construction had not yet occurred) (collecting cases). *But cf. In re TLI Commc'ns LLC Patent Litig.,* 87 F. Supp. 3d 773, 776, 798–804 (E.D. Va. 2015), *aff'd on other grounds,* 823 F.3d 607 (Fed. Cir. 2016) (dismissing patent claims as indefinite where motion to dismiss asserted § 112 ¶ 6, which allows an applicant to state a claim in the form of means for performing a specific function without reciting in the claim the structure corresponding to that function; motion was decided after the pleading stage, by which point the claim construction positions were fully briefed and the court had heard extensive oral argument).

[89]*Ethicon Enco-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008)).

[90]*Id.* at 1335 (citing *Egyptian Goddess,* 543 F.3d at 679).

[91]*Id.* (citing *Egyptian Goddess*, 543 F.3d at 678).

[92]*Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006)).

products."[93]  As stated, the test for infringement is whether an ordinary observer would be deceived into believing that the accused product is the same as the patented design.[94]  Further, while elements of a design "may indeed serve a utilitarian purpose . . . it is the ornamental aspect that is the basis of the design patent."[95]  Infringement will not be found unless the accused article "embod[ies] the patented design or any colorable imitation thereof."[96]  District courts have granted motions to dismiss design patent infringement claims under Rule 12(b)(6) based on the ordinary observer test where, as a matter of law, the court finds that no reasonable fact-finder could find infringement.[97]

The "ordinary observer" test involves a two-tiered approach.  First, the court compares the claimed design and the accused product to determine if "the claimed design and the accused design [are] . . . sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer."[98]  Second, if the claimed and accused designs are not plainly dissimilar, the court compares the claimed and accused designs with the prior art.[99]

> When the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art. If the claimed design is close to the prior art designs, small differences between the accused design

---

[93]*Amini Innovation*, 439 F.3d at 1371.

[94]*Egyptian Goddess*, 543 F.3d at 670.

[95]*L.A. Gear, Inc. v. Thom Mean Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).

[96]*Egyptian Goddess*, 543 F.3d at 678 (quotation omitted).

[97]*See Performance Designed Prods. LLC v. Mad Catz, Inc.*, No. 16cv629-GPC, 2016 WL 3552063, at *7 (S.D. Cal. June 19, 2016) (collecting cases).

[98]*Egyptian Goddess*, 543 F.3d at 678.

[99]*Id.*

and the claimed design assume more importance in the eye of the hypothetical observer.[100]

"Where there are many examples of similar prior art designs . . . differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art."[101]

In its Complaint, JY identifies the similarities between the '723 and '120 Patents and photos of the Essence Infringing Products.[102] These side-by-side comparisons highlight the bodice, waistband, and front and rear panels of the respective products. Essence does not dispute the authenticity of the JY photos of the Infringing Products, but complains they are too small and submits its own photos of the accused product highlighting side-by-side differences to the parts of the respective products noted by JY.[103] Essence argues these comparisons show that every part of the accused dress differs in appearance from the patented design; and because they are distinct and dissimilar, there can be no infringement as a matter of law. JY objects to the introduction of evidence outside the pleadings and disagrees that the comparisons between the drawings and photographs set forth in Essence's Memorandum reveal any meaningful or material differences. Generally, "[w]hen parties submit materials outside of the pleadings in support of or in opposition to a Rule 12(b)(6) motion, a court has broad discretion whether to accept and consider them."[104] The Court finds that Essence's photographs are outside of JY's complaint and raise material issues of fact that will not be considered at this stage in the

---

[100]*Crocs*, 598 F.3d at 1303 (citation omitted).

[101]*Egyptian Goddess*, 543 F.3d at 678.

[102]Doc. 1 ¶ 87 ('723), ¶ 93 ('120).

[103]Doc. 11 at 24–30.

[104]*Dodson v. Anderson*, 319 F. App'x 698, 702 (10th Cir. 2008).

litigation.[105]  In other words, it is inappropriate to consider Essence's photographs in connection with the Rule 12(b)(6) motion since the sufficiency of the Complaint is the only issue before the Court.[106]

The issue of whether the products are substantially the same under the ordinary observer test is typically the province of the finder of fact.[107]  Without reaching a conclusion on the ultimate question of infringement, the Court agrees with JY that the '723 and '120 Patents and the Infringing Products are not so plainly dissimilar as to justify dismissal of the Complaint under Rule 12(b)(6) at step one.  The Court has reviewed the side-by-side comparisons in JY's Complaint and, although there appear to be differences in the designs with respect to the angle and drape of the front and rear panels, the Court cannot conclude based on those differences alone that the overall designs are not substantially the same as a matter of law.  Notably, the designs need not be identical for a finding of infringement.[108]  Accordingly, the Court finds that JY has identified enough similarities to state a plausible claim for relief and that the question of whether the Infringing Products are substantially the same is more properly resolved by the finder of fact.

---

[105]Neither party requests the Court to convert the motion to dismiss to a motion for summary judgment, and because the Court excludes the matters outside the pleadings from its Rule 12(b)(6) analysis, the Court finds conversion is unnecessary. *See* Fed. R. Civ. P. 12(d).

[106]*Dodson*, 319 F. App'x at 702 (holding that a court's function in analyzing a Rule 12(b)(6) motion "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.") (citing *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006)).

[107]*See Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) (noting that in design patent infringement cases, "conclusions about reasonable jurors are difficult to make on an issue of this factual dimension").

[108]*Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009) (noting that "minor or trivial differences . . . necessarily exist between any two designs that are not exact copies of one another" and do not preclude a finding of infringement).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 11) is **granted in part and denied in part, without prejudice.**  Plaintiff is granted leave to amend its Complaint to address the defects with respect to its trade dress claim and state common law claim addressed in this Order, **within fourteen (14) days of the date of this Order.**  Defendant's motion to dismiss with respect to the secondary meaning/collateral estoppel issue is also **denied without prejudice to refiling**.

**IT IS SO ORDERED.**

Dated: <u>August 6, 2018</u>

<u>S/ Julie A. Robinson</u>
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
