## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JENNY YOO COLLECTION, INC., a New York corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 17 Civ. 02666 (JAR) |
| ESSENSE OF AUSTRALIA, INC., | ) ) ) | |
| Defendant. | ) ) | |

### AMENDED COMPLAINT FOR PATENT INFRINGEMENT, FEDERAL TRADE DRESS INFRINGEMENT AND COMMON LAW TRADE DRESS INFRINGEMENT WITH JURY DEMAND[1]

Plaintiff Jenny Yoo Collection, Inc. ("Plaintiff" or "JY") complains and alleges as follows against Essense of Australia, Inc. ("Essense" or "defendant").

### THE NATURE OF THE ACTION

1.     JY was formed when its founder, Chief Executive Officer and President, Jenny Yoo, recognized the absence in the market of stylish, quality bridesmaid dresses. The Company's initial focus was to create a collection of bridesmaid dresses to fill this gap in the market. JY launched its first collection of bridesmaid dresses in 2002. Since then, JY has expanded dramatically, and Jenny Yoo has designed many stylish and well-received wedding dress and bridesmaid dress collections.

2.     JY revolutionized the bridal gown industry in 2012 when it introduced its wildly popular, convertible "Aidan" and "Annabelle" bridesmaid dress designs, products that

---

[1] Plaintiff was granted leave to amend its Complaint in the Memorandum and Order filed on August 7, 2018 at ECF Doc. No. 25. A copy of Plaintiff's Complaint redlined to show Plaintiff's changes in the Amended Complaint is annexed hereto as Exhibit "A."

Formatted: Font: Times New Roman

Formatted: Font: Times New Roman

dramatically changed the way consumers view bridal and bridesmaid dresses. JY markets these dresses under the "NABI by Jenny Yoo" and "Jenny Yoo Collection" trademarks. Reviewers, analysts and consumers immediately recognized the convertible dress as a "game changer." Before the introduction of JY's convertible dress, convertible dresses were bulky, awkward and utilitarian, requiring that conversions be made by tying together components of the dress in different and often unattractive configurations. The JY convertible dress design was radically different. It provided for use of lightweight material with two rear and two front loose panels attached and hung from the waist seam that blend seamlessly over the natural soft drape and folds of the skirt, and could be easily raised by hand and rearranged for purposes of converting the dress into different neckline styles and inherently distinctive and sophisticated looks. Because the design permitted conversion of the dress into different "looks," bridesmaids wearing the dresses could express their individuality while wearing matching dresses. This innovative, elegant, versatile and visually distinct design was highly appealing to consumers, and it found almost immediate success and acclaim within the market for bridal dresses (and in particular, bridesmaid dresses). While the JY convertible dress can be worn in many different configurations, it also can be worn in its natural form as a strapless dress without moving the panels from their initial position.

3.       JY's bridesmaid and wedding designs, including the convertible dress designs at issue in this case, have been featured on various network television programs, such as NBC's "Today Show" and "Fab Life", local television programs in major markets throughout the United States, and in major publications such as Martha Stewart, Martha Stewart Weddings, The Knot, Brides Magazine and many others. JY's convertible bridesmaid dress designs are aesthetically pleasing and have become famous both within the industry and among consumers.

2

4.      JY's creative achievements have resulted in intellectual property protection for its innovations, including issued design patents, pending utility patents, trademarks, and trade dress protection. Nevertheless, JY's innovations have been the subject of widespread emulation by its competitors, who have attempted to capitalize on JY's success by imitating JY's innovative, elegant, and distinctive product designs. One of the principal imitators is Essense, which has introduced and sold lines of bridesmaid dresses, which compete directly with JY's patented convertible dresses. Instead of pursuing independent product development or licensing products from third parties, Essense has chosen to slavishly copy JY's innovative and distinctive design, in violation of JY's valuable intellectual property rights. Essense passes off JY's famous convertible dress designs as its own. As alleged below in detail, Essense has made its lines of convertible dresses work and look like JY's patented dress designs, engaging in widespread patent and trade dress infringement. Essense has even misappropriated and copied JY's distinctive approach to marketing, using models wearing its "knock-off" dresses in poses and presentations that are substantially identical to the poses and presentations presented by JY on its website and in its advertising and promotional materials.

5.      By this action, JY seeks to put a stop to Essense's illegal conduct and obtain compensation for the violations that have occurred thus far.

**THE PARTIES**

6.      JY is a New York corporation having its principal place of business at 132 West 36th Street, 9th Floor, New York, New York 10018.

7.      Essense is a Kansas corporation with its principal place of business at 8135 Lenexa Drive, Lenexa, Kansas 66214.

8.      Essense offers and sells bridal gowns, and dresses for bridesmaids, flower girls,

3

junior bridesmaids, and mothers of the bride under its Essense of Australia, Stella York, Martina Liana, and Sorella Vita Brands.  Its bridal gowns and dresses are sold worldwide, and in over 279 stores within the United States.  Essense is a prominent, well-known competitor of JY.

## JURISDICTION

9.      This Court has subject matter jurisdiction under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity); 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks); 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws); and/or 28 U.S.C. § 1367 (supplemental jurisdiction).

10.     This Court has personal jurisdiction over Essense because it is incorporated in this State and its principal place of business is in this district.

## VENUE

11.     Venue is proper within this District under 28 U.S.C. § 1400(b) because Essense it is incorporated in this State and its principal place of business is in this district.

## BACKGROUND

### JY's Innovations

12.     JY is a leading designer and manufacturer of bridesmaid gowns, wedding gowns, and other wedding apparel.  JY was founded by Jenny Yoo, who launched her first collection of bridesmaid dresses in 2002.  As a result of the extraordinary creativity of Jenny Yoo and JY's significant investment in research and development, in 2012, JY introduced into the market its innovative, convertible "Aidan" and "Annabelle" bridesmaid dress designs that have changed the face of the bridal fashion industry.  JY's convertible bridesmaid gowns were unique when JY introduced them into the market because of the revolutionary trade dress incorporated into them.

4

JY's trade dress, as shown in the drawings herein below, includes, as a special feature, front and back panels of fabric that overlay the full length of the skirt ending just above the bottom hemline. The panels are stitched into the waist seam and naturally hang down the skirt of the dress. The panels seamlessly blend with the dress, regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress. When the panels are in the hanging position as an overlay of the skirt, they layer over the full length of the entire skirt and seamlessly blend with the natural and gentle soft folds, creating the illusion, unique when introduced by JY, that the panels and skirt are integrated. Furthermore, if the wearer chooses to style the dress into alternate necklines by raising one or more of the panels upwards and over the bodice into different configurations of the dress, the panels once again seamlessly blend into the bodice of the dress. This creates the illusion that the panels smoothly blend uninterrupted into the bodice, skirt and/or entire dress to create a singular, integrated look. The concept of "seamless blending" means that from the point of view of an ordinary observer, it will be noticeable that the dress contains front and back panels separate from other components of the dress, which when integrated into the dress create looks that are smooth and continuous, with no apparent gaps or spaces between one part or the next, and without seams or obvious joins. Thus, while the front and rear panels are noticeable to the ordinary observer as distinct components of the dress, nonetheless, they create the impression of an integrated, natural, elegant, unified dress design. This ornamental, non-functional special feature as described above has become JY's renowned Trade Dress (the "JY Trade Dress"), instantly recognizable among consumers and industry professionals alike as being associated with JY.

13.     As a direct result of its innovative and distinctive design and its cutting-edge

technological features, including the JY Trade Dress, JY's convertible bridal gowns were an instant success, and they immediately became uniquely associated with JY as its source. Reviewers and analysts universally praised JY's bridesmaid gowns for their "game changing" features.  Sales were strong, and the popularity of this new design contributed substantially to the success of the JY brand and JY's reputation as a leader in the market for bridal and bridesmaid designs.

14.     JY's convertible bridesmaid dresses, sold under the "NABI by Jenny Yoo" and "Jenny Yoo Collection" brand names, are sold in major retail stores throughout the United States, such as, for example, Nordstrom.  In substantial part because of these convertible bridesmaid dress designs and their unique JY Trade Dress, Jenny Yoo has become recognized nationally as one of the leading and most successful designers in the bridal industry.  Since 2012, JY has sold more than 132,000 of these convertible dresses, and over 37,000 in Nordstrom alone, resulting in revenues from this single source in excess of $30 million total and over $10 million from sales at Nordstrom.

15.     In addition to Nordstrom, JY's convertible bridesmaid dresses are sold at other major bridal and general retailers such as Saks Fifth Avenue, Lord & Taylor, BHLDN Weddings, Kleinfeld, ModCloth, Amazon Fashion, Brideside, Bella Bridesmaids, and Vow to be Chic, each of which displays JY's convertible bridesmaid dresses on its website, and in its marketing and promotional efforts such as catalogs, advertisements, in-store events, and many others.  The advertisements and promotions of the convertible dresses by these major retailers have contributed substantially to the national fame of the JY Trade Dress.

16.     From 2012 through 2017, JY spent more than $600,000 on advertising for dresses sold under the "NABI by Jenny Yoo" brand name, which include the "Aidan" and "Annabelle"

6

dresses embodying the JY Trade Dress.  The major retailers who have carried the dresses have also expended substantial sums to advertise them in their catalogues, print advertisements, web-sites and other advertisements and promotions.

17.    JY also actively utilizes social media to market and promote its products, including the JY Trade Dress embodied in the convertible dresses at issue in this case. JY's Facebook page has 17,046 followers nationwide, and JY uses it to announce its various trunk shows and other events which feature the bridesmaid dresses at issue in this case which embody the JY Trade Dress.  JY also utilizes Twitter and Instagram to market and promote its products, including the convertible dresses at issue here.  JY has about 84,800 followers nationwide on its "jennyyoonyc" Instagram account alone, and a search on Instagram for JY bridesmaid dresses reveals numerous other Instagram accounts that show JY's bridal dresses including those at issue in this case.  Photographs of JY's famous convertible dress embodying the JY Trade Dress are ubiquitous on Instagram.  Photographs of JY's famous convertible dress embodying the JY Trade Dress on Tumblr and Pinterest are also extensive.

18.    The national fame of the JY convertible dresses that embody the JY Trade Dress is demonstrated by a search using the Google web browser for "Jenny Yoo bridesmaid dresses" which yields 2,600,000 results.  Another search for "Jenny Yoo convertible bridesmaid dresses" reveals 580,000 results.  Likewise, a search for "Jenny Yoo Collection" (the company name) yields 2,940,000 results.  This demonstrates that the JY convertible dresses and JY Trade Dress have achieved a dynamic, remarkable presence in social media and on internet-based websites.

19.    Further, major publications within the bridal gown industry and entertainment industry regularly feature JY's convertible dresses and the JY Trade Dress in their postings on Facebook, Twitter, Instagram, and Tumblr, among other such websites.

7

20.    JY showcases the "Aidan" and "Annabelle" dresses at her show room locations in New York, NY, and Chicago, IL.  JY also markets and advertises its products at trunk shows, bridal shows, and numerous other events all across the United States.  By promoting its convertible dress products at these trunk shows and industry trade events, by developing a strong social media presence on Facebook and Instagram, among other social media websites, and through the advertising and promotional efforts of its retail customers (such as those identified in paragraph 16 above), JY and the JY Trade Dress at issue in this case have achieved widespread recognition in the bridal industry and among consumers and have become immensely famous and popular.

21.    JY also regularly publishes catalogs and press releases and maintains an extensive, sophisticated, and visually compelling website, which promote JY's products and make the brand, and the convertible dress products, known nationally and internationally as being those of JY.

22.    In 2012, JY began a national campaign to market and sell "Aidan" style number 1282 convertible bridesmaid dress, now sold under the "NABI by Jenny Yoo" and "Jenny Yoo Collection" brands.  The following is a drawing that shows this dress in configurations which vary depending upon the placement of the panels attached to the front and rear waist band of the dress, together with a technical sketch showing the placement of two panels hanging downward from the front waist portion of the dress and two panels hanging downward from the rear waist portion of the dress.  In each case in which the JY Trade Dress is shown below, the panels blend seamlessly into the bottom portion of the dress and/or the bodice of the dress, depending on the specific configuration.  Although the panels always remain noticeable as distinct components of the dress, they seamlessly blend into the dress to create a smooth and integrated appearance,

without noticeable gaps. This design was revolutionary, because no previous design for a convertible bridesmaid dress involved placement of panels in this manner, and it created an aesthetically pleasing, new, non-obvious, non-functional look.



"Aidan" convertible dress (Style #1282)

23.     Soon thereafter, JY also introduced another version of essentially the same design, which it calls "Annabelle, style number 1452", and sells under the "NABI by Jenny Yoo" and "Jenny Yoo Collection" brand names. The "Annabelle" is essentially the same as the "Aidan" except that the band attached to the waist in the "Aidan" design is removed, and replaced with an attachable sash. It contains the same revolutionary feature as the "Aidan"— namely, two front and two rear flaps attached to the waist. It also contains the same distinctive, non-functional JY Trade Dress. The following is a sketch showing the Annabelle design, and a technical drawing of the design.

9



24.     With the exception of the waist band, the ordinary observer would find no discernable difference between the Aidan and Annabelle designs.    Moreover, in most configurations, the difference in the waist band is not noticeable.   This is because in many configurations of the Annabelle design, one or more of the panels are wound around the waist, and the appearance at the waist then becomes exactly the same as the Aidan design.   Consumers and industry professionals alike would recognize that both the Aidan and Annabelle designs feature the same unique JY Trade Dress described with specificity above—a special and distinct feature that was a radical departure from prior convertible bridesmaid dress designs.   This special feature, the JY Trade Dress, is a unique and now famous feature of both the Aidan and

10

Annabelle designs.  This non-functional, unique and distinctive JY Trade Dress contributed substantially to the widespread popularity of the Aidan and Annabelle designs.  From the standpoint of the ordinary observer, these two designs and their distinctive JY Trade Dress are essentially the same—because of the placement of and uses for the convertible panels and their seamless blending into the bottom and/or bodice of the dress regardless of the specific configuration of the panels.

25.     Soon after JY introduced the Aidan and Annabelle dresses into the market, they became immensely popular.  These "NABI by Jenny Yoo" designs received extensive unsolicited press coverage and many positive reviews both within industry circles and publications that focus on the consumer market.  And sales skyrocketed.  At present, JY's "Aidan" and "Annabelle" dresses are on sale in major department stores and prominent bridal shops and boutiques in virtually every major metropolitan market in the United States (and most small towns as well).  They are also sold on numerous on-line, e-commerce websites.

26.     The fame of these dress designs is underscored by the existence of a substantial secondary market for these dresses on eBay—where consumers sell used clothing.  At any one time, hundreds, and sometimes more than 1,000, "Aidan" and "Annabelle" dresses are available for resale on eBay.

27.     Indeed, year after year, the "Aidan" and "Annabelle" dress designs are among the best-selling bridesmaid designs nationwide.  So widespread is their penetration within the market for bridesmaid and wedding dresses, that the unique look and configuration of these designs, including most importantly, the JY Trade Dress described above, is now closely associated in the minds of average wedding and bridal-wear consumers with JY (and Jenny Yoo as the designer and founder of JY).  It is fair to say that in the minds of most consumers, these famous designs,

11

and the JY Trade Dress which they embody, have become synonymous with the designer Jenny Yoo and her company, JY.

28.     Within the bridal dress design industry, at both the wholesale and retail store level, the "Aidan" and "Annabelle" dress designs have become ubiquitous.  Consumers who see these dresses hanging in racks in stores or photographs of them on e-commerce websites invariably associate the look and configuration of these dresses with JY and its founder, Jenny Yoo.  The "Aidan" and "Annabelle" convertible dress designs, sold under the "NABI by Jenny Yoo" and "Jenny Yoo Collection" brand names, have become among the most well-known bridal dress designs in the United States, closely associated in the minds of ordinary consumers with JY and its founder, Jenny Yoo.

## JY'S INTELLECTUAL PROPERTY RIGHTS

### JY's Design Patents

29.     JY has protected its innovative designs and cutting-edge technologies through a broad range of intellectual property rights. Recognizing that its innovative designs involve both unique ornamental designs and functional innovations, JY has sought both design patents and utility patents.  Since 2012, JY has notified the public in its website and marketing materials that these patents were either pending or issued (as appropriate in the time frame).  The United States Patent Office has issued the design patents listed below. JY's design patents cover the ornamental features of JY's "Aidan" and "Annabelle" bridesmaid dress designs, such as two rear and two front convertible panels attached at the waist which blend naturally and seamlessly into the dress. JY owns all right, title, and interest in and to each of the asserted design patents listed below, copies of which are attached as Exhibits 1 and 2. The designs covered by these patents are distinctive and serve to identify JY as the source of the bridesmaid dresses which embody

12

such designs. Moreover, the features covered by these patents are not dictated by function; rather, they are the product of aesthetic choices made by Jenny Yoo when she created the designs.

| Patent Number | Title |
|---|---|
| D 698,120 (the "'D120 patent") | Dress |
| D744,723 (the "'D723 patent") | Convertible Dress |

### JY'S Utility Patent Applications

30.     JY's utility patent applications cover many of the elements that have come to be associated with JY's convertible bridesmaid dresses. These include (a) a patent covering functional features of the convertible dresses, including the front and rear panels extending downward, attached to the front and rear panels of the gathered skirt with fastening means that allow for multiple adaptations and configuration, and (b) a patent covering unique methods for using a multi-use garment consisting of specified functional convertible and adoptable elements.

31.     These pending patent applications include the following to which JY owns all rights, title, and interest.

| Patent Number | Title |
|---|---|
| 13/67257,422 (the "'422 application") | Multi-Use Garment |
| 14/720,453 (the "'453 application") | Multi Use Garment |

### JY's Trademarks and Design Marks

32.     JY owns United States trademark registration number 3339930 for "Jenny Yoo Collection", which was registered on November 30, 2007, and acknowledged by the United States Patent and Trademark Office as incontestable on September 13, 2013. JY also owns

13

United States trademark registration number 4524466 for "NABI by Jenny Yoo", which was registered on May 6, 2014.

33.    JY also owns common law trademark rights for the brand names, "NABI by Jenny Yoo", "Aidan" and "Annabelle" which it has used in commerce to market its convertible dress designs since 2012.  JY owns trademark registrations for the combined word/design marks "NABI by Jenny Yoo", registration numbers 5,487,027 and 5,4587,026, both of which were registered on June 5, 2018.

**JY's Trade Dress**

34.    As described above, JY's Annabelle and Aidan bridesmaid dress designs, as covered by the aforesaid design patents, share a unique, distinctive, non-functional, ornamental feature, the JY Trade Dress, that has become associated among consumers and industry professionals alike with JY as its source.

35.    The JY Trade Dress encompasses the overall design and appearance of the "Aiden" and "Annabelle" dresses that makes them associated among consumers and industry professionals alike with JY as its source.  Accordingly, JY has acquired common law rights in this JY Trade Dress.

36.    The character and scope of the JY Trade Dress is that the dresses are made of lightweight material with: (i) a strapless upper garment (bodice) portion with a sweetheart neckline covering an area above the waist of the user having a front and rear portion; (ii) a skirt having a front and rear portion attached to the upper garment (bodice); and (iii) two front panels and two rear panels that overlay the full length of the skirt ending just above the bottom hemline.

37.    The JY Trade Dress, as shown in the drawings herein, includes as a special

14

feature~, two front and two back panels of fabric that overlay the full length of the skirt ending just above the bottom hemline.  The panels are stitched into the waist seam in a particular placement in relation to the dress and naturally hang down the skirt of the dress creating the illusion that the panels and skirt are integrated.  The panels have a natural soft drape that seamlessly blends with the dress regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress.  These panels can be rearranged for purpose of converting the dress into different neckline styles and inherently distinctive looks such as a strapless configuration, classic halter configuration, Criss-Cross V-neck configuration; One Panel/One Shoulder Configuration, Blouson Wrap Configuration and One shoulder bow configuration.

34.38.  The JY Trade Dress, as shown in the drawings herein, includes as a special feature, front and back panels of fabric that overlay the full length of the skirt ending just above the bottom hemline.  The panels are stitched into the waist seam and naturally hang down the skirt of the dress.  The panels seamlessly blend with the dress, regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress.  When the panels are in the hanging position as an overlay of the skirt, they layer over the full length of the entire skirt and seamlessly blend with the natural and gentle soft folds, creating the illusion that the panels and skirt are integrated.  Furthermore, if the wearer chooses to style the dress into alternate necklines by raising one or more of the panels upwards and over the bodice into different configurations of the dress, the panels once again seamlessly blend into the bodice of the dress.  This creates the illusion that the panels smoothly blend uninterrupted with the bodice, skirt and/or entire dress to create a singular, integrated look. The concept of "seamless blending" means that from the point of view of an ordinary

15

Formatted: Font: Times New Roman

Formatted: Font: Times New Roman

observer, it will be noticeable that the dress contains front and back panels separate from other components of the dress, which when integrated into the dress create looks that are smooth and continuous, with no apparent gaps or spaces between one part or the next, and without seams or obvious joins.  Thus, while the front and rear panels are noticeable to the ordinary observer as distinct components of the dress, nonetheless, they create the impression of an integrated, natural, elegant, unified dress design.  Thus, JY's Trade Dress encompasses the overall look of the "Aiden" and "Annabelle" dresses and serves to identify JY as the source of these dresses to consumers.

**Formatted:** Font: Times New Roman

35.39.  The JY Trade Dress is non-functional; JY's competitors have produced numerous alternative designs for convertible dresses, but none of them feature two front and two rear panels attached to the waist that permit this elegant, seamless integration of panels into the bottom of the dress described above.

36.40.  JY has used, marketed and sold this distinctive JY Trade Dress in commerce throughout the United States since 2012 and consumers identify JY as the source of the dresses which embody this JY Trade Dress.  Accordingly, JY has acquired common law rights in this JY Trade Dress.

37.41.  The JY Trade Dress is embodied in each different configuration of Aidan and Annabelle dress design, including the specific design configurations shown in the paragraphs below.

38.42.  The first "Aidan" dress design configuration incorporates the JY Trade Dress in the manner described and shown below ("First 'Aidan' Configuration"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

16

- a skirt having a front portion and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice); and

- front and rear panels attached to the waist seam of the skirt, extending downward so that they blend seamlessly with the skirt.



39.43.  The second "Aidan" design configuration incorporates the JY Trade Dress in the manner described and shown below ("Second 'Aidan' Configuration"):

17

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

- 2 front and two rear panels attached to the waist seam of the skirt of which both rear panels wrap around the front waist and tie at the back waist creating a tied sash configuration, with the two rear panels blending seamlessly with the skirt; and

- 2 front panels are raised over the bodice covering both sides of the neckline of the user to create a Classic Halter Strap configuration, with the two front panels blending seamlessly into the bodice.

18



40.44.  The third Aidan design configuration incorporates the JY Trade Dress in the manner described and shown below ("Third Aidan Configuration"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

19

- 2 front and 2 rear panels attached to the waist seam of the skirt of which both rear panels wrap around the front waist and tie at the back waist creating a tied sash configuration such that the tied rear panels blend seamlessly with the skirt; and

- 2 front panels raised over the bodice covering both shoulders of the user to create Criss Cross V-neck configuration, with the two front panels blending seamlessly with the skirt.



41.45.  The fourth Aidan design configuration incorporates the JY Trade Dress in the manner described and shown below ("Fourth Aidan Configuration"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

20

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

- 2 front and 2 rear panels attached to the waist seam of the skirt of which both rear panels wrap around the front waist and tie at the back waist creating a tied sash configuration, such that the two rear panels blend seamlessly with the skirt; and

- one front panel extends downward so that it blends seamlessly with the skirt, while the second front panel is raised above the bodice to create a One Panel/One Shoulder configuration covering a portion of the right or left shoulder of the user, with the second front panel blending seamlessly into the bodice.



42.46. The fifth Aidan design configuration incorporates the JY Trade Dress in the manner described and shown below ("Fifth Aidan Configuration"):

21

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

- 2 front and 2 rear panels attached to the waist seam of the skirt of which both rear panels wrap around the front waist and tie at the back waist creating a tied sash configuration, such that the two rear panels blend seamlessly with the skirt; and

- 2 front panels are raised up over the bodice covering and draping over both shoulders of the user to create a Blouson Wrap configuration, with the two front panels blending seamlessly into the bodice.



43.47.  The sixth Aidan design configuration incorporates the JY Trade Dress in the manner described and shown below ("Sixth Aidan Configuration"):

- a dress having a strapless upper garment bodice portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached to the bottom portion of the upper garment (bodice);

- 2 front and 2 real panels attached to the waist seam of the skirt, of which both front panels and one or more rear panels are raised over bodice to create a One Shoulder Bow configuration covering a portion of the right or left shoulder of the user, with both front panels and one or more rear panels blending seamlessly into

23

the bodice; and

- One rear panel may, at the option of the user, extend downward to blend

  seamlessly with skirt.



44.48. The first "Annabelle" design configuration comprises the First Aidan
Configuration, but excluding a waistband attached at a bottom portion of the upper garment
(bodice), and instead, features a coordinating detachable sash used to wrap around the waist.

24



45.49.  The second "Annabelle" design configuration comprises the Second Aidan Configuration, but excludes a waistband attached to the upper garment (bodice), and instead, features a coordinating detachable sash used to wrap around the waist.



46.50.  The third "Annabelle" configuration comprises the Third Aidan Configuration, but excludes a waistband attached to the upper garment (bodice), and instead, features a coordinating detachable sash used to wrap around the waist.



47 51.  The fourth "Annabelle" design configuration comprises the Fourth Aidan Configuration, but excludes a waistband attached to the upper garment (bodice), and instead, features a coordinating detachable sash used to wrap around the waist.



48.52.  The fifth "Annabelle" design configuration comprises the Fifth Aidan Configuration, but excludes a waistband attached to the upper garment (bodice), and instead, features a coordinating detachable sash used to wrap around the waist.



49.53.   The sixth "Annabelle" design configuration comprises the Sixth Aidan

Configuration, but excludes a waistband attached to the upper garment (bodice).



Annabelle one shoulder bowtie

~~50.~~54.  Each of the foregoing Aidan and Annabelle product configurations incorporates the JY Trade Dress.

### **ESSENSE OF AUSTRALIA'S INFRINGING PRODUCTS**

~~51.~~55.  Essense has made, or caused to be made, imported into or sold in the United States least six products which infringe one or more of JY's Intellectual Property Rights: (i) Long Solid Chiffon, Style # 8472, (ii) Short Solid Chiffon, Style # 8471, (iii) Ombre Short Chiffon, Style # 8471OM, (iv) Ombre Long Chiffon, Style # 8472OM, (v) Junior Short Chiffon

30

Convertible Style #J4009, and (vi) Junior Chiffon Convertible Style # J40010 (collectively the "Infringing Products"). Each of these dresses incorporates the JY Trade Dress into each of their design configurations.

52.56. Rather than innovate and develop its own bridesmaid dress designs, Essense chose to copy JY's designs, including, most importantly, JY's distinctive Trade Dress, and marketed and passed off these designs under its "Sorella Vita" brand.

53.57. The copying by Essense is so pervasive that the Infringing Products appear to be actual JY dresses—with the same ornamental, non-functional and functional features. When the Infringing Products are worn in public, there can be little doubt that they would be viewed as JY products based upon the design alone, and most importantly, because they incorporate the JY Trade Dress.

54.58. Essense had previously designed original weddings and bridesmaid gowns under the "Sorella Vita" brand and its other brands, but those original designs did not embody JY's distinctive Trade Dress.

55.59. In response to competition from JY's innovative and successful designs, Essense chose to infringe JY's patent, trade dress, and trademark rights through the manufacturing, marketing, promotion, use and sale of the Infringing Products, and it did so willfully to trade upon the goodwill that JY has developed in connection with its innovative and high quality dress designs.

**Infringement of JY's Patents and Trade Dress**

56.60. As the side-by-side comparisons shown below reveal, Essense has misappropriated JY's dress design by marketing and selling the Infringing Products in its violation of JY's 'D723 patent.

31

Sorella Vita #8472     JY Aidan #1282       Sorella Vita #8472     JY Aidan #1282       Sorella Vita #8472     JY Aidan #1282

  

Sorella Vita #8472     JY Aidan #1282       Sorella Vita #8472     JY Aidan #1282       Sorella Vita #8472     JY Aidan #1282

  

Sorella Vita #8472    JY Aidan #1282



Sorella Vita #8472    JY Aidan #1282



Sorella Vita #8472    JY Aidan #1282



Sorella Vita #8472    JY Aidan #1282





34

57.61. Each of  Essense's Infringing Products embodies the JY Trade Dress identified above in product configurations that are identical to the Aidan and Annabelle Product Configurations shown above, including:

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- two front and two rear panels attached to the skirt, which blend seamlessly with the skirt and/or the bodice, and which can be raised, lowered and attached into different configurations to create different design looks, such as a strapless configuration, classic halter configuration, Criss-Cross V-neck configuration; One Panel/One Shoulder Configuration, Blouson Wrap Configuration and One shoulder bow configuration.

58.62. Essense's adoption of the JY Trade Dress has caused, and is likely to cause, confusion or mistake, or to deceive consumers, purchasers, and others into thinking that Essense's dress designs shown above are JY dress designs, or that they are sponsored by or affiliated with JY, when they are not. The copying is particularly problematic because the JY designs featuring the distinctive Trade Dress are the type of products that will be used in public at various wedding and social events where third parties, who were not present when the products were purchased, will associate them with JY because they have the unmistakable JY look that results from incorporation of the JY Trade Dress.

59.63. Of particular concern for JY is that JY devotes significant resources to develop its innovative dress products, and to market them to an upscale customer base. JY's dress designs are premium-priced products compared to the dresses ordinarily sold by Essense, which has a

35

more budget conscious client base. Part of the cachet of JY's products is the very fact that they consistently stand-out from all of the other products on the market. JY's goodwill among consumers is closely tied to its position as a leader and innovator in the bridal and bridesmaid dress industry, which causes each release of a new dress design to be highly anticipated among consumers, and allows JY to market and sell them at premium price levels. Essense's flagrant and relentless copying of JY's intellectual property rights not only allows Essense to reap benefits from JY's investment and creative designs, it also threatens to diminish the very important goodwill that JY has cultivated with its dress designs, and threatens JY's ability to sell its products at premium price points.

60.64.  On information and belief, Essense's marketing and sales personnel have deliberately played up the similarities between the Infringing Products and the JY Trade Dress. The Infringing Products have been marketed by Essense as the dress products that are the closest to the JY Trade Dress—for consumers who wanted a product with the distinctive JY look, but who did not want to pay for the real product.

61.65.  In view of the brazen and willful copying by Essense, JY is left with no choice but to file this lawsuit in order to protect its valuable intellectual property rights and the dress designs embodied in them.

**FIRST CLAIM FOR RELIEF**

**(Trade Dress Infringement)**
**(Lanham Act Section 43(a), 15 U.S.C. § 1125(a))**

62.66.  JY incorporates and re-alleges paragraphs 1 through 65762 of this Complaint.

63.    67. JY is the owner of all right and title to the distinctive JY Trade Dress and exclusively used the JY Trade Dress from 2012 to around 2015, when Essense and other infringers began producing and selling infringing products. The JY Trade Dress has acquired

36

secondary meaning, and is not functional.

64.   In addition, based on extensive and consistent advertising and advertising expenditures, widespread promotion and remarkable sales success throughout the United States, and unsolicited media coverage on television, the Internet, and print media, the JY Trade Dress has acquired distinctiveness and enjoys secondary meaning among consumers, identifying JY as the source of these products.

67.   The character and scope of the JY Trade Dress is that the dresses are made of lightweight material with: (i) a strapless upper garment (bodice) portion with a sweetheart shape neckline covering an area above the waist of the user having a front and rear portion; (ii) a skirt having a front and rear portion attached to the upper garment (bodice); and (iii) two front panels and two rear panels with a natural soft drape that seamlessly blend with the dress regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress.

68.   The panels of the "Aiden" and "Annabelle" dresses are stitched into the waist seam in a particular placement and naturally hang down the skirt of the dress creating the illusion that the panels and skirt are integrated.   The panels have a natural soft drape that seamlessly blends with the dress regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress.   These panels can be rearranged for purpose of converting the dress into different neckline styles and inherently distinctive looks such as a strapless configuration, classic halter configuration, Criss-Cross V-neck configuration; One Panel/One Shoulder Configuration, Blouson Wrap Configuration and One shoulder bow configuration.   The JY Trade Dress is embodied in each different configuration of the "Aidan" and "Annabelle" dress design, including the specific design

configurations shown in the paragraphs above.

65.69. These features of the "Aiden" and "Annabelle" dresses are distinctive in that they allow the two panels in the front and the two panels in the back panels to be seamlessly blended into the bodice of the dress. This creates the illusion that the panels smoothly blend uninterrupted with the bodice, skirt and/or entire dress to create a singular, integrated look. The concept of "seamless blending" means that from the point of view of an ordinary observer, it will be noticeable that the dress contains front and back panels separate from other components of the dress, which when integrated into the dress create looks that are smooth and continuous, with no apparent gaps or spaces between one part or the next, and without seams or obvious joins. Thus, while the front and rear panels are noticeable to the ordinary observer as distinct components of the dress, nonetheless, they create the impression of an integrated, natural, elegant, unified dress design. Thus, JY's Trade Dress encompasses the overall look of the "Aiden" and "Annabelle" dresses and serves to identify JY as the source of these dresses to consumers.

66.70. Essense has misappropriated the JY Trade Dress by mimicking a combination of several elements of that trade dress in the Infringing Products.

67.71. Essense's manufacture, marketing, distribution and sale of the Infringing Products is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Essense with JY.

68.72. Essense's manufacture, distribution, use and sale of the Infringing Products enables Essense to benefit unfairly from JY's reputation and success, thereby giving Essense's Infringing Products sales and commercial value they would not have otherwise.

69.73. Essense's actions constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

38

**Formatted:** Font: Times New Roman

70.74.  Essense knew of the JY Trade Dress when it designed and procured its Infringing Products. Accordingly, Essense's infringement has been and continues to be intentional, willful and without regard to the JY Trade Dress.

71.75.  JY has been and will continue to be irreparably harmed and damaged by Essense's actions, and JY lacks an adequate remedy at law to compensate for this harm.

72.76.  JY is informed and believes that Essense has gained profits by virtue of its infringement of the JY Trade Dress.

73.77.  JY also has sustained damages, including but not limited to lost sales, as a direct and proximate result of Essense's infringement of the JY Trade Dress in an amount to be proven at trial.

74.78.  Because Essense's actions have been willful, JY is entitled to treble its actual damages or Essense's  profits, whichever is greater, and to an award of costs, and, this being an exceptional case in view of  Essense's  willful infringement, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**SECOND CLAIM FOR RELIEF**

**(Common Law Trade Dress Infringement and Unfair Competition)**

75.79.  JY incorporates and re-alleges paragraphs 1 through 789075 of this Complaint.

76.80.  Essense's use of the JY Trade Dress constitutes common law trade dress infringement and unfair competition with JY under the common law of the State of New York.

81.    Essense has infringed the JY Trade Dress by manufacturing, distributing, marketing and selling the Infringing Products.  By engaging in this wrongful conduct, Essense has committed acts and/or omissions that proximately caused a misappropriation of JY's property and benefits.

77.82.  Essense markets and sells the Infringing Products in New York and, as a result, its wrongful conduct has had a substantial impact in New York.  Additionally, New York is Plaintiff JY's main place of business.

83.     JY has made significant expenditures to advertise the "Aiden" and "Annabelle" dresses.  JY has had substantial success selling the "Aiden" and "Annabelle" dresses and has in fact sold more than 100,000 of them to date.   In selling these dresses, JY has consistently endeavored to associate the JY Trade Dress with JY.  These efforts include, but are not limited to, substantial advertising such as print and internet advertisements which use the tagline "one dress . . . with endless possibilities" and which include photographs of the "endless ways to tie" these dresses.  Consumers have come to identify JY as the source of the "Aiden" and "Annabelle" dresses which embody JY's Trade Dress.

84.     Essense, in particular, has engaged in a pattern of copying JY's Trade Dress so that it can mass produce and sell copycat dresses at a much lower price point to JY's extreme detriment.

78.85.  Essense's use of these infringing designs on dresses which it manufactures, distributes, markets and sells is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Essense with JY, or as to the origin, sponsorship, or approval by JY of Essense's goods, services or commercial activities.

79.86.  Essense's use of JY Trade Dress enables Essense to benefit unfairly from JY's reputation and success, thereby giving the Infringing Products sales and commercial value they would not have otherwise.  Further, Essense unfairly competes with JY by selling its infringing dress products at a price substantially below the price that JY charges for its substantially identical dresses to the same pool of wholesale and retail customers.

40

80.87.  Prior to Essense's first use of the infringing dress designs, Essense was aware of JY's business and had either actual notice and knowledge, or constructive notice of the JY Trade Dress.

81.88.  Essense's unauthorized use of the JY Trade Dress is likely, if not certain, to deceive or to cause confusion or mistake among consumers as to the origin, sponsorship or approval of the Infringing Products and/or to cause confusion or mistake as to any affiliation, connection or association between JY and Essense.

82.89.  Essense's infringement of the JY Trade Dress as described herein has been and continues to be intentional, willful and without regard to JY's rights in the JY Trade Dress.

83.90.  Essense has wrongfully gained profits by virtue of its infringement of the JY Trade Dress.

84.91.  JY has suffered and will continue to suffer irreparable harm from Essense's infringement of the JY Trade Dress and related unfair competition insofar as JY's invaluable good will is being eroded by Essense's continuing infringement and unfair competition. JY has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers and good will flowing from the Essense's infringing and unfair activities. JY is entitled to an injunction against Essense's continuing infringement of the JY Trade Dress. Unless enjoined, JY will continue its infringing conduct.

85.92.  Because Essense's actions have been committed with intent to damage JY and to confuse and deceive the public, JY is entitled to punitive damages, in addition to any actual or compensatory damages.

### THIRD CLAIM FOR RELIEF

**(Infringement of the 'D723 Patent)**

Formatted: Left, Indent: Left:  1.5", First line:  0.5"

41

86.93.  JY incorporates and re-alleges paragraphs 1 through 9210286 of this Complaint. ←- - - - - [ Formatted: Indent: Left:  0", First line:  0.5" ]

87.94.  The 'D723 Patent claims the design as shown in the drawings contained therein. Each of the Infringing Products is the same, or is substantially identical to, the design claimed in the 'D723 patent as shown in the drawings contained therein.  The following comparison of drawings contained in the 'D723 patent to the Infringing Products shows that each of the Infringing Products is the same, or is substantially identical to, the design claimed in the 'D723 patent:



*Essense of Australia (Sorella Vita line) Chiffon Short Convertible Style #8471*

Essense of Australia (Sorella Vita line) Long Chiffon Convertible Style #8472

88.95.   Essense's "Ombre" and "Junior" dresses are different-size versions of its regular-size dresses—thus, for example, the "J40010" style is exactly the same as style #8472 except that it is made in junior sizes for children. The comparison shown in Paragraph 83 also reflects the appropriate and accurate comparison between the patent drawings and Essense's infringing #J40010, #JY009, #8472 OM and #8471OM styles. Comparing the drawings in the patents with the infringing products as shown above, an ordinary observer with an understanding of the relevant prior art in the bridal gown industry, would be deceived into believing that each of the Infringing Products is the same as the patented design of the 'D723 patent.

89.96.   The patented design of the 'D723 patent is the same, or substantially identical to, the patented design of the D'120 patent.

43

90.97.  Each of the Infringing Products is identical to, or substantially the same as, the patented design of the 'D723 patent regardless of the length of such Infringing Product as worn on a human or otherwise displayed or used.  Each of the Infringing Products would infringe the 'D723 patent regardless of whether it is worn as a short dress with length ending at or above the knees, or a long dress, with length ending below the knee, including, but not limited to, floor length.

91.98.  Essense has infringed and continues to infringe 'D723 Patent by using, selling and/or offering to sell, in the United States and/or importing into the United States the Infringing Products.

### FOURTH CLAIM FOR RELIEF

**(Infringement of the 'D120 Patent)**

92.99.  JY incorporates and re-alleges paragraphs 1 through 989218 of this Complaint.

93.100.      The 'D120 Patent claims the design as shown in the drawings contained therein. Each of the Infringing Products is the same, or is substantially identical to, the design claimed in the 'D120 patent as shown in the drawings contained therein.  The following comparison of drawings contained in the 'D120 patent to the Infringing Products shows that each of the Infringing Products is the same, or is substantially identical to, the design claimed in the 'D120 patent:

44

**Formatted:** Indent: Left:  0", First line:  0.5"



*Essense of Australia (Sorella Vita line) Chiffon Short Convertible Style #8471*



*Essense of Australia (Sorella Vita line) Long Chiffon Convertible Style #8472*

45

94. 101.     Essense's "Ombre" and "Junior" dresses are different-size versions of its regular-size dresses—thus, for example, the "J40010" style is exactly the same as style #8472 except that it is made in junior sizes for children. The comparison shown in Paragraph 89 also reflects the appropriate and accurate comparison between the patent drawings and Essense's infringing #J40010, #JY009, #8472 OM and #8471OM styles. Comparing the drawings in the patents with the infringing products as shown above, an ordinary observer, with an understanding of the relevant prior art in the bridal gown industry, would be deceived into believing that each of the Infringing Products is the same as the patented design of the 'D120 patent.

95. 102.     Each of the Infringing Products is identical to, or substantially the same as, the patented design of the 'D120 patent regardless of the length of such Infringing Product as worn on a human or otherwise displayed or used.  Each of the Infringing Products would infringe the 'D120 patent regardless of whether it is worn as a short dress with length ending at or above the knees, or a long dress, with length ending below the knee, including, but not limited to, floor length.

96. 103.     Essense has infringed and continues to infringe the 'D120 Patent by using, selling and/or offering to sell in the United States, and/or importing into the United States the Infringing Products.

### **FIFTH CLAIM FOR RELIEF**

### **(Unfair Business Practices Under New York General Business Law § 349)**

104.     JY incorporates and re-alleges paragraphs 1 through 10314 of this Complaint.

105.     The acts of Essense described above constitute unfair business practices in violation of New York General Business Law § 349.

106.    JY has valid and protectable rights in the JY Trade Dress.  The JY Trade Dress does not serve any other function other than to identify JY as the source of its bridesmaid dresses embodying the JY Trade Dress.  The JY Trade Dress is inherently distinctive, and through JY's extensive commercial use, has come to be associated with JY as the source of the bridesmaid dresses on which it is used.

107.    Essense's infringing use of the JY Trade Dress is likely to cause confusion as to the source of Essense's products and is likely to cause others to be confused or mistaken into believing that there is a relationship between Essense (and its Sorella Vita brand) and JY or that Essense's products are affiliated with or sponsored by JY.

108.    The above-described acts and practices by Essense are likely to mislead or deceive the general public and therefore constitute fraudulent, deceptive and unfair business practices in violation of New York General Business Law § 349.

109.    The above-described acts constitute unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trade dress infringement under Section 32 of the Lanham Act, 15 U.S.C. §§ 1125(a) and 1114, and are therefore unlawful acts in violation of the New York General Business Law § 349.

110.    Essense acted willfully and intentionally in making and selling the Infringing Products, with full knowledge of JY's prior rights in the distinctive JY Trade Dress, and with an intent to cause confusion or mistake or to deceive customers into believing that there is an affiliation between Essense and JY or between Sorella Vita brand bridal dresses and JY's bridal dresses.  Essense willfully and in bad faith diverts sales from JY by selling its infringing copies of JY's designs at a price that is significantly lower than the price at which consumers could purchase JY's authentic products.  The unlawful and fraudulent business practices of Essense

described above present a continuing threat to, and are meant to deceive members of, the public in that Essense continues to promote its products by wrongfully trading on the goodwill of the JY Trade Dress.

111.   As a direct and proximate result of these acts, Essense has received, and will continue to profit from , the strength of the JY Trade Dress.

112.   As a direct and proximate result of Essense's wrongful conduct, JY has been injured in fact and has lost sales, money and profits, and such harm will continue unless Essense's acts are enjoined by the Court.   JY has no adequate remedy at law for Essense's continuing violation of JY's rights.

113.   Essense should be required to restore to JY any and all profits earned as a result of its unlawful and fraudulent actions, or provide JY with any other restitutionary relief as the Court deems appropriate.

**SIXTH CLAIM FOR RELIEF**

**(Unjust Enrichment)**

114.   JY incorporates and re-alleges paragraphs 1 through 113~~24~~ of this Complaint.

115.   As a result of the conduct alleged herein, Essense has been unjustly enriched to JY's detriment.   JY seeks an accounting and disgorgement of all ill-gotten gains and profits resulting from Essense's inequitable activities.

**PRAYER FOR RELIEF**

WHEREFORE, JY prays for relief, as follows:

1.   A judgment that Essense has infringed JY's asserted design patents, the JY Trade Dress and JY's asserted trademarks;

2.   An Order and judgment preliminarily and permanently enjoining Essense and its

48

officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from further acts of infringement of JY's asserted design patents, the JY Trade Dress and JY's asserted trademarks;

3.      A judgment awarding JY damages in an amount to be determined at trial for Essense's infringement of JY's asserted design patents, the JY Trade Dress and JY's asserted trademarks;

4.      A judgment awarding JY all damages adequate to compensate for Essense's infringement of JY's asserted design patents, the JY Trade Dress and JY's asserted trademarks, and in no event less than a reasonable royalty for Essense's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

5.      A judgment awarding JY all damages, including treble damages, based on any design patent infringement found to be willful, pursuant to 35 U.S.C. § 284, together with prejudgment interest;

6.      An Order preliminarily and permanently enjoining Essense and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from directly or indirectly infringing the JY Trade Dress; from passing off  Essense's bridal dresses as being associated with and or sponsored or affiliated with JY and its trademarks; from committing any other unfair business practices directed toward obtaining for themselves the business and customers of JY; and from committing any other unfair business practices directed toward devaluing or diminishing the brand or business of JY;

7.      Actual damages suffered by JY as a result of  Essense's unlawful conduct, in an

49

amount to be proven at trial, as well as prejudgment interest as authorized by law;

8.      Reasonable funds for future corrective advertising;

9.      An accounting of Essense's profits pursuant to 15 U.S.C. § 1117;

10.     A judgment trebling any damages award pursuant to 15 U.S.C. § 1117;

11.     Restitution against Essense and in favor of JY, including disgorgement of wrongfully obtained profits and any other appropriate relief;

12.     Costs of suit and reasonable attorneys' fees; and

13.     Any other remedy to which JY may be entitled under federal law, state law, or common law.

Dated: August 20——, 2018

                                MARTIN LEIGH, PC

                                By:  _/s/ Thomas J. Fritzlen, Jr._

                                Thomas J. Fritzlen     KS Bar No. 17450
                                William H. Meyer      KS Bar No. 18142
                                1044 Main, Suite 900
                                Kansas City, Missouri 64105
                                *Tel.:* (816) 221-1430
                                *Fax:* (816) 221-1044
                                whm@martinleigh.com
                                tjf@martinleigh.com

                                and

                                Maurice N. Ross      NY Bar No. 1720796
                                BARTON LLP
                                420 Lexington Avenue, 18th Floor
                                New York, NY 10170
                                *Tel.:* (212) 687-6262
                                *Fax:* (212) 687-3667
                                mross@bartonesq.com

                                *Attorneys for the Plaintiff*

                                50

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, JY hereby demands trial

by jury on all issues raised by the Complaint.

Dated: August 20——, 2017

Respectfully submitted,

MARTIN LEIGH, PC

By:   /s/ Thomas J. Fritzlen, Jr.

Thomas J. Fritzlen      KS Bar No. 17450
William H. Meyer      KS Bar No. 18142
1044 Main, Suite 900
Kansas City, Missouri 64105
*Tel.:*  (816) 221-1430
*Fax:*  (816) 221-1044
whm@martinleigh.com
tjf@martinleigh.com

and

Maurice N. Ross      NY Bar No. 1720796
BARTON LLP
420 Lexington Avenue, 18th Floor
New York, NY 10170
*Tel.:*  (212) 687-6262
*Fax:*  (212) 687-3667
mross@bartonesq.com

*Attorneys for the Plaintiff*