# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JENNY YOO COLLECTION, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 17-2666-JAR-GEB |
| ESSENSE OF AUSTRALIA, INC., | ) |
| Defendant | ) |

## MEMORANDUM AND ORDER

On December 12, 2018, the Court convened an in-person motion hearing to address Defendant's Motion for Entry of Protective Order (Motion) (**ECF No. 43**).[1] Plaintiff appeared through counsel, Laura-Michelle Horgan, William H. Meyer, and Maurice N. Ross.[2] Defendant appeared through counsel, James J. Kernell and Kyle D. Donnelly. After review of Defendant's Motion and Memorandum in Support (ECF No. 44), Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for a Protective Order (ECF No. 48), all attached exhibits, and hearing arguments of counsel, the Court **GRANTED** the Motion at the hearing, and held that the proposed depositions shall not proceed as noticed at this time, but will permit Plaintiff to proceed with limited discovery as explained more fully below.

---

[1] The Court also heard argument on Plaintiff's Motion for Leave to Substitute and File Exhibits (ECF No. 41). The Court filed a Memorandum and Order granting this Motion on December 20, 2018 (ECF No. 55).

[2] Ms. Horgan and Mr. Meyer personally appeared at the hearing. Mr. Ross appeared by telephone.

1

## I. Nature of the Case

Plaintiff and Defendant both design and sell wedding gowns and bridesmaid dresses. The subject matter of this lawsuit is Plaintiff's "Aidan" and "Annabelle" bridesmaid dress designs, and whether Defendant infringed upon those designs.[3] Specifically, Plaintiff asserts claims against Defendant for (1) federal trade dress infringement; (2) common law trade dress infringement and unfair competition; (3) infringement of two of Plaintiff's design patents; (4) unfair business practices; and (5) unjust enrichment.[4] Defendant's Motion for Entry of Protective Order (Motion) deals with the two design patent infringement claims. In particular, it regards claim construction, which is the first step in any patent infringement analysis.

Further background information regarding these cases can be found in the Court's August 7, 2018 Memorandum and Order[5] and December 20, 2018 Memorandum and Order,[6] and need not be repeated here. Instead, the Court will (1) provide an overview of claim construction as it is central to the dispute between the parties; (2) set forth facts relevant to Defendant's Motion; and (3) analyze the merits of the Motion.

---

[3] *See* Amended Complaint, ¶¶ 34-65 (ECF No. 27).
[4] *Id.* at ¶¶ 66-115.
[5] ECF No. 25.
[6] ECF No. 55.

## II. Overview of Claim Construction

In a patent, the "claims" define, in technical terms, the scope of protection conferred by the patent.[7] In other words, the claims of the patent define the patentee's invention.[8] There are two main types of patents: utility and design. In utility patents, the "claims" are mostly described by words, usually comprised of technical terms.[9] However, in design patents, which is the type of patent at issue here, the "claims" are described by drawings, not words.[10]

Determining whether a design patent claim has been infringed upon requires, first, as with utility patents, that the claim be properly construed to determine its meaning and scope.[11] This is referred to as claim construction,[12] and is a question of law for the court to decide.[13] Then the claim, as properly construed, is compared to the accused design to determine whether there has been infringement.[14] This determination is left to the fact

---

[7] *Capstan AG Sys., Inc. v. Raven Indus., Inc.*, No. 16-4132-DDC-KGS, 2018 WL 953112, at *1 (D. Kan. Feb. 20, 2018) ("A patent must describe the 'exact scope of an invention' so that the patentee secures his or her right to 'all to which he [or she] is entitled' and informs 'the public of what is still open to them.'") (quoting *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 373 (1996)).
[8] *Id.* (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ("A patent is a government grant of rights to the patentee. . . . By this grant, the patentee owns the rights for a limited time to exclude others from making, using, or selling the invention as claimed.").
[9] *See Capstan,* 2018 WL 953112 at *1.
[10] *See Crocs, Inc. v. Int'l Trade Comm'n,* 598 F.3d 1294, 1302 (Fed. Cir. 2010) (stating design patents are typically claimed as shown in drawings); 37 C.F.R. § 1.153.
[11] *Elmer v. ICC Fabricating, Inc.,* 67 F.3d 1571, 1577 (Fed. Cir. 1995).
[12] *Cormack v. United States*, 119 Fed. Cl. 63, 67 (2014) (stating claim construction is a legal statement of the scope of the patent right).
[13] *Markman*, 517 U.S. at 384-91.
[14] *Elmer*, 67 F.3d at 1577.

finder.[15] In this second step, the patented and accused designs are compared for visual similarity under the "ordinary observer" test, which asks whether an ordinary observer would find substantial similarities between the patented design and the accused design, so as to be deceived into purchasing the accused design believing it is the patented design.[16]

At issue here is the legal standard for the first step of the infringement analysis described above, *i.e.*, claim construction. In utility patents, claim construction involves determining what the technical words in the claim mean.[17] Construction of design patent claims differ because drawings, not words, must be construed.[18] However, an understanding of claim construction in utility patents, as described below, is important because the Federal Circuit has stated "because design patents 'typically are claimed as shown in drawings,' claim construction [as used in utility patents] should be 'adapted accordingly.'"[19] However, the Federal Circuit does caution trial courts against providing

---

[15] *Markman*, 517 U.S. at 384-85.
[16] *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 669-79 (Fed. Cir. 2008) (citing *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)).
[17] *See Capstan*, 2018 WL 953112 at *1; *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) ("The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims.") (citation omitted).
[18] *See Egyptian Goddess, Inc.*, 543 F.3d at 679; *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998), abrogated by *Egyptian Goddess* on other grounds, ("The requirement that the court construe disputed claim language, as applied to design patents, must be adapted to the practice that a patented design is claimed as shown in its drawing. There is usually no description of the design in words").
[19] *Id.* at 679 (citing *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.,* 501 F.3d 1314, 1319 (Fed. Cir. 2007) and *Goodyear Tire & Rubber Co.*, 162 F.3d at 1116)).

a detailed verbal description of a claimed design, as is typically required for claim terms in utility patents.[20]

When constructing claim terms in utility patents, courts generally should give terms their ordinary and customary meaning.[21] That is, the meaning the term would have to a hypothetical person of ordinary skill in the art in question at the time of the invention.[22] In doing so, courts first consider intrinsic evidence, which consists of the claims themselves, the patent specification, and the patent's prosecution history.[23]

A court may also rely on extrinsic evidence,[24] which is particularly important to the instant Motion, and so will be discussed in detail. Extrinsic evidence includes "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."[25] Dictionaries and treatises can help a court determine

---

[20] *Id*. at 679-80 ("[T]he preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design."); *see also, e.g., Contessa Food Prods, Inc. v. Conagra,* 282 F.3d 1370, 1377 (Fed. Cir. 2002) (approving district court's construction of the asserted claim as meaning "a tray of a certain design, as shown in Figures 4–5, containing shrimp arranged in a particular fashion, as shown in Figures 1–3."); *Yao-Hung Huang v. Marklyn Grp. Inc*., No. 11-CV-01765-REB-BNB, 2012 WL 4856720, at *2 (D. Colo. Oct. 11, 2012) (declining to issue a detailed verbal description of the patent, instead holding "the patent is best construed simply as claimed: The ornamental design for a flexible attachment strip having a plurality of forward facing LEDs, as shown and described."); *HR U.S. LLC v. Mizco Int'l, Inc.*, No. CV-07-2394(DGT)(JO), 2009 WL 890550, at *9 (E.D.N.Y. Mar. 31, 2009) (declining to issue a detailed verbal description of the patent, and instead stating it is appropriate to "rely upon the illustrations set out in the [the patent], as they better represent the claimed design").
[21] *Capstan*, 2018 WL 953112 at *2.
[22] *Id*.; *Phillips,* 415 F.3d at 1318 (claims construed as understood by a hypothetical person of skill in the art).
[23] *Capstan,* 2018 WL 953112 at *2.
[24] *Id.*
[25] *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980).

the meaning of a term to those skilled in the art in question.[26] Expert testimony can be useful for a variety of purposes, such as to "ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field."[27]

But the Federal Circuit, for several reasons, has cautioned extrinsic evidence in general is less reliable than the intrinsic evidence in interpreting claims:

> First, extrinsic evidence by definition is not part of the patent and does not have the specification's virtue of being created at the time of patent prosecution for the purpose of explaining the patent's scope and meaning. . . . . [Next], extrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence. . . . [Additionally], there is a virtually unbounded universe of potential extrinsic evidence of some marginal relevance that could be brought to bear on any claim construction question. In the course of litigation, each party will naturally choose the pieces of extrinsic evidence most favorable to its cause, leaving the court with the considerable task of filtering the useful extrinsic evidence from the fluff. Finally, undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the "indisputable public records consisting of the claims, the specification and the prosecution history," thereby undermining the public notice function of patents.
>
> In sum, extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence. Nonetheless, because extrinsic evidence can help educate the court . . . it is permissible for the district court in its sound discretion to admit and use such evidence. In exercising that discretion, and in weighing all the evidence bearing on claim construction, the court should keep in mind the flaws inherent in each type of evidence and assess that evidence accordingly.[28]

---

[26] *Id.* at 1318.
[27] *Id.*
[28] *Id.* at 1318–19 (internal citations omitted).

6

To summarize, in construing design patent claims, courts adopt the above principles for utility patent claim construction and adjust as necessary to account for the fact that design patent claims are described by drawings, and not words.[29]

### III. Facts Relevant to Defendant's Motion for Entry of Protective Order

On August 21, 2018, pursuant to this District's Patent Local Rules,[30] a phased scheduling order allowing for early claim construction was entered.[31] Per that Initial Patent Scheduling Order, claim construction discovery was to be completed by November 30, 2018, and claim construction briefing was to be completed by February 8, 2019.[32] The Court, at its discretion, was to then set a date to hear and decide the parties' claim construction issues.[33] After the Court enters its claim construction order, a scheduling order for the remainder of discovery and other pretrial matters would be set.[34]

On October 5, 2018, the Court conducted a conference with the parties to discuss Plaintiff's request to modify the Initial Patent Scheduling Order to have claim construction proceedings occur at the summary judgment phase after the completion of all fact and expert discovery, and not after the completion of claim construction discovery as currently scheduled.[35] After hearing arguments from counsel, the Court found Plaintiff did not present good cause to deviate from the Patent Local Rules, and declined Plaintiff's request.

---

[29] *See supra* notes 17-19 and accompanying text.
[30] *See* D. Kan. Pat. Rules 2.1 - 4.7; *see also* http://ksd.uscourts.gov/index.php/forms/?open=CivilForms for the Patent Scheduling Order form.
[31] ECF No. 29.
[32] *Id.* at p. 2.
[33] *Id.*
[34] *Id.*
[35] *See* ECF No. 38.

The Court did, however, grant Plaintiff more time to complete claim construction discovery. Accordingly, a Revised Initial Patent Scheduling Order was entered extending the claim construction discovery deadline to January 16, 2019.[36]

During discussion on extending the claim construction discovery deadlines, a dispute arose regarding whether Plaintiff could take depositions of Defendant's designers. Plaintiff argued such discovery was necessary for claim construction, while Defendant argued it was not. After hearing argument of counsel, the Court ordered discovery during this time period must be limited to claim construction only. The Court made clear to Plaintiff's counsel the purpose of extending deadlines was to conduct claim construction discovery, and not infringement and invalidity discovery.

On October 9, 2018, Plaintiff served Defendant with four deposition notices.[37] In them, Plaintiff sought to depose Defendant's 30(b)(6) representative, Defendant designers of the six dresses that are the bases of Plaintiff's infringement claims, Defendant's President, and Defendant's Chief Creative Officer.[38] On November 5, 2018, Plaintiff's counsel informed the undersigned's chambers Defendant was refusing to produce the witnesses for their depositions and requested a conference to discuss the same. The Court set a status conference for November 9, 2018. However, on November 7, 2018, Defendant filed the instant Motion for Entry of a Protective Order asking the Court to forbid the

---

[36] ECF No. 39.
[37] *See* ECF Nos. 44-7 through 44-10. On November 2, 2018, Plaintiff served Defendant with an Amended Notice of Deposition for certain Defendant designers that changed the proposed deposition date from November 13 to November 15. (*See* ECF No. 48, pp. 8-9; ECF No. 48-13.)
[38] *Id.*

8

depositions as noticed or, in the alternative, to allow Plaintiff one 30(b)(6) deposition regarding claim construction only.[39] In light of Defendant filing a formal written motion, the Court cancelled the November 9, 2018 conference, and set an in-person motion hearing for December 12, 2018.[40]

## IV. Plaintiff's Motion for Entry of Protective Order

### A. Duty to Confer

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute" unless counsel "has conferred or has made reasonable effort to confer with opposing counsel" before filing a motion. Several pages of Plaintiff's Memorandum in Opposition to Defendant's Motion are dedicated to defense counsel's alleged lack of conferral before filing the Motion.[41] But, during the December 12, 2018 hearing, the Court inquired about the parties' conferral efforts and was satisfied counsel adequately conferred for purposes of deciding the instant Motion. And, as stated during the December 12, 2018 hearing, the Court again stresses the importance of proper conferral as litigation progresses. This case needs to proceed past claim construction discovery, and the Court expects counsel, especially the experienced patent lawyers present here, to meaningfully confer as necessary and by telephone as issues, discovery or otherwise, arise.

---

[39] ECF No. 43.
[40] ECF No. 46.
[41] ECF No. 48, pp. 5-8.

### B. Legal Standard for Issuing a Protective Order

Fed. R. Civ. P. 26(c)(1) provides the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking the protective order has the burden of demonstrating good cause for it.[42] To prove good cause, the moving party must offer "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[43] Whether to enter a protective order lies within the court's discretion.[44]

### C. Discussion

As previously stated, Plaintiff served Defendant with four deposition notices on October 9, 2018.[45] Plaintiff sought to depose: (1) Defendant's 30(b)(6) representative; (2) Defendant's employees who designed the six dresses Plaintiff identified as infringing products in its Amended Complaint; (3) Defendant's President, Wayne Harris; and (4) Defendant's Chief Creative Officer, Martine Harris.[46] Plaintiff attached the same "Schedule A" to each deposition notice listing the same fourteen "Topics for Examination."[47] On November 7, 2018, Plaintiff filed the instant Motion to forbid the depositions from proceeding as noticed or, in the alternative and in the spirit of cooperation, to allow Plaintiff one 30(b)(6) deposition regarding claim construction only. In support,

---

[42] *See, e.g., ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 WL 1652056, at *3 (D. Kan. June 6, 2007).
[43] *Id.* (quoting *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003)).
[44] *Id.*
[45] *See supra* notes 37-38 and accompanying text.
[46] *Id.*
[47] ECF Nos. 44-7, pp. 7-9; 44-8, pp. 6-8; 44-9, pp. 6-8; 44-10, pp. 6-8; 48-13, pp. 7-9.

Defendant argues Plaintiff is circumventing the Court's previous order limiting current discovery to claim construction by issuing overreaching, costly and unduly burdensome depositions inquiring into infringement and invalidity.

### 1. Relevancy and Undue Burden of the Proposed Depositions to Claim Construction Discovery

The parties fundamentally disagree regarding the standard for claim construction, which is driving much of their dispute regarding the propriety of the proposed depositions during the current stage of discovery. Defendant argues claims are construed from the viewpoint of the "ordinary observer." As such, of the fourteen deposition topics listed, Defendant argues only Topic 8, which asks about the "meaning of [Plaintiff's] patent claims . . . from the point of view of the ordinary observer,"[48] is relevant to claim construction. Defendant also argues because extrinsic evidence is given little weight in claim construction, a protective order is necessary to protect it from undue burden and expense, *i.e.*, the burden of duplicative and costly depositions outweigh any possible relevancy to claim construction.

Plaintiff, on the other hand, insists claims are construed from the viewpoint of a person skilled in the art, which in this instance would be an "ordinary designer." Based on this and the fact that parties are allowed to present extrinsic evidence during claim construction, Plaintiff argues it can present evidence from Defendant's designers because they are presumably skilled in the art and most likely interpreted the patent drawings in designing the alleged infringing dresses. Plaintiff further states all deposition topics seek

---

[48] ECF Nos. 44-7, p. 8; 44-9, p. 7; 44-10, p. 7; 48-13, p. 8.

evidence specifically related to how an ordinary designer would understand the patent drawings, and thus are narrowly tailored to claim construction.

After reviewing the authorities cited by the parties and conducting its own research, the Court finds neither party, in this instance, is entirely correct regarding the claim construction standard. While the "ordinary observer" test is used for determining actual infringement (*i.e.*, the second part of the infringement analysis), it does not appear to necessarily factor into claim construction.[49] And, while courts may interpret claims from the viewpoint of one skilled in the art,[50] courts do so in light of the ***intrinsic evidence***, as opposed to ***extrinsic evidence***, which should only be used as an aid in understanding the intrinsic evidence, not to change the meaning of the claims.[51] Also, the case law regarding design patent claim construction clearly cautions against verbally describing the drawings, as would be done with utility patents claims, meaning extrinsic evidence may be even less valuable here.[52]

However, even if courts may interpret claims from the viewpoint of one skilled in the art, in looking at Plaintiff's proposed deposition topics, the Court finds most of them

---

[49] *See supra* notes 17-28 and accompanying text.
[50] *But see, e.g., Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 93 F. App'x 214, 215–16 (Fed. Cir. 2004) (finding no issue in construing design claims without referring to the perspective of a skilled designer).
[51] *See supra* notes 17-28 and accompanying text; *see also J&M Indus., Inc. v. Raven Indus., Inc.*, No. 16-2723-JWB, 2018 WL 3062195, at *3 (D. Kan. June 21, 2018) ("Extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless it is considered in the context of the intrinsic evidence."); *Elmer*, 67 F.3d at 1577 (in construing a design patent claim, the court noted "[d]esign patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings.") (quoting *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988)).
[52] *See supra* notes 20 and 28 and accompanying text.

clearly reach beyond inquiring how an ordinary designer would interpret the patent drawings.

Topics 1 through 4, 5 and 12 appear to be aimed at discovering how Defendant designed around the patent drawings in coming up with their dresses. Those Topics inquire as follows:

> 1. The manner in which the Alleged Infringing Products were created, including, but limited to, any drawings, figures, sketches or other visual depictions used in the creation of the Alleged Infringing products or that reflect the Alleged Infringing Products.
>
> 2. Any drawings, figures or visual depictions that reflect or constitute the design of the Alleged Infringing Products.
>
> 3. Figures, drawings and depictions contained in [Plaintiff's] patents and the applications for such patents, including but not limited to any analysis or study concerning such figures, drawings, and visual pictures.
>
> 4. Any comparison made by Defendant or others concerning drawings, figures or visual depictions that reflect or constitute the design of the Alleged Infringing Products and the drawings, figures or visual depictions contained in [Plaintiff's] patents and the applications for such patents.
>
> 5. How drawings, figures or visual depictions that reflect or constitute the design of the Alleged Infringing products compare with the drawings, figures and visual depictions contained in [Plaintiff's] patents and the application for such patents.
>
> 12. Attempts and actions taken by Defendant to design around the claims in [Plaintiff's] patents.[53]

---

[53] ECF Nos. 44-7, pp. 7-9; 44-9, pp. 6-8; 44-10, pp. 6-8; 48-13, pp. 7-9.

Claim construction is a legal statement of the scope of Plaintiff's patent, not Defendant's dress designs or drawings.[54] Additionally, claim construction is an issue of law for the court to decide.[55] Therefore, such factual information about how Defendant designed its dresses would not be relevant to claim construction of Plaintiff's patents.[56] This line of inquiry would be more appropriate for infringement discovery.

Topic 8, discussed above, also relates to infringement discovery because it asks about the viewpoint of an ordinary observer.[57]

Topic 6 seeks information regarding "[t]he statements and assertions in Defendant's Invalidity Contentions . . . concerning the figures and drawings contained in [Plaintiff's] patents, and the factual basis for such statements and assertions."[58] On its face, this clearly relates to invalidity discovery. Topic 11, which asks about the Patent Trial and Appeal Board's interpretation of Plaintiff's patents in ruling on a petition filed by David's Bridal, is also completely irrelevant to claim construction.[59]

The only topics seemingly relevant to claim construction are 7, 9, and 10 because they seek information regarding how a designer of ordinary skill would interpret the patent drawings. Those Topics ask about:

---

[54] *Cormack*, 119 Fed. Cl. at 67 (stating claim construction is a legal statement of the scope of the patent right).
[55] *See supra* note 13 and accompanying text.
[56] *See, e.g., Embrex, Inc.*, 216 F.3d at 1347 ("In claim construction the words of the claims are construed independent of the accused product . . . .") (citation and internal quotation marks omitted); *Markman*, 52 F.3d at 981 ("Through this process of construing claims . . . the court is not crediting certain evidence over other evidence or making factual evidentiary findings.").
[57] *See supra* note 48 and accompanying text.
[58] ECF Nos. 44-7, p. 8; 44-9, p. 7; 44-10, p. 7; 48-13, p. 8.
[59] ECF Nos. 44-7, pp. 8-9; 44-9, p. 7; 44-10, p. 7; 48-13, p. 8.

7. The meaning of [Plaintiff's] patent claims . . . from the point of view of a designer of ordinary skill.

9. The background and characteristics that define a "designer of ordinary skill" and the factual basis for such definition.

10. How a designer of ordinary skill would understand the terms and figures identified by Defendant in its letter of September 28, 2018 that Defendant contends need to be the subject of claim construction in this case, and the factual basis for such understanding.[60]

The Court, however, questions Plaintiff's motivation in seeking information on how an ordinary designer would interpret its patent claims from Defendant. While Plaintiff is allowed to present extrinsic evidence during claim construction, case law indicates such evidence usually consists of expert and inventor testimony, dictionaries, and learned treatises.[61] Plaintiff is clearly not designating any of the proposed deponents, who are all Defendant's employees, as its experts. And, during the December 12, 2018 hearing, Defendant represented it would not be using any of these witnesses to bolster its claim construction contentions, and if it were, Defendant stated it would not oppose their depositions.

It appears to the Court Plaintiff is seeking these depositions for no other reason than to find out how Defendant construed Plaintiff's patent drawings in designing its own dresses, which would enable Plaintiff to advocate for a claim construction more likely to lead to a finding of infringement. According to caselaw, this would be an improper use of

---

[60] ECF Nos. 44-7, p. 8; 44-9, p. 7; 44-10, p. 7; 48-13, p. 8.
[61] *See, e.g., Phillips*, 415 F.3d at 1318 (explaining that courts find dictionaries, treatises, and expert testimony to be helpful extrinsic evidence).

extrinsic evidence.[62] Also, it seems Plaintiff is circumventing the Court's October 5, 2018 order by trying to fit in all discovery before claim construction proceedings,[63] which is also contrary to this District's Patent Local Rules.[64]

Additionally, the Court finds, in this instance, taking depositions of numerous witnesses[65] over the same topics[66] is unnecessarily duplicative and unduly burdensome[67] during the claim construction discovery phase, especially considering the reduced weight given to extrinsic evidence.[68]

For the foregoing reasons, the Court **GRANTS** Plaintiff's request for a Protective Order. The proposed depositions shall not proceed as noticed during this stage of discovery. However, because there may be some relevance to Plaintiff presenting extrinsic

---

[62] *See supra* note 28 and accompanying text; *see also Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995) ("A patentee may not proffer an interpretation for the purposes of litigation that would alter the indisputable public record consisting of the claims, the specification and the prosecution history, and treat the claims as a 'nose of wax.' . . . In other words, evidence extrinsic to the patent and prosecution history, such as expert testimony, cannot be relied on to change the meaning of the claims when that meaning is made clear by those documents.") (internal citation omitted); *Markman*, 52 F.3d at 981 ("Extrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims."); *Phillips*, 415 F.3d at 1312 ("Because the patentee is required to 'define precisely what his invention is,' the Court explained, it is 'unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.'") (quoiting *White v. Dunbar*, 119 U.S. 47, 52 (1886)).
[63] *See* Section III *supra*.
[64] D. Kan. Pat. Rule 4.1-4.7.
[65] Plaintiff sent deposition notices to Defendant's President, Chief Creative Officer, 30(b)(6) representative, and designers of six allegedly infringing dresses, potentially adding up to nine depositions depending on the number of designers deposed. (*See supra* notes 37-38 and accompanying text.)
[66] The same examination topics were listed on each deposition notice. (*See supra* notes 47 and accompanying text.)
[67] *See Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538, 540 and n.21 (D. Kan. 2003) (courts may enter protective orders when discovery requests are unduly burdensome on their face).
[68] *See supra* note 28 and accompanying text.

evidence pursuant to the ordinary designer standard, the Court will permit less burdensome discovery on the subject.[69] Plaintiff shall be allowed to propound one set of 10 interrogatories, with no subparts, relating to Topics 7, 9, 10 and 14 on Defendant Essense of Australia, Inc., only.[70]

### 2. Undue Burden Regarding Depositions of Defendant's President and Chief Creative Officer

Defendant also argues that depositions of its President and Chief Creative Officer would create an undue burden. Defendant argues the proposed deponents are senior executives of a large company with extremely demanding schedules and responsibilities, and who have no knowledge of how Plaintiff's patent claims should be construed. Defendant also argues Plaintiff has not yet tried to seek any information from lower level corporate personnel, as it should first do. Additionally, Defendant states the executives are citizens of Australia and reside in Switzerland, and Plaintiff has not gone through the proper procedures via The Hague Convention to depose them. Therefore, per Defendant, the burden and cost of producing the senior executives for depositions outweigh any benefits.

In response, Plaintiff states Defendant named the President and Chief Creative Officer as witnesses in its initial disclosures and argues they would have specific

---

[69] Fed. R. Civ. P. 26(c)(1)(C), (D) (allowing courts to protect a party from undue burden by prescribing a discovery method other than the one selected by the party seeking discovery and limiting the scope of discovery to certain matters).

[70] Although Topic 14 was not discussed above, it asks about the identity of documents reviewed by the witness in preparation for the deposition. The Court believes a similar question would be relevant for the interrogatories.

knowledge about how Defendant's "company makes dresses from design drawings, how [Defendant's] design drawings are interpreted, and how [Defendant's] design drawings compare with the drawings in [Plaintiff's] Patents."[71] But again, as explained in the above section, none of these subjects are relevant to claim construction discovery, which relates to construing Plaintiff's patent drawings, not Defendant's dresses or designs.

In response to Defendant's Hague Convention arguments, Plaintiff states it would not be an undue burden to produce the two executives for depositions in Kansas City because Defendant's design office is located in Kansas City and it appears the two executives actually reside in Kansas City. During the course of the December 12, 2018 hearing, the Court was unable to determine the residency of the executives, but, for the reasons stated below, finds it irrelevant to resolving the instant dispute.

In considering whether to allow the depositions of high-ranking corporate officials, the Tenth Circuit Court of Appeals and courts in this district have applied the usual protective order standards while taking into consideration special factors that may apply to such officials, such as the executive's knowledge of the issues in the case, the availability of direct supervisors and lower-level managers for deposition, the seeking party's attempt to gather information from other sources, and scheduling conflicts.[72]

Here, Plaintiff has not convinced the Court the executives could answer how a person of skill in the art would interpret the patent drawings any better/differently than a

---

[71] ECF No. 48, p. 16.
[72] *Van Den Eng v. Coleman Co.*, No. 05-MC-109-WEB-DWB, 2005 WL 3776352, at *2 (D. Kan. Oct. 21, 2005) (citing *Thomas v. International Business Machines*, 48 F.3d 478, 483–484 (10th Cir. 1995)).

18

lower-level designer, and it does not appear Plaintiff has attempted to first seek this information from other employees. For these reasons and the reasons laid out in the section above, the Court **GRANTS** Defendant's request for Protective Order. The depositions of these senior executives shall not proceed as noticed during claim construction discovery.

3. **Expenses**

Pursuant to Rules 26(c)(3) and 37(a)(5)(A), if a motion for protective order is granted, the court must require the party whose conduct necessitated the motion to pay expenses incurred in making the motion unless circumstances, like substantial justification, make such an award unjust. If such a motion is denied, the court must likewise require the movant to pay the opposing party its reasonable expenses.[73] Here, while the Court is granting Defendant's Motion, it is also permitting Plaintiff to pursue limited discovery. Additionally, the Court believes both parties were substantially justified in bringing their respective positions before the Court. Under these circumstances, the Court finds it appropriate and just to decline an award of expenses to either party. Therefore, each party will bear their own expenses incurred relating to the Motion. But, Plaintiff is strongly cautioned against issuing further discovery, written or otherwise, which circumvents the Court's previous order limiting discovery to claim construction only during this time period.

---

[73] *See* Fed. R. Civ. P. 26(c)(3) and Fed. R Civ. P. 37(a)(5)(B).

**IT IS THEREFORE ORDERED** that Defendant's Motion for Entry of Protective Order (ECF No. 43) is **GRANTED**. The depositions described herein shall not proceed as noticed during claim construction discovery. Instead, Plaintiff is allowed to propound one set of ten interrogatories (no subparts) directed to Defendant regarding examination topics 7, 9, 10, and 14. **Nothing in this Memorandum and Order should be perceived or interpreted as preventing or limiting Plaintiff from deposing the witnesses identified herein during another stage of discovery, or during this stage of discovery if the examination topics are agreed on by both parties.**

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 15th day of January, 2019.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate