## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JENNY YOO COLLECTION, INC.,

     Plaintiff,

     v.                          Case No. 17-2666-JAR-GEB

ESSENSE OF AUSTRALIA, INC.,

     Defendant.

## MEMORANDUM AND ORDER

Plaintiff Jenny Yoo Collection, Inc. ("JY") asserts claims against Defendant Essense of Australia, Inc. ("Essense") for trade dress infringement in violation of section 43(a) of the Lanham Act[1], trade dress infringement and unfair competition under New York common law, unfair business practices under New York General Business Law § 349 ("NYGBL § 349"), unjust enrichment, and patent infringement of both its '723 Patent and '120 Patent.  In an August 7, 2018 Memorandum and Order, the Court denied Essense's first motion to dismiss with respect to JY's patent infringement claims and granted JY leave to amend its Complaint.[2]  JY filed its Amended Complaint on September 20, 2018.[3]  This matter is before the Court on Essense's Second Motion to Dismiss for Failure to State a Claim (Doc. 31) as to JY's claims of trade dress infringement under the Lanham Act (Count I), common law trade dress infringement and unfair competition (Count II), unfair business practices (Count V), and unjust enrichment (Count VI).[4]  As explained below, Essense's partial motion to dismiss is **granted**.

---

[1] 15 U.S.C. § 1125(a).

[2] Doc. 25.

[3] Doc. 27.

[4] Essense does not seek dismissal of JY's patent infringement claims in Counts III and IV.

# I.    Standard

In order to pass muster under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[5]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[6]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[7]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[8]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[9]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[10]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[11]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[5] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[8] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[9] *Id.*

[10] *Id.* at 679.

[11] *Id.*

misconduct alleged."[12]

## II.  Background and Procedural History

The following facts are drawn from JY's Amended Complaint; the well pleaded facts alleged therein are assumed to be true, as required on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[13]

### *JY's Convertible Bridesmaid Dresses*

JY designs and manufactures bridesmaid dresses, wedding gowns, and other wedding apparel, including the "wildly popular, convertible 'Aidan' and 'Annabelle' bridesmaid dress designs," which were introduced in 2012 and are the subject of this litigation.[14]  JY introduced both short and floor-length versions of the convertible dresses.  JY claims that "[r]eviewers, analysts and consumers immediately recognized the convertible dress as a 'game changer,'" because prior versions of convertible bridesmaid dresses "were bulky, awkward and utilitarian, requiring that conversions be made by tying together components of the dress in different and often unattractive configurations."[15]  The JY convertible dress design was "radically different" in that

> [i]t provided for use of lightweight material with two rear and two front loose panels attached and hung from the waist seam that blend seamlessly over the natural and soft drape and folds of the skirt, and could be easily raised by hand and rearranged for purposes of converting the dress into different neckline styles and inherently distinctive and sophisticated looks.[16]

JY alleges that its "Aidan" and "Annabelle" bridesmaid dresses contain the JY Trade

---

[12] *Id.* at 678.

[13] *Twombly*, 550 U.S. at 545.

[14] Amended Complaint, Doc. 27 ¶¶ 1–2.

[15] *Id.* ¶ 2.

[16] *Id.*

Dress, which is

> that the dresses are made of lightweight material with: (i) a
> strapless upper garment (bodice) portion with a sweetheart shape
> neckline covering an area above the waist of the user having a
> front and rear portion; (ii) a skirt having a front and rear portion
> attached to the upper garment (bodice); and (iii) two front panels
> and two rear panels with a natural soft drape that seamlessly blend
> with the dress regardless of whether the panels are hanging in their
> natural position or raised over the bodice to create the different
> configurations of the dress.[17]

The two front and the two back panels of the "Aidan" and "Annabelle" dresses seamlessly blend

into the bodice of the dress, creating "the illusion that the panels smoothly blend uninterrupted

with the bodice, skirt and/or entire dress to create a singular, integrated look."[18] JY defines

"seamless blending" as the concept that

> from the point of view of the ordinary observer, it will be
> noticeable that the dress contains front and back panels separate
> from other components of the dress, which when integrated into
> the dress create looks that are smooth and continuous, with no
> apparent gaps or spaces between one part or the next, and without
> seams or obvious joints. Thus, while the front and rear panels are
> noticeable to the ordinary observer as distinct components of the
> dress, nonetheless, they create the impression of an integrated,
> natural, elegant, unified dress design.[19]

JY alleges that at least six of Essense's bridesmaid dresses—Long Solid Chiffon, Style

#8472; Short Solid Chiffon, Style #8471; Ombre Short Chiffon, Style # 8471OM; Ombre Long

Chiffon, Style # 8472OM; Junior Short Chiffon Convertible, Style # J4009; and Junior Chiffon

Convertible, Style # J40010 (collectively, the "Infringing Products")—misappropriate the JY

Trade Dress, constitute unfair competition, infringe on one or more of JY's intellectual property

rights, and have resulted in NYGBL § 349 violations and unjust enrichment. JY contends that

---

[17] *Id. ¶* 67.

[18] *Id. ¶* 69.

[19] *Id.*

the Infringing Products appear to be actual JY dresses, with the same ornamental, nonfunctional

and functional features, and that when worn in public, the Infringing Products would be viewed

as JY products.[20]  As proof of the alleged infringements, JY includes side-by-side photograph

comparisons between its dresses and the Infringing Products.[21]

Essense's alleged use of the JY Trade Dress "has caused, and is likely to cause, confusion

or mistake, or to deceive consumers, purchasers, and others into thinking that Essense's dress

designs shown [in the Amended Complaint] are JY dress designs, or that they are sponsored by

or affiliated with JY, when they are not."[22]  According to JY, the dresses featuring the JY Trade

Dress are used at public and social events "where third parties, who were not present when the

products were purchased, will associate them the JY" because of the JY Trade Dress.[23]  JY's

designs are "premium-priced products," whereas Essense has a "more budget conscious client

base," and as such, the alleged infringements threaten to diminish JY's goodwill and ability to

sell its products at a premium price.[24]

### *Litigation History*

In March 2016, JY filed complaints against Essense and two additional defendants,

David's Bridal, Inc. ("DBI") and Watters Designs, Inc., d/b/a Watters & Watters, and Wtoo

Partners, L.P. (collectively, "Watters"), in the Southern District of New York, alleging claims for

trade dress infringement in violation of section 43(a) of the Lanham Act, New York common law

trade dress infringement and unfair competition, infringement of the '120 Patent and the '723

---

[20] *Id. ¶* 57.

[21] *Id.* ¶ 60.

[22] *Id.* ¶ 62.

[23] *Id.*

[24] *Id.* ¶ 63.

Patent, unfair business practices in violation of NYGBL § 349, and unjust enrichment (the "New York lawsuit").[25] The New York court granted Watters' and Essense's motions to dismiss for improper venue, with leave for JY to refile its claims in the proper venue.[26] The court also granted DBI's partial motion to dismiss all but the '793 Patent infringement claim directed to the long dresses. With respect to the Lanham Act and common law trade dress and unfair competition claims, the court found that JY failed to allege sufficient facts to support a plausible inference that its alleged trade dress had "secondary meaning."[27] The New York court further held that prosecution history estoppel barred JY from claiming the DBI infringing products infringed the '120 Patent.[28] Finally, the court dismissed the New York deceptive practices and unjust enrichment claims.[29] The New York lawsuit subsequently settled while JY's motion for reconsideration was pending.[30]

In December 2017, JY filed this action against Essense in the District of Kansas, where Essense is incorporated and has its principal place of business. Essense subsequently moved to dismiss all of JY's claims for failure to state a claim.[31] On August 7, 2018, this Court denied Essense's first motion to dismiss with respect to the patent infringement claims and granted JY leave to amend its Complaint with respect to issues surrounding the trade dress infringement claim.[32] The Court granted Essense's motion to dismiss JY's cause of action brought under

---

[25] *Jenny Yoo Collection, Inc. v. Watters Design, Inc.*, Nos. 16-2205 (VSB), 16-2647 (VSB), 16-3640 (VSB), 2017 WL 4997838, at *5 (S.D.N.Y. Oct. 20, 2017) [hereinafter *Watters I*].

[26] *Id.* at *6–7.

[27] *Id.* at *8–9.

[28] *Id.* at *9–10.

[29] *Id.* at *10–11.

[30] *See Jenny Yoo Collection, Inc. v. David's Bridal, Inc.*, No. 16-CV-2647-VSB (S.D.N.Y. May 29, 2018).

[31] Doc. 11.

[32] Doc. 25 at 8–12.

Kansas law without prejudice, allowing JY to amend its complaint to bring claims pursuant to New York state law.[33]  JY filed its Amended Complaint on September 20, 2018,[34] and Essense followed with its second motion to dismiss.[35]

JY also filed a similar complaint against Watters in the Northern District of Texas.  The Texas court denied in part a motion to dismiss filed by Watters, which allegedly copied the JY Trade Dress that is also the subject of this litigation (the "Texas lawsuit").[36]  The complaint was nearly identical to JY's first complaint in this action, with a different defendant and allegedly infringing products.[37]  The Texas court dismissed JY's '120 Patent claim under the doctrine of prosecution history estoppel,[38] but upheld in part as properly pled JY's trade dress and '723 Patent claims.[39]  The court granted JY leave to amend to clarify what its trade dress covers beyond "two front panels and two rear panels attached to the waist."[40]  JY subsequently amended its complaint, and Watters again moved to dismiss for failure to state a claim, which the Texas court has not decided.[41]

## III.    Discussion

Essense seeks dismissal of four of JY's claims in its Amended Complaint.  Specifically, Essense moves to dismiss JY's claims of trade dress infringement in violation of Lanham Act §

---

[33] *Id.* at 16.

[34] Doc. 27.

[35] Doc. 31.

[36] *Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, No. 3:17-cv-3197-M, 2018 WL 3330025 (N.D. Tex. June 6, 2018).

[37] *See* Doc. 21, Ex. B.

[38] *Id.* at 5–6.

[39] *Watters*, 2018 WL 3330025, at *2–6.

[40] *Id.* at *2.

[41] Alternative Dispute Resolution Summary filed by ADR Provider (Doc. 47), *Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, 3:17-cv-3197-M, 2018 WL 3330025 (N.D. Tex. Dec. 10, 2018).

43(a) (Count I), trade dress infringement and unfair competition in violation of New York common law (Count II), unfair business practices in violation of NYGBL § 349 (Count V), and unjust enrichment under New York common law (Count VI).

## A.  Trade Dress Infringement in Violation of Section 43 of the Lanham Act (Count I)

JY's first cause of action is for alleged trade dress infringement under section 43(a) of the Lanham Act.  The Lanham Act, 15 U.S.C. § 1125(a), provides a federal cause of action for trade dress infringement.[42]  "A product's trade dress 'is its overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques.'"[43]  To prevail on a trade dress infringement claim, a plaintiff must show: "(1) The trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) There is a likelihood of confusion among consumers as to the source of the competing products; and (3) The trade dress is nonfunctional."[44]

Essense argues that the Amended Complaint fails to (1) sufficiently identify the alleged trade dress; (2) allege that the trade dress has secondary meaning; and (3) allege that the trade dress is nonfunctional.  Essense makes no argument as to the likelihood of confusion, and therefore the Court determines it concedes this element.

Although the Tenth Circuit has not directly addressed the issue, other circuits require that plaintiffs identify the alleged trade dress by describing the specific elements of their trade dress.[45]  The Tenth Circuit approvingly cited the Second Circuit's *Yurman Design, Inc. v. PAJ,*

---

[42] *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

[43] *Id.* at 1226–27 (quoting *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002)).

[44] *Id.* at 1227; 15 U.S.C. § 1125(a)(3).

[45] *See, e.g., Test Masters Educ. Servs., Inc. v. State Farm Llyods*, 791 F.3d 561, 565 (5th Cir. 2015) ("When alleging a trade dress claim, the plaintiff must identify the discrete elements of the trade dress that it wishes to protect."); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014) ("[I]t is the plaintiff's duty to articulat[e] the specific elements which comprise its distinct dress"); *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468

*Inc.* decision for the requirement of articulating a trade dress with respect to determining whether the trade dress is inherently distinctive.[46] *Yurman* emphasized that the requirement of articulating the design elements that comprise a trade dress "applies with equal or greater force to any case in which a plaintiff seeks protection for a line of products," which requires the trade dress to have developed secondary meaning.[47] A plaintiff must identify and describe the elements of an asserted trade dress in a product design case because "[i]t is too easy for the question of design and configuration ('overall look') to degenerate into a question of quality, beauty, or cachet."[48]

Essense does not argue that JY has not alleged the discrete elements of the JY Trade Dress. Indeed, JY has done so with its three-part list identifying the JY Trade Dress. Instead, Essense asserts that the phrase "seamless blending" is vague, ambiguous, and abstract, and that JY's description causes the trade dress analysis to impermissibly "degenerate into a question of quality, beauty, or cachet."[49] It further argues that the "seamless blending" explanation is confusing because it relies on an ordinary observer finding it noticeable that the bridesmaid dresses contain panels separate from the other part of the dress, while also appearing smooth and continuous. JY does not argue that this Court should forgo the requirement of a trade dress being defined with reference to the specific elements comprising its distinct trade dress. Instead, JY

---

F.3d 405, 415 (6th Cir. 2006) ("It will not do to solely identify in litigation a combination as 'the trade dress.' Rather, the discrete elements which make up that combination should be separated out and identified in a list."); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 118 (2d Cir. 2001); *Black & Decker Corp. v. Positec USA Inc.*, No. 11-cv-5249, 2015 WL 4183775, at *1 (N.D. Ill. July 10, 2015) ("[O]ther circuits have imposed an articulation requirement, requiring plaintiff to describe the specific elements of their trade dress.").

[46] *Forney Indus., Inc. v. Daco of Mo., Inc.*, 835 F.3d 1238, 1252 (10th Cir. 2016) (citing *Yurman*, 262 F.3d at 117–18).

[47] *Yurman*, 262 F.3d at 116–17.

[48] *Id.*

[49] *Id.* at 117.

asserts that it has adequately defined the JY Trade Dress with substantial particularity and articulated how the distinctive features appear in its line of convertible bridesmaid dresses. JY also asserts that the photographs included in the Amended Complaint help identify the JY Trade Dress, and that the Court may determine whether the verbal description, supplemented by the photographs, articulates a legally cognizable trade dress.

Here, JY describes the distinct components that make up the alleged JY Trade Dress.[50] In its Amended Complaint, JY articulates the character and scope of the alleged JY Trade Dress as

> the dresses are made of lightweight material with: (i) a strapless upper garment (bodice) portion with a sweetheart shape neckline covering an area above the waist of the user having a front and rear portion; (ii) a skirt having a front and rear portion attached to the upper garment (bodice); and (iii) two front panels and two rear panels with a natural soft drape that seamlessly blend with the dress regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress.[51]

The Court finds, however, that JY's description necessarily relies on a determination of beauty or quality by describing the panels has having "a natural soft drape that seamlessly blend with the dress . . . ."

In its Amended Complaint, JY elaborates on "seamless blending" with the description:

> from the point of view of an ordinary observer, it will be noticeable that the dress contains front and back panels separate from other components of the dress, which when integrated into the dress create looks that are smooth and continuous, with no apparent gaps or spaces between one part or the next, and without obvious seams or joints.[52]

---

[50] In its August 7, 2018 Memorandum and Order, the Court granted JY "leave to amend its Complaint to clarify what its trade dress covers beyond 'two front panels and two rear panels attached to the waist.'" Doc. 25 at 9.

[51] Doc. 27 ¶ 67.

[52] *Id.* ¶ 69.

This description of "seamless blending" is also vague and contradictory, and additionally poses a question of beauty or quality as it requires a determination of what makes "an integrated, natural, elegant, unified dress design."[53]  It therefore remains unclear what "seamless blending" refers to, and accordingly, distinctly what the alleged JY Trade Dress covers.  Although JY includes drawings and photographs of the designs, these do not alleviate the deficiencies of JY's trade dress descriptions.  As JY does not sufficiently allege a distinct trade dress, the Court need not consider whether the Amended Complaint sufficiently alleges secondary meaning and nonfunctionality.  JY's trade dress infringement claim under section 43(a) the Lanham Act is dismissed for failure to state a claim.

**B.      Trade Dress Infringement and Unfair Competition Under New York Common Law (Count II)**

Next, JY alleges trade dress infringement and unfair competition under New York common law.[54]  As discussed, section 43(a) of the Lanham Act creates a federal cause of action for infringement of unregistered marks.[55]  The New York common law tort of unfair competition allows a similar cause of action to prevent confusion between parties' products.  Under New York law, "the essence of unfair competition . . . is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods."[56]  The elements of an unfair competition claim under New York law are essentially identical to the elements of an unfair competition claim under the Lanham Act, namely that a

---

[53] *Id.*

[54] The parties do not dispute that New York law applies.

[55] 15 U.S.C. § 1125(a)(1)(A).

[56] *Int'l Diamond Imps., Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 514 (S.D.N.Y. 2014) (internal quotations omitted) (quoting *Eyal R.D. Corp. v. Jewelex New York Ltd.*, 784 F. Supp. 2d 441, 447 (S.D.N.Y. 2011)).

plaintiff must show (1) it owns a valid, protectable trade dress and (2) the defendant's actions are likely to cause confusion,[57] except the plaintiff must also show "bad faith by the infringing party."[58] As previously discussed, JY identified the distinct elements of its alleged trade dress in a manner that requires a determination of "quality, beauty, or cachet." Accordingly, JY fails to allege that it owns a valid, protectable trade dress, and therefore its claim for trade dress infringement and unfair competition under New York common law is dismissed.

## C. Unfair Business Practices Under NYGBL § 349 (Count V)

NYGBL § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."[59] Under New York law, "[t]o state a claim under § 349, a plaintiff must allege that: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."[60] Essense asserts that JY's § 349 claim is precluded by res judicata and a three-year statute of limitations, and further that JY does not allege a sufficient public harm.

### 1. Res Judicata

Essense first argues that JY's § 349 claim is barred by the doctrine of res judicata because JY did not appeal the Southern District of New York's dismissal with prejudice of its § 349 claim, and that the decision is now final. In the New York lawsuit, the court dismissed JY's § 349 claim with prejudice against DBI, explaining that "the gravamen of [JY's] claim is harm to

---

[57] *Id.* at 524 (quoting *Estate of Ellington ex rel. Ellington v. Harbrew Imps. Ltd.*, 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011)).

[58] *Id.* (quoting *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 541 (S.D.N.Y. 2012)).

[59] The parties do not dispute that New York law applies.

[60] *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam)); *see also Burberry Ltd. & Burberry USA v. Designers Imps., Inc.*, No. 07 Civ. 3997(PAC), 2010 WL 199906, at *8 (S.D.N.Y. Jan. 29, 2010) (citation omitted).

its own business interests . . . and that any amendment would be futile . . . ."[61]

JY argues that the doctrine of res judicata does not apply because there was no final judgment in the Southern District of New York as the court's order was not appealable.

> An order that adjudicates fewer than all of the claims in the action, or adjudicates the rights and liabilities of fewer than all of the remaining parties, is not a final order unless the court directs the entry of final judgment as to the dismissed claims or parties "upon an express determination that there is no just reason for delay."[62]

The Southern District of New York did not dismiss all of JY's claims and did not direct an entry of final judgment as to the dismissed claims.[63] Accordingly, the court's dismissal of JY's § 349 claim as to DBI was not appealable, and therefore not final.

Essense does not argue why this Court should construe the Southern District of New York's partial dismissal as a final judgment, nor does it provide a non-conclusory argument as to why the Southern District of New York's decision satisfies the res judicata requirements. As res judicata is an affirmative defense for which Essense carries the burden of proof, the Court cannot find that Essense has carried its burden of showing it is clearly established that it is entitled to judgment as a matter of law on JY's § 349 claims. Accordingly, the doctrine of res judicata does not bar JY's § 349 claims.

**2. Statute of Limitations**

Essense next argues that JY's § 349 claim is barred by a three-year statute of limitations.

---

[61] *Watters I*, Nos. 16-CV-2205 (VSB), 16-CV-2205 (VSB), 16-CV-CV-2647 (VSB), 2017 WL 4997838, at *11 (S.D.N.Y. Oct. 20, 2017).

[62] *Citizens Accord, Inc. v. Town of Rochester, N.Y.*, 235 F.3d 126, 128 (2d Cir. 2000) (quoting Fed. R. Civ. P. 54(b)).

[63] In the New York lawsuit, JY alleged "claims for trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), common law trade dress infringement and unfair competition, infringement of the '120 Patent and the '723 Patent, unfair business practices in violation of Section 349 of the New York General Business Law ("GBL"), and unjust enrichment." *Watters I*, 2017 WL 4997838, at *5. Defendant DBI filed a partial motion to dismiss with respect to all the claims except the '723 Patent Claim. *Id.*

When a federal court presides over supplemental state law claims, state substantive law controls.[64] Statutes of limitations are part of New York substantive law.[65] Under New York law, the statute of limitations for a claim under § 349 is three years, which accrues when a "plaintiff has been injured by a deceptive act or practice violating" the statute.[66]

JY alleges that "Essense . . . began producing and selling infringing products" sometime "around 2015."[67] Thus, as conceded by the parties, JY's cause of action for Essense's alleged § 349 violation accrued on or before April 15, 2015—the date JY first contacted Essense by letter regarding the alleged infringement of JY's intellectual property portfolio. Accordingly, the statute of limitations for JY's § 349 claim was April 15, 2018, prior to JY's filing of its Amended Complaint.[68]

JY argues, however, that the doctrine of relation back under Fed. R. Civ. P. 15(c) applies to its claim. Under Fed. R. Civ. P. 15(c)(1)(B), an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." "[A] party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide."[69] Generally, "amendments will relate back if they amplify the facts previously alleged, correct a technical defect in the prior complaint, assert a new legal theory of relief, or add another claim arising out

---

[64] *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

[65] *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (S.D.N.Y. 2007) (citing *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002)).

[66] *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1083 (N.Y. Ct. App. 2001) (citation omitted).

[67] Doc. 27 ¶ 67.

[68] JY filed its Amended Complaint, with the Court's leave, on August 20, 2018. Doc. 27.

[69] *McClelland v. Deluxe Fin. Servs., Inc.*, 413 F. App'x 718, 723 (10th Cir. 2011) (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984)).

of the same facts."[70]

Here, JY filed its original complaint in the District of Kansas on November 22, 2017.[71] JY's § 349 claim arises out of the same conduct giving rise to Essense's alleged trade dress infringement, and moreover, JY pled an analogous claim under Kansas law in its original complaint. The Court finds that both original claims provided Essense with sufficient notice of the § 349 claim. Essense's sole argument against relation back is its flawed contention that JY asserts that its Amended Complaint relates back to its pleadings in the New York lawsuit. This, however, does not impact the Court's analysis—the relevant complaint for the relation back analysis is JY's original November 22, 2017 complaint filed in this Court.[72] Accordingly, JY's § 349 claim relates back to its November 22, 2017 complaint and is not barred by the three-year statute of limitations.

### 3.    Allegation of Public Harm

While NYGBL § 349 is a consumer protection statute, commercial enterprises may bring § 349 claims if harm to the public at large at issue.[73] Courts routinely reject commercial claimants' § 349 claims where there are inadequate allegations of harm to the public interest, and thus "[c]ommercial claimants under § 349 must allege conduct that has 'significant ramifications for the public at large' in order to properly state a claim."[74] Where § 349 claims arise out of "disputes between competitors where the core of the claim is harm to another business as

---

[70] *Kidwell v. Bd. of Cty. Comm'rs of Shawnee Cty.*, 40 F. Supp. 2d 1201, 1217 (D. Kan. 1998); *see also Thrane v. Franklin First Fin., Ltd.*, 266 F.R.D. 51, 53–54 (E.D.N.Y. 2010) (noting Rule 15(c)'s touchstone inquiry "is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading").

[71] Doc. 1.

[72] Doc. 36 at 18–20.

[73] *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).

[74] *Id.* (quoting *Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 228 F. Supp. 2d 455, 465 (S.D.N.Y. 2002)).

opposed to consumers," courts typically find the public harm too insubstantial to satisfy pleading requirements and survive a Rule 12(b)(6) motion.[75]

JY asserts that it has adequately pled a claim under § 349, and primarily relies on *Burberry Ltd. & Burberry USA v. Designers Imports, Inc.*,[76] *GTFM*, *Inc. v. Solid Clothing, Inc.*,[77] and *Hall v. Bed Bath & Beyond, Inc.*[78] to support its assertion. While these three cases involve allegations of consumer confusion in conjunction with viable § 349 claims, the Court finds these cases distinguishable as none discuss a public harm requirement.[79]

To the extent JY asks this Court to apply the minority rule in New York that allegations of consumer confusion are sufficient for a NYGBL § 349 claim to survive, the Court declines to depart from the majority rule requiring more than allegations of general consumer confusion to support the public harm requirement.[80] In *Mayes v. Summit Entertainment Corp.*, the United

---

[75] *RCA Trademark Mgmt. S.A.S. v. VOXX Intern. Corp.*, 2015 WL 5008762, at *4 (S.D.N.Y. Aug. 24, 2015) (citing *Gucci America*, 277 F. Supp. 2d at 273).

[76] No. 07 Civ. 3997(PAC), 2010 WL 199906 (S.D.N.Y. Jan. 19, 2010).

[77] 215 F. Supp. 2d 273 (S.D.N.Y. 2002).

[78] 705 F.3d 1357 (Fed. Cir. 2013).

[79] *See Hall*, 705 F.3d at 1369 (noting that the complaint contained allegations of consumer confusion in deciding that a § 349 claim was not subject to dismissal on the pleadings, but not discussing allegations of public harm); *GTFM, Inc.*, 215 F. Supp. 2d at 301–02 (discussing the existence of consumer confusion in the context of whether a defendant engaged in a materially misleading consumer-oriented act); *Burberry*, 2010 WL 199906, at *8 (finding that counterfeit products were misleading in a material way under § 349, but not discussing a public harm requirement).

[80] *E.g. Luv N' Care, Ltd. v. Walgreen Co.*, 695 F. Supp. 2d 125, 135–36 (S.D.N.Y. 2010) (alteration in original) (quoting *Nat'l Distillers Prods. Co. v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 487–87 (S.D.N.Y. 2002)) (dismissing the plaintiff's § 349 claims when the plaintiff asserted that the defendant violated the statute by conducting a "bait and switch" of the products at issue and mislead customers by selling knock-off products to confused consumers); *see also Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273–74 (S.D.N.Y. 2003) ("However, when a competitor raises a § 349 claim, '[i]t is clear that 'the gravamen of the complaint must be consumer injury or harm to the public interest.' . . . Claims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, both constitute situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements of § 349." (internal citations omitted)); *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 552 (S.D.N.Y. 2003) (dismissing a § 349 claim in a trade dress infringement case because the complaint failed to allege public harm and the core of the claim was harm to the plaintiff's business as opposed to consumers); *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012) (quoting *MyPlay City, Inc. v. Conduit Ltd.*, No. 10-cv-1615, 2012 WL 1107648, at *15 (S.D.N.Y. Mar. 30, 2012)) ("[T]he prevailing view in the Second Circuit is that 'trademark . . . infringement claim[s] are not cognizable under [§ 349]

States District Court for the Southern District of New York rejected part of a magistrate judge's Report and Recommendation that allowed a plaintiff's § 349 claim survive a motion to dismiss.[81] The Report and Recommendation stated "that a non-consumer plaintiff bringing a trademark infringement claim under Section 349 need not allege specific and substantial injury to the public interest."[82] However, the district court determined that New York state-law precedent and the majority of federal courts interpreting § 349 require an alleged injury to the consumers or public interest that is more than general consumer confusion to state a viable claim.[83] Here, the Court agrees with the majority rule that a corporate plaintiff must allege a harm other than general confusion to state a claim under § 349.

JY's arguments that it has stated a claim for a violation of § 349 seemingly ignore the large body of law requiring public harm greater than consumer confusion to state a claim under § 349. Indeed, JY argues that it has adequately pled a § 349 claim because "the instant matter involves purposeful counterfeiting of JY's goods in a manner likely to cause consumer confusion."[84] Specifically, JY has pled that "Essense's infringing use of the JY Trade Dress is likely to cause confusion as to the source of Essense's products and is likely to cause others to be confused or mistake [sic] into believing that there is a relationship between Essense (and its

---

unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement.'"); *Gucci Am., Inc.*, 277 F. Supp. 2d at 273–74 (citations omitted) ("Claims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, both constitute situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements of § 349.").

[81] 287 F. Supp. 3d 200, 205 (S.D.N.Y. 2018).

[82] *Id.*

[83] *Id.* at 206–11 (discussing the majority rule in New York state and federal courts, and dismissing the plaintiff's claim for failing "to allege a consumer-oriented harm greater than consumer confusion, a harm which is insufficient to support a claim under Section 349").

[84] Doc. 36 at 15.

Sorella Vita brand) and JY or that Essense's products are affiliated with or sponsored by JY,"[85] and that Essense's actions "are likely to mislead or deceive the general public."[86]  While JY asserts that it has been injured because of "lost sales, money and profits,"[87] these allegations do not lead to an inference of public harm beyond general consumer confusion about the relationship between Essense and JY and their products.  It is clear that the gravamen of JY's claim is harm to its own business interests.  This is insufficient as a matter of law to state a claim under § 349, and therefore, JY's § 349 claim is dismissed.

## D.  Unjust Enrichment Under New York Law (Count VI)

Lastly, Essense moves to dismiss JY's unjust enrichment claim.  Unjust enrichment is a common law quasi-contract cause of action, based on the equitable principle that a person should not be allowed to enrich himself unjustly at the expense of another.[88]  "To state a claim of unjust enrichment under New York law,[89] the plaintiff must allege: '(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or benefit to the plaintiff.'"[90]

The parties disagree about the degree of relationship required between parties to support a New York common law unjust enrichment claim.  Essense asserts that "an unjust enrichment claim under New York law requires 'some type of direct dealing or actual, substantive

---

[85] Doc. 27 ¶ 107.

[86] *Id.* ¶ 108.

[87] *Id.* ¶ 111.

[88] *Choi v. Tower Research Capital, LLC*, 890 F.3d 60, 69 (2d Cir. 2018).

[89] The parties do not dispute that New York law applies.

[90] *Merced Irrigation Dist. v. Barclays Bank PLC*, 165 F. Supp. 3d 122, 145 (S.D.N.Y. 2016) (quoting *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001)).

relationship.'"[91]  By contrast, JY states that "New York law does not require an unjust enrichment plaintiff to plead 'direct dealing,' or an 'actual, substantive relationship with the defendant.  It merely requires that the plaintiff's relationship with a defendant not be 'too attenuated.'"[92]

The Court need not decide which statement of the law is proper.  Even under JY's more lenient standard there is not a sufficient relationship between JY and Essense to support unjust enrichment because the allegations in the Amended Complaint characterize the parties as competitors in the bridal industry.[93]  Allegations merely establishing the parties' competitive relationship are "far too attenuated to state a claim [of unjust enrichment]."[94]  In *GeigTech East Bay LLC*, a trade dress infringement case, the United States District Court for the Southern District of New York found the plaintiff failed to state a claim for unjust enrichment under New York common law when "[t]he Complaint allege[d] only that the parties are competitors [and] that Defendant profited from the sales of its own product."[95]

Here, JY alleges that the parties are members of a small subset of the fashion industry

---

[91] *Reading Int'l, Inc. v. Oaktree Capital Mgmt.*, 317 F. Supp. 2d 301, 304 (S.D.N.Y. 2003).

[92] *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403 (E.D.N.Y. 2010) (quoting *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007)).

[93] *See GeigTech East Bay LLC v. Lutron Elecs. Co., Inc.*, 2018 WL 6518858, at *13 (S.D.N.Y. Nov. 29, 2018)).

[94] *Id.* (citing *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110–11 (N.Y. 2011)).

[95] *Id.* (citation omitted); *see also Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 353 (S.D.N.Y. 2014) (finding, in a trademark infringement case, that the plaintiff did not state a claim for unjust enrichment because no direct benefit was conferred from the plaintiff to the defendant and the defendant was only enriched indirectly); *Franklin v. X Gear 101, LLC*, No. 17 Civ. 6452 (GBD) (GWG), 2018 WL 3528731, at *20 (S.D.N.Y. July 23, 2018) (citations omitted) (dismissing the plaintiff's unjust enrichment claim in a trademark infringement case because the plaintiff did not allege a sufficient relationship between the parties); *Int'l Diamond Imps., Inc. v. Med. Art, Inc.*, No. 15-CV-4045 (KMW), 2017 WL 2839640, at *10 (S.D.N.Y. June 29, 2017) (dismissing an unjust enrichment claim in a trade dress infringement case because the plaintiff did not allege they performed services for the defendant or allege a sufficient relationship with the defendant).

specializing in bridal dresses,[96] that "Essense is a prominent, well-known competitor of JY,"[97] and that Essense benefited from its labor by continuing to sell dresses that copy its design and marketing.[98]  Even assuming their truth, the allegations pertaining to JY's relationship with Essense simply indicate a competitive business relationship, and do not lead to an inference of a quasi-contractual relationship.  The parties' relationship is too attenuated to support a claim for unjust enrichment.  Accordingly, JY fails to state a claim of unjust enrichment claim under New York law.[99]

## E.    JY's Request to Amend its Second Complaint

JY requests that the Court allow it leave to amend its complaint a second time in order to address its defects, and Essense opposes JY's request on the basis that amendment would be futile.  Under Fed. R. Civ. P. 15(a)(2), leave to amend a complaint is freely given when justice so requires.  Whether to allow amendment, after the permissive amendment period, is in the sound discretion of the court.[100]  A party is typically granted leave to amend under this rule unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendment previously allowed, or futility of amendment."[101]

---

[96] Doc. 27 ¶ 4.

[97] *Id.* ¶¶ 63–64, 84–92.

[98] *Id.* ¶ 4.

[99] Essense also asserts that the Southern District of New York noted that JY's unjust enrichment claim is preempted by patent law.  Doc. 32 at 17.  This misconstrues the court's footnote in which it merely "note[d] that neither party has addressed the issue of whether Plaintiff's unjust enrichment claim is preempted by federal patent law" and therefore did not address preemption. *Watters I*, Nos. 16-CV-2205 (VSB), 16-CV-2205 (VSB), 16-CV-CV-2647 (VSB), 2017 WL 4997838, at *11 n.13 (S.D.N.Y. Oct. 20, 2017) (citations omitted).  Similarly, this Court need not address Essense's brief preemption argument as JY fails to state a claim for unjust enrichment under New York law.

[100] *See Forman v. Davis*, 371 U.S. 178, 182 (1962); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir.2010); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

[101] *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

This Court has already provided JY with one opportunity to amend its claims, which failed to cure the deficiencies the Court had pointed out in its previous Memorandum and Order.[102] While JY asserts it was given "the limited right to amend—principally to augment its trade dress description—by this Court and the United States District Court for the Northern District of Texas,"[103] this is contrary to the Amended Complaint, as the Amended Complaint contains additional claims under New York law, as permitted by this Court. Additionally, JY has brought nearly identical causes of actions in the Southern District of New York and the Northern District of Texas and experienced the same difficulties with adequately stating a claim under Rule 12(b)(6), demonstrating the futility of allowing JY to continue to amend its claims. Accordingly, Plaintiff's request to amend its complaint a second time is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Essense's Second Motion to Dismiss is **granted**. Counts I, II, V, and VI are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: April 8, 2019

s/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[102] Doc. 25 at 23.

[103] Doc. 36 at 25.