**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JENNY YOO COLLECTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 2:17-cv-02666-JAR-GEB |
| | ) | |
| ESSENSE OF AUSTRALIA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING *MARKMAN* BRIEF**

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................... iv

I.    INTRODUCTION ................................................................................... 1

II.   BACKGROUND ...................................................................................... 1

III.  TERMS TO BE CONSTRUED .............................................................. 2

  A.    Essense's Proposed Claim Constructions ....................................... 2

  B.    Claim Construction Principles/Applicable Law .............................. 3

    1.    Design Patents ........................................................................... 3

    2.    Intrinsic Evidence ..................................................................... 3

    3.    Prosecution History ................................................................... 4

    4.    Extrinsic Evidence .................................................................... 5

    5.    Verbal Description ..................................................................... 6

    6.    Construction of Written Description Is Proper ........................... 7

  C.    Terms for Construction ................................................................... 9

    1.    Term: "Dress" as used in the 'D120 Patent ............................... 9

    2.    Term: "Convertible Dress" as used in the 'D723 Patent .......... 12

    3.    Term: "Side Panels" ................................................................ 15

    4.    Term: "The Two Side Panels" as used in the 'D120 Patent ..... 15

    5.    Term: "The Two Side Panels" as used in the 'D723 Patent ..... 17

    6.    Term: "Left side" .................................................................... 19

    7.    Term: "My New Design" ......................................................... 19

    8.    Each of the figures as filed ...................................................... 19

    9.    Each of the figures as issued.................................................... 19

    10.   The Scope of the Patents ......................................................... 20

    D.     Prior Art.................................................................................................................. 20

IV.    CONCLUSION....................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*Anheuser-Busch v. Crown Cork & Seal Techs.*,
   121 Fed. Appx. 388 (Fed. Cir. 2004) ................................................................ 3

*Astrazeneca AB v.Hanmi USA, Inc.*,
   No. 2013-1490, 2013 U.S. App. LEXIS 25199 **8-9 (Fed. Cir. 2013) ................... 4

*Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*,
   386 F.3d 1371 (Fed. Cir. 2004) .......................................................................... 3

*Computer Docking Station Corp. v. Dell, Inc.*,
   519 F.3d 1366 (Fed. Cir. 2008) .......................................................................... 4

*Contessa Food Prods, Inc. v. Conagra*,
   282 F.3d 1370 (Fed. Cir. 2002) .......................................................................... 3

*Crocs, Inc. v. International Trade Commission*,
   598 F.3d 1294 (Fed. Cir. 2010) .......................................................................... 3

*David A. Richardson v. Stanley Works, Inc.*,
   597 F.3d 1288 (Fed. Cir. 2010) .......................................................................... 7

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) ....................................................................... 3, 6

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
   535 U.S. 722 (2002) ........................................................................................... 5

*Gorham Company v. White*,
   81 U.S. 511 (1871) ............................................................................................. 3

*Hupp v. Siroflex of America, Inc.*,
   122 F.3d 1456 (Fed. Cir. 1997) .......................................................................... 7

*James v. Campbell*,
   104 U. S. 356 (1881) .......................................................................................... 6

*Keystone Bridge Co. v. Phoenix Iron Co.*,
   95 U. S. 274 (1877) ............................................................................................ 6

*Netword, LLC v. Centraal Corp.*,
   242 F.3d 1347 (Fed. Cir. 9 2001) ....................................................................... 4

*OddzOn Products, Inc. v. Just Toys, Inc.*,
  122 F.3d 1396 (Fed. Cir. 1997).................................................................. 7

*On Demand Mach. Corp. v. Ingram Indus.*,
  442 F.3d 1331 (Fed. Cir. 2006).................................................................. 4

*Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
  739 F.3d 694 (Fed. Cir. 2014)........................................................ 5, 11, 15

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)........................................................... 3, 4, 6

*Schriber–Schroth Co. v. Cleveland Trust Co.*,
  311 U.S. 211 (1940)................................................................................. 5

*Sunovion Pharms.,Inc. v. Teva Pharms. USA, Inc.*,
  731 F.3d 1271 (Fed. Cir. 2013).................................................................. 4

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002).................................................................. 3

*Toro Co. v. White Consol. Indus.*,
  199 F.3d 1295 (Fed. Cir. 1999).................................................................. 4

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996).................................................................... 3

*White v. Dunbar*,
  119 U.S. 47 (1886)................................................................................... 6

**Statutes**

35 U.S.C. § 112(a) and (b)............................................................................ 8

Section 43(a) of the Lanham Act .................................................................. 1

**Other Authorities**

Manual of Patent Examining Procedure (MPEP) § 1503.01.II .................................................. 7, 8

MPEP § 1503.01 ........................................................................................................................ 8

MPEP § 1504.05 ........................................................................................................................ 8

MPEP §1505 .............................................................................................................................. 8

**Rules**

D. Kan. Pat. Rule 4.1(a) ............................................................................................................ 2

D. Kan. Pat. Rule 4.2(a) ............................................................................................................ 2

New York General Business Law § 349 .................................................................................... 1

**Regulations**

37 C.F.R. § 1.152 ...................................................................................................................... 3

37 C.F.R. § 1.153(a) .................................................................................................................. 7

37 C.F.R. §§ 1.153, 1.154 ......................................................................................................... 8

37 C.F.R. § 1.312 ...................................................................................................................... 14

I.      **INTRODUCTION**

Essense of Australia, Inc. ("Essense") respectfully submits this brief proposing construction for six terms and phrases in U. S. Design Patent Nos. D698,120 ('D120)[1] and D744,723 ('D723)[2], which are directed to dresses.  Essense designs and sells wedding and bridesmaid dresses which are inspired by the beauty and spirit found in Australia's natural wilderness.  In particular, the Sorella Vita bridesmaid dress collection offers options for the traditional bridal party to mix and match gown styles.  This case concerns anticompetitive claims of Jenny Yoo, which has taken a decades-old convertible dress design, recently reintroducing it to the market and now claiming it as exclusive to Jenny Yoo.

II.     **BACKGROUND**

Plaintiff Jenny Yoo Collection, Inc. asserts that Essense of Australia infringes two design patents, U. S. Patent No. D698,120 ('D120) for a "Dress" and U. S. Patent No. D744,723 ('D723) for a "Convertible Dress".  The "claim" of the 'D120 patent is "The ornamental design for a dress, as shown and described."  The "claim" of the '723 patent is "The ornamental design for a convertible dress, as shown and described."  Each of the terms identified by Defendant to be construed is used in the text of the patents to describe the design and thus, is clearly appropriate for construction by the Court.  On April 8, 2019, the Court dismissed with prejudice claims against Essense for trade dress infringement in violation of section 43(a) of the Lanham Act, trade dress infringement and unfair competition under New York common law, and unfair business practices under New York General Business Law § 349.[3]

---

[1] Exhibit 1.
[2] Exhibit 2.
[3] Doc. 72.

## III.     TERMS TO BE CONSTRUED

### A.     Essense's Proposed Claim Constructions

Defendant Essense of Australia, Inc. ("Defendant" or "Essense") proposes the following terms from the Jenny Yoo Patents for construction:

1) Dress;                                    5) Left side;

2) Convertible dress;                        6) My new design;

3) Side panels;                              7) Each of the figures as filed; and

4) The two side panels;                      8) Each of the figures as issued.

Proper construction of these terms as provided to Plaintiff on February 8, 2019 will be claim dispositive.  The drawings in the patents are fatally inconsistent, non-enabling, and invalid making claim coherent and uniform construction impossible.  On September 28, 2018 and pursuant to D. Kan. Pat. Rule 4.1(a), Defendant provided a list of 14 terms to Plaintiff.[4] Plaintiff provided no terms for construction.[5]  Pursuant to D. Kan. Pat. Rule 4.2(a), Defendant provided the above narrowed list of terms and definitions to Plaintiff on February 8, 2019.[6] Plaintiff proposed no construction for the terms identified by Defendant as required by D. Kan. Pat. Rule 4.2(a) and is thus prohibited from submitting any opposing claim construction. Plaintiff is limited to stating only that the term need not be construed, but not offering an alternative construction or definition.

---

[4] Letter from James Kernell to Maurice Ross dated September 28, 2018, Exhibit 3.
[5] Submission from Ross dated September 28, 2018, Exhibit 4.
[6] These proposed terms for construction are set forth in a letter from James Kernell, Esq. to Maurice Ross, Esq., dated February 8, 2019, Exhibit 5.

**B.      Claim Construction Principles/Applicable Law**

1.      Design Patents

Design patent claim construction involves an interpretation of the scope of protection as a matter of law.  *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1376 (Fed. Cir. 2004).  In design patents, the features shown by solid lines are claimed, while the features shown as broken lines are not claimed.  37 C.F.R. § 1.152 ("Design Drawings"); *Contessa Food Prods, Inc. v. Conagra,* 282 F.3d 1370, 1378 (Fed. Cir. 2002).  In a design patent, all of the claimed ornamental features (those shown in solid lines) must be considered, because "[a] patented design is defined by the drawings in the patent, not just by one feature of the claimed design." *Id.* at 1378.  Evaluating infringement involves two distinct steps. *Anheuser-Busch v. Crown Cork & Seal Techs.*, 121 Fed. Appx. 388, 392 (Fed. Cir. 2004).  The first step is to construe the claim of the design patent applying the "ordinary observer" test.  *Id.* The second step is to compare the accused device to the patent claim.  *Id.  See Gorham Company v. White*, 81 U.S. 511, 528 (1871); *Crocs, Inc. v. International Trade Commission*, 598 F.3d 1294, 1303-04 (Fed. Cir. 2010); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008).

2.      Intrinsic Evidence

"[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1315 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1325 (Fed. Cir. 2002).  This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316.  In these situations, the inventor's lexicography

governs.  *Id.*  Moreover, when a patentee has clearly defined the scope of the invention in the

specification, it is not only proper, but necessary, for claim constructions to confine the claims to

that which the inventor has truly invented.  *On Demand Mach. Corp. v. Ingram Indus.*, 442 F.3d

1331, 1338 (Fed. Cir. 2006) ("the scope and outer boundary of claims is set by the patentee's

description of his invention.") *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 9

2001) ("The claims are directed to the invention that is described in the specification; they do not

have meaning removed from the context from which they arose.").  *See also Astrazeneca AB*

*v.Hanmi USA, Inc.,* No. 2013-1490, 2013 U.S. App. LEXIS 25199 **8-9 (Fed. Cir. 2013)

(confining claims to structure specification identified as "new" and "novel"); *Sunovion*

*Pharms.,Inc. v. Teva Pharms. USA, Inc*., 731 F.3d 1271, 1277 (Fed. Cir. 2013) (limiting claim

terms to an embodiment that was "repeatedly and consistently described" as "the invention");

*Computer Docking Station Corp. v. Dell, Inc*., 519 F.3d 1366, 1374 (Fed. Cir. 2008) (noting that

"repeated and definitive remarks in the written description could restrict a claim limitation to a

particular structure"); *Toro Co. v. White Consol. Indus.*, 199 F.3d 1295, 1301 (Fed. Cir. 1999)

(limiting claim term to unitary structure because "[n]o other structure is illustrated or

described … To the contrary, the specification described the advantages of the unitary structure

as important to the invention.").

        3.   <u>Prosecution History</u>

       A court "should also consider the patent's prosecution history, if it is in evidence."

*Phillips,* 415 F.3d at 1317 (citation omitted).  "[T]he prosecution history can often inform the

meaning of the claim language by demonstrating how the inventor understood the invention and

whether the inventor limited the invention in the course of prosecution, making the claim scope

narrower than it would otherwise be."  *Id.* at 1317.  The doctrine of prosecution history estoppel

prevents a patentee from "recaptur[ing] in an infringement action the very subject matter

surrendered as a condition of receiving the patent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 734 (2002).  It requires that "the claims of a patent be interpreted in light of the proceedings in the PTO during the application process."  *Id.* at 733.

> Where the patentee in the course of his application in the patent office has, by amendment, cancelled or surrendered claims, those which are allowed are to be read in the light of those abandoned and an abandoned claim cannot be revived and restored to the patent by reading it by construction into the claims which are allowed.

*Schriber–Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 218 (1940); *see Festo*, 535 U.S. at 733–34.  While prosecution history estoppel has more commonly been applied in utility patent proceedings, it applies to design patents as well.  *Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 702 (Fed. Cir. 2014).

Whether prosecution history estoppel bars the infringement claim in this case turns on three questions:  (a) whether there was a surrender of claim scope; (b) whether the surrender was for reasons of patentability; and (c) whether the accused design is within the scope of the surrender.  *Id.*

### 4.   Extrinsic Evidence

For claim construction, the law regarding use of extrinsic evidence and the "view" of the patentee has been settled for over 140 years.

> Some persons seem to suppose that a claim in a patent is like a nose of wax, which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express.  The context may, undoubtedly, be resorted to, and often is resorted to, for the purpose of better understanding the meaning of the claim; but not for the purpose of changing it, and making it different from what it is.  The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.  This has been so often expressed in the opinions of this court that it is unnecessary to pursue the subject

further.  *See Keystone Bridge Co. v. Phoenix Iron Co.,* 95 U. S. 274,
278 (1877); *James v. Campbell,* 104 U. S. 356, 370 (1881).

*White v. Dunbar*, 119 U.S. 47, 51-52 (1886).  Accordingly, claim terms "are generally given

their ordinary and customary meaning," which is "the meaning that the term would have to a

person of ordinary skill in the art in question at the time of the invention."  *Phillips,* at 1312-13

(citations omitted).  To determine this meaning, "the court starts the decision making process by

reviewing the same resources as would that person, viz., the patent specification and prosecution

history."  *See id*. at 1313.

### 5.    Verbal Description

As a matter of law, there is no prohibition from providing a verbal description of

the drawings of a design patent.  The *en banc* Federal Circuit noted in *Egyptian Goddess, Inc. v.*

*Swisa, Inc.* that:

> "[I]t is important to emphasize that a district court's decision
> regarding the level of detail to be used in describing the claimed
> design is a matter within the court's discretion, and absent a
> showing of prejudice, the court's decision to issue a relatively
> detailed claim construction will not be reversible error…In this
> case, for example, the district court came up with a detailed verbal
> description of the claimed design.  We see no inaccuracy in the
> court's description, and neither party has pointed to any prejudice
> resulting from the court's interpretation.  Yet it is not clear that the
> considerable effort needed to fashion the verbal description
> contributed enough to the process of analyzing the case to justify
> the effort."

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679-80 (Fed. Cir. 2008) (*en banc*)

(emphasis added).

In fact, in some cases, it may even be advisable to prepare a verbal claim

construction.  *Id.* at 680.  For example, it can be advisable for a district court to explain the

conventions of design patent drawings (e.g., that broken lines are usually not limiting).  *Id.*

("Apart from attempting to provide a verbal description of the design, a trial court can usefully

guide the finder of fact by addressing a number of other issues that bear on the scope of the

claim.  Those include such matters as describing the role of particular conventions in design

patent drafting, such as the role of broken lines…assessing and describing the effect of any

representations that may have been made in the course of the prosecution history…and

distinguishing between those features of the claimed design that are ornamental and those that

are purely functional….").

Where a design has elements that are dictated by function, it may even be

necessary for the court to sort out verbally the ornamental features of the design.  *OddzOn*

*Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Where a design contains

both functional and non-functional elements, the scope of the claim must be construed in order to

identify the non-functional aspects of the design as shown in the patent."); *David A. Richardson*

*v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010) ("Richardson fails to explain how a

court could effectively construe design claims, where necessary, in a way other than by

describing the features shown in the drawings.  Richardson's proposition that the claim

construction should comprise nothing more than the drawings is simply another way of arguing

that the court erred by identifying the functional elements of the patented article, and is therefore

unavailing.  We find no error in the court's claim construction.").

6.      Construction of Written Description Is Proper

A design patent is not required to have any written description.  *See* 37 C.F.R.

§ 1.153(a) ("No description, other than a reference to the drawing, is ordinarily required."); *Hupp*

*v. Siroflex of America, Inc.*, 122 F.3d 1456, 1464 (Fed. Cir. 1997) ("A design patent contains no

written description; the drawings are the claims to the patented subject matter."); Manual of

Patent Examining Procedure (MPEP) § 1503.01.II.  When a description is present, it can modify

the scope of the claim in ways somewhat more direct than is possible in a utility patent (short of

providing definitions for utility patent claim terms).  In fact, it is not unusual for a design patent claim to recite "[t]he ornamental design for [article of manufacture], as shown *and described*" as set forth in the present patents.  *Id.*

There are several reasons a written description can be advantageous.  First, a written description can make clear that certain sets of drawings relate to separate embodiments, effectively allowing for different scopes of the lone claim.  *See* MPEP § 1504.05 ("The specification should make clear that multiple embodiments are disclosed and should particularize the differences between the embodiments.").  Second, within these embodiments, the specification can make clear that certain embodiments are dependent on the disclosure of other embodiments.  *See* MPEP § 1504.05.  Third, a written description can describe the views taken on by the drawings, to avoid confusion as to the relationship between drawings.  *See* MPEP § 1503.01.II.  Examiners may, in fact, require such descriptions, including specification of the angle of a particular view (e.g., "left side elevation view").  A written description in a design patent application can also provide material that claims or disclaims portions of the design not shown in the figures, to provide antecedent basis for later amendments during prosecution.  *See* MPEP § 1503.01.

Construction of the written terms proposed by Defendant is proper as a matter of law.  The "claim" of the '120 patent is "The ornamental design for a dress, as shown *and described*."  The "claim" of the '723 patent is "The ornamental design for a convertible dress, as shown *and described*."  *See* MPEP §§ 1500 (generally), 1503.01, 1505; 37 C.F.R. §§ 1.153, 1.154; 35 U.S.C. § 112(a) and (b).

-8-

C.    **Terms for Construction**

1.    <u>Term:  "Dress" as used in the 'D120 Patent</u>

The proper construction of the term "dress" is a "non-convertible outer garment for women with only two side panels."  Exhibit 6; ESSENSE-001059.

As originally filed, Plaintiff claimed a "Convertible Dress."  In the description of Fig. 1, Plaintiff claimed "a convertible dress with the wearer holding the two convertible panels to show the skirt details."  The patent examiner determined that the original filing included two patently distinct groups of designs:  Group 1: Embodiment 1 consisting of Figs. 1-4, 6, 7 and 11 showing a short dress; and Group 2: Embodiment 2 consisting of Figs. 5, 8-10 showing a longer length dress and convertible configurations that can only be made by a longer length dress.  *Id.*; ESSENSE-001040.

The examiner suggested election of Group 1 because Group 2 was indefinite and lacked sufficient views.  *Id.*; ESSENSE-001041.  In response to the restriction requirement, Plaintiff elected Group 1, Embodiment 1, shown in Figs. 1-4, 6, 7 and 11, <u>without traverse</u>, accepting the Examiner's restriction requirement and selection of the figures.  *Id.*; ESSENSE-001026.  Plaintiff cancelled the other drawings, renumbered the drawings and submitted a new specification.  *Id.*; ESSENSE-001027-1037.

In response to Plaintiff's election of Group 1, Embodiment 1, the examiner issued an office action in which the examiner acknowledged that Plaintiff's election of Group 1, Embodiment 1 was without traverse (i.e. without argument thus conceding the restriction requirement.  *Id.*; ESSENSE-001016.  Further, the examiner made an Examiner's Amendment to the application as follows:

| ORIGINAL CONVERTIBLE DRESS[7] | AMENDMENT DRESS[8] |
|---|---|
| Fiig.(sic) 1 is a front view of a convertible dress with the wearer holding the two convertible panels to show the skirt details. The broken lines are for illustrative purposes only; | FIG. 1 is a front elevational view of a Dress shown with the two side panels shown open showing my new design |
| Fig. 2 is an enlarged rear view of Fig. 1; | FIG. 2 is an enlarged rear elevational view of the Dress showing my new design; |
| Fig. 3 is a front view of Fig. 1 with the two convertible panels deployed down; | FIG. 3 is a front elevational view thereof; |
| Fig. 4 is a side view of Fig. 3, the opposite side view being a mirror image of that shown; | FIG. 4 is a left side elevational view thereof; |
| Fig. 5 is a partial view of one of liners of the skirt having a layer of soft tulle attached to the hem of lining creating a slight A-line skirt. The broken lines are for illusrative (sic) porposes (sic) only. | FIG. 5 is a partial front elevational view showing the liner of the Dress showing my new design; |
| Fig. 6 is an enlarged view of Fig. 3, the bottom portion of the skirt and convertible panels have been omitted for the convenience of illustration; and | FIG. 6 is an enlarged partial front elevational view of FIG. 3 thereof; and |
| Fig. 7 is an enlarged rear view of Fig. 3, the bottom portion of the skirt and convertible panels have been omitted for the conventience (sic) of illustration; | FIG. 7 is an enlarged partial rear elevational view of FIG. 2 thereof. |

Significantly, the examiner unequivocally stated that the dress of Group 1, Embodiment 1, "does not appear to be convertible." *Id.*, ESSENSE-001016.  In response plaintiff accepted the change to the specification, but amended the title from "Dress" back to "Convertible Dress" arguing that the dress was indeed convertible.  Exhibit 6; ESSENSE-000996.  The examiner rejected Plaintiff's amended title and arguments stating that the "drawing figures of the elected embodiment do not show a 'convertible' dress, or a dress shown in alternate conversions, the title 'Convertible Dress' is not accurate and therefore is not acceptable."  *Id.;* ESSENSE-000995.  Plaintiff accepted the examiner's final determination

---

[7] Exhibit 6; ESSENSE-001037.
[8] Exhibit 6; ESSENSE-001016 (changed title to "Dress"); ESSENSE-001020 (changed claim).

without argument or appeal in order to secure the patent and the 'D120 patent issued titled "Dress."  Accordingly, pursuant to the doctrine of prosecution history estoppel, the 'D120 patent depicts and claims a "nonconvertible outer garment for women."  *See Pacific Coast Marine*, 739 F.3d at 703 ("By removing broad claim language referring to alternate configurations . . . the applicant narrowed the scope of his original application, and surrendered subject matter.").

The examiner also changed the original language of Fig. 1, deleting reference to "convertible panels" and added the language "side panels."  In the original specification, Plaintiff described "front panels" and "two rear panels" with respect to the two embodiments shown.  *Id.*; ESSENSE-001059 (*see* Fig. 1, Fig. 3, Fig. 5 and Fig. 10 and descriptions).  In response to the examiner's restriction requirement (*Id.*; ESSENSE-001038-1043), Plaintiff amended the specification (ESSENSE-001037) and specifically identified "the two convertible panels" (Fig. 1) in front (Fig. 3) and "the convertible panel" in the enlarged rear view of Fig. 7.  *Id.*

In the examiner's amendment to the specification, the phrase "the two convertible panels" was changed to "the two side panels" to more accurately describe the panels shown in Fig. 1 as attached to the sides of the dress, and dropped any reference to "panels" with respect to the rear views of the dress.  *Id.*; ESSENSE-001020.  In response, Plaintiff made no objection to the examiner's amendment to the specification, accepting the amendment.  *Id.*; ESSENSE-000996-1008.  By accepting the amendments without traverse, Plaintiff gave up any claim to rear panels.  *See Pacific Coast Marine*, 739 F.3d at 703.

Further, at the time of filing the application for the 'D120 Patent, Plaintiff knew how to depict a dress with four panels.  Below are Figs. 2A and 2B from U.S. Patent Appl. No. 14/720,453, filed February 8, 2012.  Exhibit 7; ESSENSE-001241-1250.



FIG. 2A                    FIG. 2B

Accordingly, pursuant to the doctrine of prosecution history estoppel the 'D120 patent depicts and claims "a nonconvertible outer garment for women with only two side panels." *See Pacific Coast Marine*, 739 F.3d at 703.

2.      Term:  "Convertible Dress" as used in the 'D723 Patent

The proper construction for the term "Convertible Dress" in the 'D723 patent is "an outer garment for women with only two side panels that may be converted or change positions."  Exhibit 6, Exhibit 8.

-12-

As originally filed, Plaintiff claimed a "Convertible Dress" showing a long dress in Fig. 5, and various panel positions in Figs. 8-10.  Exhibit 6; ESSENSE-001059-1070.  Only Fig. 10 showed a configuration claiming to use "both front convertible panels" and "two rear convertible panels."  *Id.;* ESSENSE-001059.  Plaintiff cancelled these drawings of Group 1, Embodiment 2, shown in Figs. 5 and 8-10 and deleted the figure descriptions from the specification without traverse.  Exhibit 6; ESSENSE-001026.  Significantly, the examiner's restriction requirement with respect to the long dress Group 2 was premised upon Group 2 being "indefinite and nonenabling because of the lack of sufficient views, i.e., side view, to understand the exact shape and profile of the Convertible Dress."  Exhibit 6; ESSENSE-001041.

Plaintiff filed a divisional[9] design patent application for the long dress claiming the benefit of the 'D120 patent.  Exhibit 8; ESSENSE-001199-1219.  The long dress application included original drawings Fig. 5 (renumbered Fig. 1), Fig. 6 (renumbered Fig. 5), Fig. 7 (renumbered Fig. 6), Fig. 8 (renumbered Fig. 7) and Fig. 9 (renumbered Fig. 8).  Original Fig. 10, the only figure depicting and claiming convertible rear panels was not filed with the long dress application.  *See* Exhibit 6; ESSENSE-001070.

In the first office action the examiner amended the specification "for accuracy" as follows:

---

[9] While Plaintiff filed a "divisional" application this was not correct.  A new matter cannot be introduced in a divisional application.  The correct designation should have been "continuation-in-part" with the new matter receiving a later filing date.

| ORIGINAL[10] | AMENDMENT[11] |
|---|---|
| Fig. 1 is a front view of a convertible dress with the wearer holding the two convertible panels to show the skirt details. The broken lines are for illustrative purposes only; | FIG. 1 is a front elevational view of a Convertible Dress shown with the two side panels shown open showing my new design; |
| Fig. 2 is a front view of Fig. 1 with the two convertible panels deployed down; | FIG. 2 is a front elevational view of a Convertible Dress showing my new design; |
| Fig. 3 is an elarged (sic) rear view of Fig. 2, the broken lines are for illustrative purposes only; | FIG. 3 is an enlarged rear elevational view thereof; |
| Fig. 4 is side elevation view of Fig. 2, the opposite side view being a mirror image of that shown; | FIG. 4 is a left side elevational view thereof; the right side elevational view being an identical mirror image thereof; |
| Fig. 5 is an enlarged front view of Fig. 2, the bottom portion of the skirt and convertible panels have been omitted for the convenience of illustration; | FIG. 5 is a partial enlarged front elevational view of the Convertible Dress showing my new design; |
| Fig. 6 is an enlarged rear view of Fig. 2, the bottom portion of the skirt and convertible panels have been omitted for the convenience of illustration. | FIG. 6 is a partial enlarged rear elevational view of the Convertible Dress showing my new design; |
| Fig. 7 is a front view of Fig. 2 with one of the front convertible panel positioned on the opposite side shoulder creating an alternate appearance of the dress. The bottom portion of the dress and one side of the convertible panel have been omitted for the convenience of illustration; and; | FIG. 7 is a partial front elevational view showing an alternate position of the Convertible Dress showing my new design; and |
| Fig. 8 is a front view of Fig. 2 with both of front convertible panels positioned on the shoulders creating another alternate appearance(sic) of the dress. The bottom portion of the dress have been omitted for convenience of illustration (sic). | FIG. 8 is a partial front elevational view showing another alternate position of the Convertible Dress showing my new design.<br><br>The broken lines in Figs. 1, 3, 7, and 8 of the Dress are for the purpose of illustrating environment, and form no part of the claimed design. |

Further, the examiner advised that "[s]hould the changes and/or additions be

unacceptable to applicant, an amendment may be filed as provided by 37 C.F.R. § 1.312.  To

---

[10] Exhibit 8; ESSENSE-001217.
[11] Exhibit 8; ESSENSE-001178-79.

ensure consideration of such amendment it MUST be submitted no later than the payment of the

issue fee."  Exhibit 8; ESSENSE-001177.  Plaintiff accepted the amendment without objection,

comment or appeal.

Significantly, Plaintiff accepted that "the two convertible panels" are more

accurately shown and described as "the two side panels" in Fig. 1 and all reference to "rear

convertible panels" was no longer shown or described.  As set forth above, Plaintiff clearly knew

how to depict four panels at the time of filing the application for the 'D723 patent, and with full

knowledge, chose not to.  Accordingly, Plaintiff claimed only "two side panels" and gave up any

claim to "rear convertible panels", limiting the convertibility to the two side panels.  *See Pacific*

*Coast Marine*, 739 F.3d at 703.

3.       Term:  "Side Panels"

The ordinary understanding of this term is "panels on the sides of the dress."

4.       Term:  "The Two Side Panels" as used in the 'D120 Patent[12]

The panels shown in Fig. 1 on the front of the dress are described as ***the*** two side

panels.  Use of the definite article "the" before "two side panels" in the description clearly

indicates that the dress has two (and only two), side panels.  Nowhere does the description refer

to any other panels.  Further, the claim emphasizes that only the two side panels raised in Fig. 1

are "showing my new design."

In Fig. 1 of the 'D120 patent (shown below), the two side panels appear to be the

two nonconvertible panels on the left and right sides of the dress extending downwardly from the

waistband along a center line to a lower edge squared outwardly to a rear edge secured to the

side of the dress.

---

[12] Exhibit 1.



**FIG. 1**

In Fig. 3 of the 'D120 patent (shown below), the two side panels appear to be the two nonconvertible panels on the left and right sides of the dress extending downwardly from the center portion of the waistband and curving outwardly to a point then extending straight upwardly to the waistband.



**FIG. 3**

The obvious and unambiguous observation of Figures 1 and 3 from the 'D120 Patent is they cannot depict the same side panels or dress.  As depicted, construction of the side panels of Fig. 1 must be "the two nonconvertible panels on the left and right sides of the dress extending downwardly from the waistband along a center line to a lower edge squared outwardly to a rear edge secured to the side of the dress."  The construction of the side panels of Fig. 3 must be "the two nonconvertible panels on the left and right sides of the dress extending downwardly from the center portion of the waistband and curving outwardly to a point then extending straight upwardly to the waistband.

     5.     <u>Term:  "The Two Side Panels" as used in the 'D723 Patent</u>[13]

The panels shown in Fig. 1 on the front of the dress are described as ***the*** two side panels.  Use of the definite article "the" before "two side panels" in the description clearly indicates that the dress has two (and only two), side panels.  Nowhere does the description refer to any other panels.  Further, the claim emphasizes that only the two side panels raised in Fig. 1 are "showing my new design."

---

[13] Exhibit 2.



As shown above in Fig. 1, the two convertible panels on the left and right sides of the dress extend downwardly from the waistband along a centerline to a lower point, curve outwardly and upwardly to the waistband; these two side panels are functional and as such are excluded from the scope of the claim.

But as shown above in Fig. 2, the two convertible panels on the left and right sides of the dress extend downwardly from the center portion of the waistband and curving outwardly to a point then extending upwardly to the waistband.  These two side panels are functional and as such are excluded from the scope of the claim.

The obvious and unambiguous observation of Figures 1 and 2 from the 'D723 Patent is they cannot depict the same side panels or dress.  As depicted, construction of the side panels of Fig. 1 must be "the two convertible panels on the left and right sides of the dress

extending downwardly from the waistband along a centerline to a lower point, then curving

outwardly and upwardly to the waistband."  The construction of the side panels of Fig. 2 must be

"the two convertible panels on the left and right sides of the dress extending downwardly from

the center portion of the waistband and curving outwardly to a point then extending upwardly to

the waistband."  Elimination of these functional elements, leaves a common dress.

>6.    Term:  "Left side"
>
>The ordinary understanding of this term is the view of the dress from the left side.

>7.    Term:  "My New Design"
>
>What is claimed as "my new design" cannot be determined based on the

inconsistencies in the drawings, written description and file history; separating the functional

elements of the side panels from the purported new design leaves a common prior art dress.  The

term "side panels" cannot be construed because as show in Fig. 4 of each of the patents, there is

no side panel as claimed.  As shown in Figs. 1 and 3 for the 'D120 Patent and Figs. 1 and 2 for

the 'D723 Patent, the panels are clearly different and an ordinary observer would be unable to

determine which configuration is claimed.  Based on the figures this term cannot be construed

consistently to describe a unitary design.  To be consistent with Figs. 1 and 3 of the 'D120 Patent

and description, and Figs. 1 and 2 of the 'D723 Patent and description, the dresses can only have

two panels.  However, the drawings of Fig. 2 and 4 of the 'D120 Patent and Figs. 3 and 4 of the

'D723 Patent cannot be reconciled respectively.

>8.    Each of the figures as filed:
>
>The figures as drawn and described are inconsistent and collectively incapable of

being construed as a single design and thus invalid for lack of enablement.

>9.    Each of the figures as issued:
>
>The figures as drawn and described are inconsistent and collectively incapable of

being construed as a single design and thus invalid for lack of enablement.

10.     The Scope of the Patents

The scope of each of the patents at issue is limited to the ornamental aspects of the design as depicted (to the extent that a single design can be discerned) and does not protect functional qualities or general design concepts.

**D.     Prior Art**

The scope of the patents at issue is circumscribed by prior art designs of formal and convertible dresses.[14]  In particular, Exhibit 9[15] (below) depicts a convertible dress with two side panels.

---

[14] The ability to convert the long dress to different configurations using one or more side panels is a function that is excluded from the scope of the claim.

[15] Exhibit 9; ESSENSE-000007-30, Convertible dress with two side panels, Martinson U.S. Pat. Pub. No. US2011/0307992, published December 22, 2011.



FIGURE 6A    FIGURE 6B    FIGURE 6C    FIGURE 6D    FIGURE 6E    FIGURE 6F

FIGURE 7

Exhibit 10[16] depicts a skirt with two side panels shaped as claimed in the 'D120 and 'D723

Patents.  Exhibit 11[17] depicts a dress with a sweetheart-shaped bodice and two side panels.



| | |
|---|---|
| Skirt with two side panels. | Dress with sweetheart-shaped bodice and two side panels. |

---

[16] Exhibit 10; ESSENSE-000038-40, Skirt with two side panels, Zanger U.S. Pat. No. 2,975,430, issued March 21, 1961.
[17] Exhibit 11; ESSENSE-000089-90, Dress with sweetheart-shaped bodice and two side panels, Colcord U.S. Pat. No. D108,389, issued February 8, 1938.

Exhibit 12[18] depicts a convertible dress with four convertible panels.  Exhibit 13[19] depicts a dress with a sweetheart-shaped bodice, waistband, and two side panels as claimed in the 'D120 and 'D723 Patents.



| Convertible dress with four convertible panels. | Dress with sweetheart-shaped bodice, waistband, and two side panels. |

---

[18] Exhibit 12; ESSENSE-000117-128, Convertible dress with four convertible panels, Tarr U.S. Pat. No. D695,492, issued December 17, 2013.
[19] Exhibit 13; ESSENSE-000136R-143R, Dress with sweetheart-shaped bodice, waistband, and two side panels, Advance Pattern Co., Pattern No. 6291.

Exhibit 14[20] depicts a dress with two side panels as claimed in the 'D120 and 'D723 Patents.

Exhibit 15[21] depicts a dress with two side panels as claimed in the 'D120 and 'D723 Patents.



| Dress with two side panels | Dress with two side panels. |
| --- | --- |

---

[20] Exhibit 14; ESSENSE-000144R-155R; Advance Pattern No. 9661, Dress with two side panels, Advance Pattern Company, Inc., Pattern No. 9661.
[21] Exhibit 15; ESSENSE-000156R-165R, Hollywood Pattern No. B549, Dress with two side panels, The Hollywood Pattern Service Ltd., Pattern No. B549.

Exhibit 16[22] depicts a dress with a sweetheart-shaped bodice, waistband, and two front panels and two rear panels.  Exhibit 17[23] depicts a skirt with six total panels, one front, one back and two side panels.

| | |
|---|---|
|  |  |
| Dress with sweetheart-shaped bodice, waistband and two front panels and two rear panels. | Skirt with six total panels, one front, one back and two side panels. |

---

Exhibit 18[24] depicts a dress with two side panels as claimed in the 'D120 and 'D723 Patents.

Exhibit 19[25] depicts a dress with two side panels as claimed in the 'D120 and 'D723 Patents.



| Dress with two side panels. | Dress with two side panels. |

---

[24] Exhibit 18; ESSENSE-000212R-221R, Dress with two side panels, Simplicity Pattern Co Inc., Simplicity Printed Pattern No. 5426, Copyright 1964.
[25] Exhibit 19; ESSENSE-000230R-239R, Dress with two side panels, McCall Pattern Co., Vogue Pattern No. 7571, Copyright 2002.

Exhibit 20[26] depicts a dress with a sweetheart-shaped bodice, waistband, and two front panels and two rear panels.





<hr>

[26] Exhibit 20; ESSENSE-001623-1625, Grace Kelly in the 1955 classic "To Catch a Thief."



## IV.     CONCLUSION

Prosecution history estoppel requires that Plaintiff's patents be limited to dresses claiming only two panels.  The 'D120 patent does not claim a convertible dress and the 'D723 patent claims only a convertible dress that uses only two side panels.  Both of the patents are hopelessly unable to be construed as claimed because each claims "the two side panels" but in each the claim of the view from the left side depicts no side panels.

Next, it is clear from Figs. 1 and 3 of the 'D120 patent and Figs. 1 and 2 of the '723 patent that the shapes of the two side panels are different and not a unitary design as required.  There is no way to determine which design is claimed or to determine a uniform design, rendering the patents hopelessly invalid.

Accordingly, Essense respectfully requests that the Court adopt its claim construction as set forth hereinabove.

Respectfully submitted,

By: */s/ James J. Kernell*
     James J. Kernell, KS #19559
     Ginnie C. Derusseau, KS #16988
     Kyle D. Donnelly, KS #25531
     ERICKSON KERNELL IP, LLC
     8900 State Line Road, Suite 500
     Leawood, Kansas 66206
     Telephone:   (913) 549-4700
     Facsimile:   (913) 549-4646
     Email:   jjk@kcpatentlaw.com
               ginnied@kcpatentlaw.com
               kdd@kcpatentlaw.com

     *Attorneys for Defendant*
     *Essense of Australia, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I certify that on the 12th day of April 2019, the foregoing Defendant's Opening *Markman* Brief was filed with the Clerk of the Court to be served via the Court's ECF system upon counsel of record.

*/s/ James J. Kernell*

-29-