# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**JENNY YOO COLLECTION, INC.,**

    **Plaintiff,**

    v.

**ESSENSE OF AUSTRALIA, INC.**

    **Defendants.**

Case No. 17-CV-2666-JAR-GEB

## MEMORANDUM AND ORDER

This matter is before the Court on Jenny Yoo Collection Inc.'s ("JY") Motion for Reconsideration (Doc. 76) of the Court's April 8, 2019 Memorandum and Order dismissing JY's claims for trade dress infringement in violation of the Lanham Act (Count I) and trade dress infringement and unfair competition under New York common law (Count II).[1] The motion is fully briefed, and the Court is prepared to rule. For the reasons set forth below, the Court **grants** JY's motion and reconsiders dismissal of Counts I and II of JY's Amended Complaint.

## I. Procedural and Factual Background

The Court assumes the reader is familiar with both the order of dismissal that precipitates the matter before the Court and the procedural history of this case.[2] The Court reiterates the relevant facts from JY's Amended Complaint as needed to frame its discussion of the present matter.

---

[1] JY does not move for reconsideration of the Court's Order dismissing JY's common law claims for unfair competition, unfair business practices and unjust enrichment. Doc. 77 at 6.

[2] Doc. 72.

In its Amended Complaint, JY expanded the description of the allegedly infringed trade dress to:

> JY's trade dress, as shown in the drawings herein below, includes, as a special feature, front and back panels of fabric that overlay the full length of the skirt ending just above the bottom hemline. The panels are stitched into the waist seam and naturally hang down the skirt of the dress. The panels seamlessly blend with the dress, regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress. When the panels are in the hanging position as an overlay of the skirt, they layer over the full length of the entire skirt and seamlessly blend with the natural and gentle soft folds, creating the illusion, unique when introduced by JY, that the panels and skirt are integrated. Furthermore, if the wearer chooses to style the dress into alternate necklines by raising one or more of the panels upwards and over the bodice into different configurations of the dress, the panels once again seamlessly blend into the bodice of the dress. This creates the illusion that the panels smoothly blend uninterrupted into the bodice, skirt and/or entire dress to create a singular, integrated look. The concept of "seamless blending" means that from the point of view of an ordinary observer, it will be noticeable that the dress contains front and back panels separate from other components of the dress, which when integrated into the dress create looks that are smooth and continuous, with no apparent gaps or spaces between one part or the next, and without seams or obvious joins. Thus, while the front and rear panels are noticeable to the ordinary observer as distinct components of the dress, nonetheless, they create the impression of an integrated, natural, elegant, unified dress design. This ornamental, non-functional special feature as described above has become JY's renowned Trade Dress (the "JY Trade Dress"), instantly recognizable among consumers and industry professionals alike as being associated with JY.[3]

JY identified the alleged distinct components of its trade dress, explaining:

> The character and scope of the JY Trade Dress is that the dresses are made of lightweight material with: (i) a strapless upper garment (bodice) portion with a sweetheart shape neckline covering an area above the waist of the user having a front and rear portion; (ii) a skirt having a front and rear portion attached to the upper garment

---

[3] Doc. 27 ¶ 12.

2

> (bodice); and (iii) two front and rear panels that overlay the full length of the skirt ending just above the bottom hemline.[4]

JY also identified the third component as "two front panels and two rear panels with a natural soft drape that seamlessly blend with the dress regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress."[5] Additionally, JY included twelve individual sketches showing the different configurations of the dresses containing the trade dress, as well as side-by-side photograph comparisons between its dresses and Essense's allegedly infringing products.[6]

JY claims that it revolutionized the bridal gown industry in 2012 when it introduced its "Aidan" and "Annabelle" convertible bridesmaid dress designs, which embody its alleged trade dress.[7] JY has sold over 132,000 of these dresses, resulting in over $30 million in revenue.[8] It claims "[r]eviewers, analysts and consumers immediately recognized the convertible dress as a 'game changer,'" because prior versions of convertible dresses "were bulky, awkward and utilitarian, requiring that conversions be made by tying together components of the dress in different and often unattractive configurations."[9] The JY convertible dress design was "radically different" in that

> [i]t provided for use of lightweight material with two rear and two front convertible panels attached at the waist seam that blended seamlessly into the design of the bottom part of the dress, and could be easily raised by hand and rearranged for purposes of converting the dress into different neckline styles and inherently attractive, elegant looks.[10]

---

[4] *Id.* ¶ 36.

[5] *Id.* ¶ 67.

[6] *Id.* ¶ 42–54, 60.

[7] *Id.* ¶ 2.

[8] *Id.* ¶ 14.

[9] *Id.* ¶ 2.

[10] *Id.*

JY references this "unique—indeed, revolutionary ornamental feature that has become famous" throughout its Amended Complaint.[11] Additionally, JY alleges that various media outlets have promoted and recognized its convertible bridesmaid dress design.[12]

## II. Legal Standard

Under D. Kan. Rule 7.3(a), "[p]arties seeking reconsideration of dispositive orders or judgments must file a motion pursuant to Fed. R. Civ. P. 59(e) or 60" to alter or amend the judgment. Grounds which justify alteration or amendment under Rule 59(e) include: (1) an intervening change in controlling law; (2) new evidence that was previously unavailable; or (3) a need to correct clear error or prevent manifest injustice.[13] Plaintiff asserts that reconsideration is warranted under the third prong.

The decision to grant or deny a motion for reconsideration is within the Court's discretion.[14] A court will grant reconsideration when the "court has misapprehended the facts, a party's position, or the controlling law."[15] A motion for reconsideration, however, is not an opportunity to "revisit issues already addressed or advance arguments that could have been raised in prior briefing."[16]

---

[11] *Id.*

[12] *Id.* ¶ 3.

[13] *See Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017).

[14] *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995); *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010) (citing *In re Motor Fuel Temp. Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).

[15] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[16] *Id.*

### III. Discussion

JY argues that dismissing its Lanham Act and New York common law trade dress infringement claims on a motion to dismiss was clear error and resulted in manifest injustice. Specifically, JY asserts that the Court erred by: (1) basing its analysis upon a single component of JY's trade dress; (2) determining that JY's allegation of "seamless blending" was unclear on a motion to dismiss; (3) focusing only on JY's verbal description of its trade dress; and (4) conflicting with other courts' decisions that JY has sufficiently alleged its trade dress. When boiled down, these arguments rely on the same premise—that the Court incorrectly applied the standard for deciding a motion to dismiss by prematurely determining whether JY has a legally cognizable trade dress. As the requirements to plead trade dress infringement under New York common law mirror those under the Lanham Act, the Court considers JY's arguments as relating to both claims.[17]

#### A. Manifest Injustice

JY argues that it will suffer manifest injustice by "losing claims against Essense based upon JY's valuable rights that it has in its Trade Dress that other Courts have refused to dismiss."[18] As an initial matter, this assertion is inaccurate. As discussed below, this Court's dismissal of JY's trade dress claims does not conflict with other courts' decisions. Further, "[w]here reconsideration is sought to prevent manifest injustice, the moving party can only prevail if he demonstrates injustice that is 'indisputable.'"[19] "[A] manifest injustice does not

---

[17] *See Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 250 (S.D.N.Y. 2004) (citation omitted); *see also* Doc. 77 at 27.

[18] Doc. 77 at 29.

[19] *Mills v. Unified Gov't of Wyandotte Cty./Kan. City, Kan.*, No. CIV.A. 14-2408-KHV, 2015 WL 3503379, at *4 (D. Kan. June 3, 2015) (citing *Tri–State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, No. 09–4158–SAC, 2011 WL 4691933, at *3 (D. Kan. Oct. 6, 2011)).

5

result merely because a harm may go unremedied."[20] Here, JY does not demonstrate how denying reconsideration results in "indisputable" injustice; rather, its alleged injustice is merely a potentially unremedied harm.[21] Accordingly, the Court finds that manifest injustice does not provide a reason to reconsider dismissing JY's trade dress infringement claims. Thus, the Court considers whether dismissing the trade dress infringement claims constituted clear error.

### B. Other Courts' Decisions on JY's Trade Dress Allegations

JY argues that the Court should reconsider dismissal of its trade dress infringement claims because it conflicts with other district courts' determinations that JY has sufficiently alleged trade dress claims.

First, JY asserts that this Court's decision to dismiss its trade dress infringement claims is inconsistent with the Northern District of Texas' decision in *Jenny Yoo Collection, Inc. v. Watters Designs, Inc.* (the "Texas Lawsuit").[22] The Court is aware of the Texas Lawsuit, as made clear by its reference to the Texas Lawsuit in the Memorandum and Order dismissing JY's trade dress claims.[23] The Texas court allowed JY to amend its complaint to explain the meaning of "seamless blending" on the basis of its allegation that "seamless blending" was a term of art and to clarify what its trade dress covered "beyond two front panels and two rear panels attached to the waist."[24] JY requests "[a]t a minimum . . . that the Court allow JY to amend its pleadings

---

[20] *Slate v. Am. Broad. Cos.*, 12 F. Supp. 3d 30, 35–36 (D. D.C. 2013) (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536 (1983)).

[21] *See Mills*, 2015 WL 3503379, at *5, n.10 (first citing *Lewis v. Suthers*, No. 09–cv–02521–ZLW, 2010 WL 537822, at *1 (D. Colo. Feb. 12, 2010); then citing *Delta Ltd. v. U.S. Customs & Border Prot. Bureau*, 393 F. Supp. 2d 15, 17 (D. D.C. 2005); and then citing *Paalan v. Nickels*, 203 F.3d 835 (Table), 2000 WL 177416, at *1 n.1 (10th Cir. 2000)) ("Manifest injustice could result, for example, where a pro se prisoner's civil rights claims are dismissed because of a procedural error beyond his control, or injury to innocent third parties would otherwise result.").

[22] No. 3:17-cv-3197-M, 2018 WL 3330025 (N.D. Tex. June 6, 2018).

[23] Doc. 72 at 7.

[24] *Watters*, 2018 WL 3330025, at *2.

in accordance with the Texas District Court's decision."[25] The Court already allowed JY to amend its complaint,[26] which is clear as this motion for reconsideration is before the Court on its dismissal of claims in JY's *Amended* Complaint. Furthermore, as this Court mentioned in dismissing the trade dress claims, the defendants in the Texas Lawsuit also filed a second motion to dismiss after JY amended its complaint. The Texas court has not decided this motion, however, because the parties reached a settlement after its filing.[27]

JY additionally cites its new case filed in the Southern District of New York against David's Bridal, Inc. ("DBI"), alleging trade dress and trademark infringement claims, as well as claims based on breach of a settlement agreement.[28] Specifically, JY points the Court to a transcript where the Southern District of New York gave its impressions on DBI's pre-motion letter seeking permission to file a motion to dismiss.[29] The Court finds the transcript inapplicable to JY's present motion for reconsideration. The transcript cited by JY is from a hearing on April 18, 2019—ten days after this Court dismissed JY's trade dress claims. Moreover, the Southern District of New York was not deciding a motion to dismiss, and no motion to dismiss had even been filed.[30] As an initial reaction to DBI's pre-motion letter, the Southern District of New York stated, as to the issue of the articulation of specific elements comprising the trade dress, that "[DBI] up to this point has not pointed out particular deficiencies in plaintiff's iteration of the elements of the trade dress that are applicable here, and so my

---

[25] Doc. 77 at 24.

[26] Doc. 25.

[27] JY asserts that the motion is currently under *sub judice*. At the time JY filed its motion for reconsideration, however, JY and Watters had reached a settlement, which JY declined to note. Alternative Dispute Resolution Summary filed by ADR Provider (Doc. 48), *Watters*, 2018 WL 3330025 (N.D. Tex. April 1, 2019).

[28] Doc. 77-2.

[29] *Id.* at 3–4.

[30] *Id.*

7

impression *at this point* is that [DBI's] argument on that point is likely to fail."[31] This statement—not found in a court order and not being binding authority on this Court—does not support the proposition that this Court should reconsider its dismissal of JY's trade dress claims because it conflicts with other courts' decisions.

  **C.**  **Articulation of a Trade Dress**

As an initial matter, JY asserts that the Court erred by not considering the drawings and photographs included in its Amended Complaint. The Court did consider JY's visual depictions of its trade dress as embodied by its "Aidan" and "Annabelle" convertible dress designs, however, and explicitly stated "[a]lthough JY includes drawings and photographs of the designs, these do not alleviate the deficiencies of JY's trade dress descriptions."[32] Further, the Court found that JY's verbal articulation could not comprise a legally cognizable trade dress because its description of "seamless blending" required a determination of quality, beauty or cachet, which precluded a finding of a protectable trade dress. Importantly, *Yeti Coolers, LLC v. Magnum Solace, LLC*—relied on by JY—explained that "photographs alone are insufficient to provide notice of the elements of an alleged trade dress."[33] Therefore, the Court finds that JY's inclusion of drawings and photographs encompassing the alleged trade dress does not relieve JY of the requirement of articulating its trade dress allegations.

JY additionally argues that the Court erred by dismissing JY's trade dress infringement claims based on its description of "seamless blending" being vague and contradictory and relying on a determination of beauty, quality or cachet.[34] Specifically, JY argues that the Court focused

---

[31] *Id.* at 8 (emphasis added).

[32] Doc. 72 at 11.

[33] No. 1:16-cv-663-RP, 2017 WL 5515910, at *3 (W.D. Tex. March 30, 2017).

[34] In its motion for reconsideration, JY states that "seamless blending" "means that the two panels in the front and the two panels in the rear of JY's dresses are observable when the garment is examined up close, but from

8

too much on a single component of its alleged trade dress—"seamless blending"—and "improperly ignored other alleged components of JY's Trade Dress and improperly disregarded the total look of JY's Trade Dress."[35] As an initial matter, this argument conflicts with JY's treatment of "seamless blending" in its pleadings. JY references and describes "seamless blending" throughout its Amended Complaint;[36] in opposing Essense's motion to dismiss, JY did not explicitly argue the impropriety of considering "seamless blending" allegations; and in its motion for reconsideration, JY now states "[t]he whole point is that the panels seamlessly blend no matter what configuration the dress is worn in."[37] Many allegations describing JY's alleged trade dress—mainly those related to "seamless blending"—appear to require a determination of beauty, quality or cachet—(1) "[t]he panels have a natural soft drape;" (2) "seamlessly blend with the natural and gentle soft folds;" (3) "looks that are smooth and continuous, with no apparent gaps or spaces between one part or the next, and without seams or obvious joints;" and (4) "integrated, natural, elegant, unified dress design."[38] Similarly, the allegations appear to contain contradictory phrases such as "[t]he concept of 'seamless blending' means that from the point of view of an ordinary observer, it will be noticeable that the dress contains front and back panels separate from other components of the dress, which when integrated into the dress create looks that are smooth and continuous . . . ."[39]

---

a distance, the panels blend into the body of the dress to create the illusion that the panels are invisible and seamlessly blend into the dress." Doc. 77 at 17. JY did not articulate this description until its present motion, and the Court declines to consider it in deciding JY's motion for reconsideration.

[35] Doc. 77 at 9–10.

[36] *See, e.g.*, Doc. 27 ¶ 37–38.

[37] Doc. 77 at 7.

[38] Doc. 27 ¶¶ 37–38.

[39] *Id.* ¶ 38.

Nevertheless, in its motion for reconsideration, JY directs the Court to cases indicating the error of deciding on a motion to dismiss that these allegations preclude JY from asserting a trade dress infringement claim. This Court would be remiss not to consider authority that indicates error in dismissing JY's trade dress claims for failure to specifically articulate its trade dress on a motion to dismiss. "A complaint is neither an injunction nor a judgment; it merely puts the defendant on notice of the plaintiff's claims."[40] As JY now articulates, with citation to relevant case law,[41] determining whether a trade dress is identified in a complaint requires the Court to consider whether the allegations, taken as true, provide notice of the alleged trade dress, not whether the trade dress is described with the requisite specificity to grant relief.[42]

Applying the standard that "the plaintiff's burden at the motion to dismiss stage was to put the defendant on notice of the claims against it, and that there was no requirement that the

---

[40] *Dayco Prods., LLC v. Dorman Prods., Inc.*, No. 09-cv-13139, 2010 WL 3855221, at *5 (E.D. Mich. Sept. 28, 2010) (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 635 (6th Cir. 2002)).

[41] Prior to its briefing on its motion for reconsideration, JY did not explicitly articulate its arguments on the requirements for a trade dress to pass muster under the Rule 12(b)(6) notice pleading standard. Instead, JY responded to Essense's arguments with its unconvincing broad assertion that including pictures identified the trade dress and argued against Essense's assertion that its description of seamless blending was contradictory and required a determination of beauty, quality or cachet. A motion for reconsideration is not the place for JY to raise new arguments. However, to the extent JY's failure to perfect these arguments in its original motion to dismiss briefing resulted in a misapprehension of JY's arguments or the law, the Court will consider JY's now robust arguments as to how it sufficiently pleaded its trade dress at a motion to dismiss stage.

[42] *See e.g.*, *Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*, 790 F. Supp. 2d 732, 737 (N.D. Ill. 2011) ("Because [plaintiff's] allegations are accepted as true at this stage of the proceeding, [plaintiff] need only allege facts to show that it could prevail on its claim. . . . [plaintiff's] claim for trade-dress infringement is sufficient to put Defendants on notice as to what [plaintiff] believes is protected."); *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 635 F. Supp. 2d 632, 640–41 (E.D. Mich. 2008) ("[A]t the motion to dismiss stage, Plaintiff has to do no more than state enough facts to support a plausible claim for trade dress. . . . Beyond pleading facts sufficient to put Defendants on notice of the claims against them, there is no requirement that Plaintiff plead its trade dress claim with further specificity." (citation omitted)); *Bobrick Washroom Equip., Inc. v. Am. Specialties Inc.*, No. CV 10-6938-SVW(PLAx), 2010 WL 11462854, at *2 (C.D. Cal. Dec. 15, 2010) ("As a threshold matter, Plaintiff has sufficiently identified its trade dress in the Complaint to survive a motion to dismiss. Here, Plaintiff has included the actual trademark registration and pictures of the products in question as exhibits to the Complaint. . . . Plaintiff has also described the trade dress as covering washroom accessories that have a 'convex front face when viewed from above' which is stated in the registration attached to the Complaint and referred to throughout the Complaint. 'Beyond pleading facts sufficient to put Defendant on notice of the claims against them, there is no requirement that Plaintiff plead its trade dress claim with further specificity.'" (citations omitted)).

plaintiff plead its trade dress with further specificity,"[43] the United States District Court for the Eastern District of Michigan found that a plaintiff's allegations, which included "photographs of [the plaintiff's] and [the defendant's products], as well as product numbers, sufficiently put [the defendant] on notice of the individual trade dress infringement claims against it."[44] Although the plaintiff would "eventually be expected to list, in detail, the elements of the trade dresses it seeks to protect," the court found that at the motion to dismiss stage, "the lingual and pictorial allegations in the complaint [were] sufficient to survive [defendant's] motion."[45] JY additionally points to other cases where the visual depictions of the alleged trade dress—when combined with identification and visuals of the alleged infringing products—placed the defendant on notice of the trade dress.[46] Essense does not direct the Court to law contrary to JY's assertion that at a motion to dismiss stage its pleadings must simply provide notice of its alleged trade dress and can do so through a combination of visual and linguistic descriptions.[47] Instead, Essense relies

---

[43] *Dayco Prods., LLC*, 2010 WL 3855221, at *5 (citing *Innovation Ventures, LLC*, 635 F. Supp. 2d at 640).

[44] *Id.* at *6

[45] *Id.*

[46] *See Dynamic Fluid Control (PTY) Ltd.*, 790 F. Supp. 2d at 737 ("[Plaintiff] has also attached photographs of products allegedly exhibiting its protectable trade dress. . . . When the photographs are viewed in connection with [plaintiff's] allegations, [plaintiff's] claim for trade-dress infringement is sufficient to put Defendants on notice as to what [plaintiff] believes is protected."); *Dayco Prods., LLC*, 2010 WL 3855221, at *6 ("The individual allegations, which include photographs of [plaintiff and defendant's] individual tensioners, as well as product numbers, sufficiently put [defendant] on notice of the individual trade dress claims against it."); *Bobrick Washroom Equip., Inc.*, 2010 WL 11462854, at *2 ("Providing photographs of the products to which the trade dress is applicable as well as the allegedly infringing products has been found sufficient at the pleading stage by several courts.") (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 634 (6th Cir. 2002)); *see also Weber-Stephen Prods. LLC v. Sears Holding Corp.*, No. 13-CV-01686, 2013 WL 5782433, at *4 (N.D. Ill. Oct. 25, 2013) ("So after reading 'shroud riveted band design' and 'door trim design' in combination with the photographs and patent figures, the Court construes Weber's trade dress, for the purposes of its infringement claim, as (1) metal bands bordering the edges of the grill shroud and doors and (2) any metal rivets on top of those bands. This reading of Weber's complaint gives Sears enough notice of what Weber believes is its protectable trade dress."); *Aadventure Prods., Inc. v. Simply Smashing, Inc.*, No. 07cv499 BTM(ABJ), 2007 WL 2775128, at * 2 (S.D. Cal. Sept. 20, 2007) ("Defendant argues that Plaintiff has failed to define its trade dress. However, the Complaint identifies the trade dress at issue as the 'Protected Designs' set forth in Exhibit A to the Settlement Agreement. . . . Exhibit 7 lists the design patent numbers and shapes of forty-five 'Protected Designs.' For purposes of a motion to dismiss, Plaintiff has sufficiently identified its claimed trade dress.").

[47] *See Dayco Prods., LLC*, 2010 WL 3855221, at *5 ("But the Court has found no cases, and the parties have cited none, that require such specificity at the pleading stage. Rather, courts require a discrete list of elements

on its argument that JY has not clearly articulated a trade dress because the descriptions of "seamless blending" are contradictory and require a determination of beauty.[48]

The Court finds that it misapprehended JY's arguments for why it has sufficiently alleged a trade dress at the motion to dismiss stage. Specifically, the Court finds error in dismissing JY's trade dress infringement claims without consideration of whether its Amended Complaint provided Essense notice of the alleged trade dress. In its Complaint, JY alleges that

> [t]he character and scope of the JY Trade Dress is that the dresses are made of lightweight material with (i) a strapless upper garment (bodice) portion with a sweetheart neckline covering an area above the waist of the user having a front and rear portion; (ii) a skirt having a front and rear portion attached to the upper garment (bodice); and (iii) two front panels and two rear panels that overlay the full length of the skirt ending just above the bottom hemline.[49]

JY further alleges that the front and rear panels are a special feature that "overlay the full length of the skirt . . . are stitched into the waist seam and naturally hang down the skirt of the dress."[50] While other allegations of JY's purported trade dress—those describing "seamless blending"—appear to be contradictory and require a determination of beauty, the other articulated components of JY's trade dress are sufficient to place Essense on notice of what JY claims as its trade dress. JY also provides side-by-side images of its and Essense's convertible bridesmaid dresses containing the alleged trade dress, as well as sketches and product numbers of JY's dresses containing the alleged trade dress. When combined with the non-contradictory and non-fanciful allegations, these allegations provide Essense notice of JY's alleged trade dress. Thus, JY's descriptions of "seamless blending" do not prevent the Court from finding, on a motion to

---

only after discovery has been completed and at a time in which the court is in a position to grant relief[.]" (citations omitted)).

[48] Doc. 78 at 8.
[49] Doc. 57 ¶ 36.
[50] Doc. 27 ¶ 12.

dismiss, that JY has plausibly pled a protected trade dress. To the extent the components of JY's trade dress result in "seamless blending," the determination of the meaning of "seamless blending" is best left to summary judgment, where JY will be required to show that it is not contradictory and does not require analyses of beauty.[51] While the Court now finds that JY's pleadings place Essense on notice of its trade dress, as the litigation continues, the Court will require JY to clearly and specifically articulate its alleged trade dress in a legally cognizable manner—with non-contradictory language that does not rely on a determination of beauty, quality or cachet.[52]

### D. Trade Dress Infringement Allegations

As the Court finds that JY's allegations adequately place Essense on notice of the trade dress it seeks to protect, on reconsideration, the Court now considers whether JY has pleaded trade dress infringement under the Lanham Act and New York common law.[53] To prevail on a trade dress infringement claim, a plaintiff must show: "(1) The trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) There is a likelihood of confusion among consumers as to the source of the competing products; and (3) The trade dress is nonfunctional."[54] The parties do not dispute whether JY has alleged a likelihood of confusion,

---

[51] *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116–17 (2d Cir. 2001) (discussing, on an appeal from judgment, that a plaintiff must identify and describe the elements of an asserted trade dress in a product design case because "[i]t is too easy for the question of design and configuration ('overall look') to degenerate into a question of quality, beauty, or cachet").

[52] *See YETI Coolers, LLC v. Imagen Brands, LLC*, No. 1:16-CV-00578-RP, 2017 WL 2199012, at *4 (W.D. Tex. May 18, 2017).

[53] *See Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 250 (S.D.N.Y. 2004) (citation omitted).

[54] *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1227 (10th Cir. 2007) (citing *Sally Beauty Co. v. Beautyco., Inc.*, 304 F.3d 964, 977 (10th Cir. 2002)); *see Cartier, Inc.*, 348 F. Supp. 2d at 250 (citation omitted); *see also* 15 U.S.C. § 1125(a)(3).

and rather, they disagree whether JY has alleged that the trade dress is nonfunctional and has developed secondary meaning.

### 1. Nonfunctional

The Supreme Court has promulgated two tests for determining the functionality of a trade dress. First, under the "traditional" test, the United States Supreme Court has explained that a "'product feature is functional,' and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'"[55] Second, under the "competitive necessity" test, a product feature is functional if it "is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'"[56] The party asserting trade dress infringement bears the burden of demonstrating that the trade dress is nonfunctional.[57]

In its motion to dismiss JY's Amended Complaint, Essense asserts similar arguments to those it made in its first motion to dismiss as to why JY's alleged trade dress is functional. Summarily, Essense argues that because the four panels allow the bridesmaid dresses to be converted into various configurations, they are essential to the use or purpose of the dresses and thus ineligible for trade dress protection. As explained in this Court's August 2018 Memorandum and Order declining to dismiss JY's trade dress infringement claims because of functionality, the Northern District of Texas addressed the same issue and concluded it was at

---

[55] *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)).

[56] *Id.* (alteration in original); *see also Hartford House Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1273 (10th Cir. 1988) ("[T]he issue of functionality turns on whether protection of the combination would hinder competition or impinge upon the rights of others to compete effectively.").

[57] *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000) (citing 15 U.S.C. § 1125(a)(3)).

least plausible that the overall placement of the four panels in relation to the bridesmaid dress identify JY as the manufacturer and distinguish the dress from those of JY's competitors.[58]

As the Texas court noted, courts must examine the functionality of the trade dress as a whole.[59] Like the defendants in the Texas Lawsuit, Essense focuses on individual elements of JY's trade dress, ignoring that "a particular combination of functional elements may be protected if configured in an 'arbitrary, fanciful, or distinctive fashion.'"[60] The Texas court found that under the "competitive necessity test," it is plausible that "there are sufficient alternative designs available to [JY's] competitors, i.e., convertible dresses that do not use the four panels arranged at the front and back of the waist, such that granting [JY] exclusive use of the trade dress would not put competitors at a significant non-reputation-related disadvantage."[61] As the Texas court further found, "because a design patent is granted only for non-functional designs, it can serve as evidence that a plaintiff's trade dress is nonfunctional."[62] Finally, the Texas court addressed JY having pending utility patent applications covering elements of the alleged trade dress.[63] Although a utility patent is "strong evidence that the [elements] therein claimed are functional,"[64]

---

[58] *Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, 2018 WL 3330025, at *3 (N.D. Tex. June 6, 2018) (citation omitted).

[59] *Id.*

[60] *Id.* (citations omitted).

[61] *Id.* (noting ¶ 25 of the Complaint states "both the Aidan and Annabelle designs feature the same unique placement and configuration of the flaps . . . a configuration that was a radical departure from prior convertible bridesmaid dress designs").

[62] *Id.* (citing *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1342 n.3 (C.C.P.A. 1982) (holding design patent, "at least presumptively, indicates that the design is not de jure functional"); *In re R.M. Smith, Inc.*, 734 F.2d 1482, 1485 (Fed. Cir. 1984) (holding that existence of design patent "may be some evidence of non-functionality")).

[63] *Id.* at *3 n.5.

[64] *Id.* (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 23 (2001)).

pending applications do not bar a plaintiff, as a matter of law, from asserting the trade dress claim.[65] Accordingly, the Court again finds it plausible that JY's trade dress is nonfunctional.

## 2. Secondary Meaning

In addition to being nonfunctional, a trade dress must either be inherently distinctive or have secondary meaning.[66] As product design cannot be inherently distinctive, in a product design case, a plaintiff must show that the alleged trade dress has developed secondary meaning.[67] A trade dress acquires secondary meaning "when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'"[68] A plaintiff asserting a trade dress claim may establish secondary meaning "through 'direct evidence, such as consumer surveys or testimony from consumers.'"[69] A plaintiff may also rely on circumstantial evidence, such as:

> (1) the length and manner of the trade dress's use; (2) the nature and extent of advertising and promotion of the trade dress; (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the trade dress and a particular product or venture; (4) actual consumer confusion; (5) proof of intentional copying; or (6) evidence of sales volume.[70]

Essense argues that JY fails to allege that JY's trade dress has gained a secondary meaning in the mind of consumers because there is no evidence supporting its allegations. At the motion to dismiss stage, however, a plaintiff need not produce evidence—the facts alleged

---

[65] *Id.* (citing U.S. Patent and Trademark Office, MANUAL OF PATENT EXAMINING PROCEDURE § 1502.01 (9th ed. 2018) ("Both design and utility patents may be obtained on an article if invention resides both in its utility and ornamental appearance.")).

[66] *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1227 (10th Cir. 2007).

[67] *Wal-Mart Stores, Inc. v Samara Bros., Inc.*, 529 U.S. 205, 212, 215–16 (2000).

[68] *Id.* at 210 (2000) (quoting *Inwood Labs, Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)).

[69] *Forney Indus., Inc. v. Daco of Mo., Inc.*, 835 F.3d 1238, 1253 (10th Cir. 2016) (quoting *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1218 (10th Cir. 2004)).

[70] *Id.* (citing *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1148 (10th Cir. 2016)).

must simply be enough to promote an inference that the trade dress has acquired secondary meaning. As explained in the Texas Lawsuit, JY will eventually be required to provide evidence to support its allegations, but such evidence is not required at the pleading stage.[71]

The Court finds that JY's Amended Complaint contains sufficient allegations that the alleged trade dress has acquired secondary meaning in the minds of consumers. "Secondary meaning may be supported by intentional copying, particularly when the purpose is 'to benefit from the good will of the prior user through confusion.'"[72] JY alleges that it exclusively used the trade dress for approximately three years—from 2012 to around 2015—until Essense and others began producing and selling infringing products.[73] As indication of intentional copying, JY pleaded that its

> innovations have been the subject of widespread emulation by its competitors, who have attempted to capitalize on JY's success by imitating JY's innovative, elegant, and distinctive product design. One of the principal imitators is Essense, which has introduced and sold lines of bridesmaid dresses, which compete directly with JY's patented convertible dresses.[74]

Additionally, JY states that as a result of the alleged trade dress, "JY's convertible bridal gowns were an instant success, and they immediately became uniquely associated with JY as its

---

[71] *Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, No. 3:17-cv-3197-M, 2018 WL 3330025, at *4 (N.D. Tex. June 6, 2018).

[72] *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 243 (S.D.N.Y. 2004) (quoting *New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, 312 F. Supp. 2d 195, 208–09 (D. Conn. 2004)).

[73] Doc. 27 ¶ 67. *See Buca, Inc. v. Gambucci's, Inc.*, 18 F. Supp. 2d 1193, 1205–06 (D. Kan. 1998) (citations omitted) ("No fixed length of time must pass before trade dress can achieve secondary meaning."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1130 (Fed. Cir. 1993) (finding that although shoes had only been on the market for six months before alleged infringement began, plaintiff established secondary meaning through mass media exposure where the designers "advertising and promotion were extensive, and public demand for th[e] design was shown, by sales figures, to have been rapidly achieved"); *but see Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 544 (5th Cir. 2015) (finding that a three-and-a-half year period before the accused product entered the market was brief and did not create a factual issue with respect to secondary meaning).

[74] Doc. 27 ¶ 4.

source."[75] Further, since 2012, it has sold more than 132,000 convertible dresses, resulting in revenues exceeding $30 million.[76] JY explains that its trade dress became instantly recognizable among consumers and industry professionals as being associated with JY and that "[r]eviewers and analysts universally praised JY's bridesmaid gowns for their 'game changing' features."[77] It alleges that this association resulted in strong sales and that "the popularity of th[e] new design contributed substantially to" JY's success and reputation as a leader in bridesmaid designs.[78] Although Essense argues that JY does not allege that the praise came from the trade dress itself, JY explains that its "Aidan" and "Annabelle" dresses embody the trade dress, making them inseparable. At a motion to dismiss stage, JY's allegations plausibly support that there is a conscious connection between the alleged trade dress and JY and that the trade dress caused the fame and success of JY's convertible bridesmaid dress designs.

Advertising can also be strongly probative of secondary meaning.[79] "[A]dvertising alone is typically unhelpful to prove secondary meaning when it is not directed at highlighting the trade dress."[80] JY's convertible bridesmaid dress designs containing the alleged trade dress have been featured in major publications and on network and local television programs throughout the United States.[81] JY further advertises its convertible dress designs through active social media accounts on Facebook, Twitter and Instagram; JY has about 84,800 Instagram followers and

---

[75] *Id.* ¶ 13.

[76] *Id.* ¶ 14. *See Metrokane, Inc. v. Wine Enthusiast*, 160 F. Supp. 2d 633, 640 (S.D.N.Y. 2001) (finding that allegation of sales over $3 million demonstrated "indisputable sales success").

[77] *Id.* ¶ 12–13.

[78] *Id.* ¶ 13.

[79] *Forney Indus., Inc. v. Daco of Mo., Inc.*, 835 F.3d 1238, 1253–54 (10th Cir. 2016).

[80] *Id.* at 1254.

[81] Doc. 27 ¶ 3.

18

17,046 Facebook followers.[82]  When considered with the other allegations, this advertising makes it at least plausible that the trade dress has gained secondary meaning.  Thus, JY's allegations are sufficient to support an inference that its trade dress has achieved secondary meaning.

Accordingly, and to prevent clear error based on a misapprehension of JY's arguments, the Court grants JY's motion for reconsideration of its Memorandum and Order dismissing its trade dress infringement claims in its Amended Complaint.  In consideration of the foregoing, the Court finds that JY has adequately stated a claim for trade dress infringement under both the Lanham Act and New York common law.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Reconsider (Doc. 76) is **granted**.  In accordance with this opinion, the Court alters its previous judgment on Counts I and II of JY's Amended Complaint and does not dismiss these counts for failure to state a claim.

**IT IS SO ORDERED.**

Dated: June 27, 2019

                                                         s/ Julie A. Robinson
                                                         JULIE A. ROBINSON
                                                         CHIEF UNITED STATES DISTRICT JUDGE

---

[82] *Id.* ¶ 17.