**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JENNY YOO COLLECTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-2666-JAR-GEB |
| | ) | |
| ESSENSE OF AUSTRALIA, INC., | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on (1) Plaintiff's Motion to Reconsider Grant of Protective Order and Memorandum of Law in Support (**ECF Nos. 59, 59-1**) and (2) Plaintiff's Motion to Strike Defendant's Exchange of Preliminary Claim Constructions and Extrinsic Evidence and to Compel Disclosure and Discovery Responses and Memorandum in Support (**ECF Nos. 63, 64, 65**). After careful consideration of the respective Motions, Responses (*see* ECF Nos. 60, 69), Replies (*see* ECF No. 66, 74), and all exhibits, the Court **DENIES** Plaintiff's Motion to Reconsider Grant of Protective Order (**ECF No. 59**) and **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Strike Defendant's Exchange of Preliminary Claim Constructions and Extrinsic Evidence and to Compel Disclosure and Discovery Responses (**ECF No. 63**).

## I.     Nature of the Case

Plaintiff and Defendant both design and sell wedding gowns and bridesmaid dresses.  The subject matter of this lawsuit is Plaintiff's "Aidan" and "Annabelle" bridesmaid dress designs, and whether Defendant infringed upon those designs.[1] Currently, Plaintiff asserts claims against Defendant for (1) federal trade dress infringement; (2) common law trade dress infringement and unfair competition; and (3) infringement of two of Plaintiff's design patents.[2]  The first two claims stated above were previously dismissed by Chief District Judge Julie A. Robinson for failure to state a claim upon which relief can be granted.[3]  However, upon Plaintiff's motion for reconsideration, Judge Robinson ruled these claims could remain because Plaintiff's Amended Complaint adequately put Defendant on notice of the claims.[4]

The motions currently before the Court are Plaintiff's Motion to Reconsider Grant of Protective Order (ECF No. 59) and Plaintiff's Motion to Strike Defendant's Exchange of Preliminary Claim Constructions and Extrinsic Evidence and to Compel Disclosure and Discovery Responses (ECF No. 63).  These motions deal with the third claim listed above -- the two design patent infringement claims.  The design patents at issue are D 698,120 and D744,723 (referred to herein as Plaintiff's "patent(s)" or " 'D120 patent" or " 'D723 patent").[5]

---

[1] *See* Amended Complaint (ECF No. 27).
[2] *See id.*  Plaintiff's claims for unfair business practices and unjust enrichment were dismissed by the Court on April 8, 2019.  *See* ECF No. 72, pp. 12-20.
[3] *See* ECF No. 72, pp. 8-12.
[4] *See* ECF No. 87.
[5] Copies of the design patents can be found at ECF Nos. 57-1 and 57-2.

The Court discusses both motions below and provides relevant facts therein. Further background information regarding this case can be found in the Court's previous Orders,[6] and need not be repeated here.

## II.    Plaintiff's Motion to Reconsider Grant of Protective Order (ECF No. 59)

### A.    Relevant Background

On August 21, 2018, pursuant to this District's Patent Local Rules,[7] a phased scheduling order allowing for early claim construction was entered.[8] Per that Initial Patent Scheduling Order, claim construction discovery was to be completed by November 30, 2018, and claim construction briefing was to be completed by February 8, 2019.[9] The Court, at its discretion, was to then set a date to hear and decide the parties' claim construction issues.[10] After the Court enters its claim construction order, a scheduling order for the remainder of discovery and other pretrial matters would be set.[11]

On October 5, 2018, the Court conducted a conference with the parties to discuss Plaintiff's request to modify the Initial Patent Scheduling Order to have claim construction proceedings occur at the summary judgment phase after the completion of all fact and

---

[6] *See* August 7, 2018 Memorandum and Order (ECF No. 25), December 20, 2018 Memorandum and Order (ECF No. 55), January 15, 2019 Memorandum and Order (ECF No. 56), April 8, 2019 Memorandum and Order (ECF No. 72), and June 28, 2019 Memorandum and Order (ECF No. 87).
[7] *See* D. Kan. Pat. Rules 2.1 - 4.7. Although the Patent Local Rules do not address design patents apart from utility patents in particular, the Federal Circuit holds that trial courts have the duty to conduct claim construction in design patent cases and claim construction as used in utility patents should be adopted accordingly to design patents to account for drawings. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). *See also* the Patent Scheduling Order form, which can be found at http://ksd.uscourts.gov/index.php/forms/?open=CivilForms.
[8] ECF No. 29.
[9] *Id*. at p. 2.
[10] *Id.*
[11] *Id.*

expert discovery, as opposed to the completion of claim construction discovery as currently scheduled.[12] After hearing arguments from counsel, the Court found Plaintiff did not present good cause to deviate from this District's Patent Local Rules and Scheduling Order form, and declined Plaintiff's request. The Court did, however, grant Plaintiff more time to complete claim construction discovery. Accordingly, a Revised Initial Patent Scheduling Order was entered extending the claim construction discovery and other relevant deadlines.[13]

During discussions on extending the claim construction discovery deadlines, a dispute arose regarding whether Plaintiff could depose Defendant's designers. Plaintiff argued such discovery was necessary for claim construction, while Defendant argued it was not. After hearing arguments of counsel, the Court, while understanding claim construction discovery can overlap with infringement and invalidity discovery, was concerned discovery might unmanageably extend beyond claim construction. Therefore, the Court limited discovery during this time period to the sole issue of claim construction. The Court made clear to counsel the purpose of extending deadlines was to conduct claim construction discovery, and not to conduct infringement and invalidity discovery. The Court informed counsel it was confident in their abilities to delineate necessary claim construction discovery from infringement and invalidity discovery.[14]

---

[12] *See* ECF No. 38.

[13] ECF No. 39. A Second Revised Initial Patent Scheduling Order further extending the deadlines was entered on January 16, 2019. (*See* ECF No. 58.)

[14] Although a Revised Initial Patent Scheduling Order extending the claim construction discovery deadlines was entered after the October 5, 2018 conference (*see* ECF No. 39), the Court's orders regarding limiting discovery to claim construction were made orally at the October 5th conference.

On October 9, 2018, Plaintiff served Defendant with four deposition notices.[15]  In them, Plaintiff sought to depose Defendant's 30(b)(6) representative, designers of Defendant's six dresses forming the bases of Plaintiff's infringement claims, Defendant's President, and Defendant's Chief Creative Officer.[16]  Plaintiff attached the same "Schedule A" to each deposition notice listing the same fourteen "Topics for Examination."[17]  On November 5, 2018, Plaintiff's counsel informed the undersigned's chambers Defendant was refusing to produce the witnesses for their depositions and requested a conference to discuss the same.  The Court set a status conference for November 9, 2018.  However, on the eve of the conference, Defendant filed a Motion for Entry of Protective Order asking the Court to forbid the depositions as noticed or, in the alternative, to allow Plaintiff one 30(b)(6) deposition regarding claim construction only.[18]  In light of Defendant filing a formal written motion, the Court rescheduled the November 9, 2018 conference to December 12, 2018 for an in-person motion hearing.[19]

On December 12, 2018, the Court conducted the in-person hearing.[20]  After hearing arguments from counsel, the Court orally granted Defendant's Motion for Protective Order by precluding Plaintiff from taking the depositions as noticed during the claim construction

---

[15] *See* ECF Nos. 44-7 through 44-10.  On November 2, 2018, Plaintiff served Defendant with an Amended Notice of Deposition for certain Defendant designers that changed the proposed deposition date from November 13 to November 15.  (*See* ECF No. 48, pp. 8-9; ECF No. 48-13.)
[16] *Id.*
[17] ECF Nos. 44-7, pp. 7-9; 44-8, pp. 6-8; 44-9, pp. 6-8; 44-10, pp. 6-8; 48-13, pp. 7-9.
[18] ECF No. 43.
[19] ECF No. 46.
[20] ECF No. 54.

phase of discovery. But, in lieu of taking the depositions, the Court allowed Plaintiff to propound 10 interrogatories on four of the fourteen noticed depositions topics.

On January 15, 2019, the Court issued its written ruling on the Motion for Protective Order.[21] In it, the Court explained in detail the reasoning for its ruling. After providing an overview of claim construction in design patent cases, the Court found the claim construction standard to be as follows: Courts construe design patent claims from the viewpoint of a hypothetical person of ordinary skill in the art. Courts do such construction in light of intrinsic evidence, as opposed to extrinsic evidence, which should only be used as an aid in understanding the intrinsic evidence, not to change the meaning of the claims.[22]

Based on this above claim construction standard and its October 5, 2018 order directing the parties to limit discovery to claim construction, the Court found deposition topics 1 through 4, 5, 6, 8, 11, 12, and 13 were geared toward infringement and invalidity discovery, and not claim construction discovery.[23] However, the Court found deposition topics 7, 9, 10, and 14 were properly directed to claim construction.[24] Therefore, based on relevancy and burdensome grounds, the Court precluded the depositions from going forward <u>as noticed</u> during the claim construction phase of discovery.[25]

But, in finding some deposition topics were appropriate, the Court allowed Plaintiff to issue ten interrogatories to Defendant regarding topics 7, 9, 10 and 14.[26] The reason the

---

[21] Memorandum and Order, ECF No. 56.
[22] *Id.* at pp. 3-7, 12.
[23] *Id.* at pp. 11-17.
[24] *Id.*
[25] *Id.* at pp. 11-20.
[26] *Id.* at pp. 16-17, 20.

Court ordered interrogatories in lieu of a deposition on these topics was based on its concern the deposition would quickly become unmanageable, with Plaintiff zealously inquiring about topics the Court ruled were improper, and Defendant adamantly refusing to answer questions the Court ruled were proper. In light of Plaintiff's Motion to Compel related to these interrogatories, which is addressed later in this Order, the Court was appropriately concerned.

Before addressing the merits of Plaintiff's Motion to Reconsider Grant of Protective Order, which was timely filed after the Court entered its written opinion,[27] the Court notes its written order did not prohibit Plaintiff from conducting other discovery during claim construction. The Court did reiterate that any discovery during this phase must be limited to claim construction.[28] Plaintiff's Motion to Reconsider mistakenly implies the Court ordered Plaintiff could only propound discovery based on the four deposition topics, with no other discovery being allowed during claim construction.[29] The January 15th Order only held that the depositions as noticed could not go forward during the claim construction

---

[27] Plaintiff informally requested reconsideration of the Court's December 12, 2018 bench ruling before the Court issued its written opinion. The Court, wanting the parties to have full benefit of its written order before determining whether reconsideration or review of the ruling was proper, informed Plaintiff a request for reconsideration or review should be made by a formal motion after the written order is filed.

[28] *Id.*, p. 19 ("Plaintiff is strongly cautioned against issuing further discovery, written or otherwise, which circumvents the Court's previous order limiting discovery to claim construction only during this time period."); *see also* p. 20.

[29] *See* ECF No. 59-1, pp. 5, 10. This is not the case. *See* citations *supra* note 28.

phase, but in lieu of the noticed depositions, Plaintiff could propound one set of 10 interrogatories to Defendant[30] regarding topics 7, 9, 10, and 14.[31]

Additionally, out the outset, the Court recognizes Plaintiff, on the face of its Motion, makes at least ten distinct arguments as to why reconsideration should be granted. But, in reality, Plaintiff's arguments basically say the same thing, just in different ways. The arguments made by Plaintiff, for purposes of this Order, will be addressed in three different sections. And, the Court will address each section separately and in turn.

**B.    Legal Standard**

Under D. Kan. Local Rule 7.3, a motion for reconsideration must be based on "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." Plaintiff asserts reconsideration is warranted under the third prong, and, as the movant, bears the burden to show adequate reason to reconsider on this basis.[32]

---

[30] The interrogatories were to be directed to Essense of Australia, Inc., and not any individual employee. *See* ECF No. 56, p. 17 (stating "Plaintiff shall be allowed to propound one set of 10 interrogatories, with no subparts, relating to Topics 7, 9, 10 and 14 *on Defendant Essense of Australia, Inc., only.*") (emphasis added).

[31] During the December 12, 2018 hearing, the Court did instruct counsel to confer regarding Plaintiff's outstanding requests for production of documents in light of the Court's comments during the hearing, but no specific order precluding any particular document request was made.

[32] *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-2381-JWL-GLR, 2011 WL 6934112, at *1 (D. Kan. Dec. 30, 2011) ("The movant has the burden to show an adequate reason to reconsider the prior order of the Court.") (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 193 F.R.D. 696, 697 (D. Kan. 2000)).

The decision to grant or deny a motion for reconsideration is within the Court's discretion.[33]  A motion for reconsideration "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."[34]  "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[35]  "Put another way, a party is not to pursue such a motion in order to rehash previously rejected arguments or to offer new legal theories or facts."[36]  "Nor is a motion to reconsider 'a second chance for the losing party to make its strongest case or to dress up arguments that previously failed.'"[37]

## C.    Discussion

### 1.    Proper Scope of Claim Construction Discovery

Plaintiff argues the Court misapprehended the proper scope of claim construction discovery in its January 15th Order granting Defendant's Motion for Protective Order.[38] In that Order, the Court, after providing an overview of claim construction, found that courts interpret design patent claims from the viewpoint of a hypothetical person of ordinary skill in the art (*i.e.*, a designer of ordinary skill in the field to which the design pertains).  Furthermore, courts do such construction in light of the intrinsic evidence, as

---

[33] *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995); *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010) (citing *In re Motor Fuel Temp. Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).
[34] *Ferluga v. Eickhoff*, 236 F.R.D. 546, 549 (D. Kan. 2006) (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).
[35] *Id.*
[36] *Eckman v. Superior Indus. Int'l, Inc.*, No. 05-2318-DJW, 2007 WL 2333348, at *1 (D. Kan. Aug. 15, 2007) (citing *Achey v. Linn County Bank*, 174 F.R.D. 489, 490 (D. Kan. 1997)).
[37] *Id.* (quoting *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994)).
[38] ECF No. 59-1, p. 12.

opposed to extrinsic evidence,[39] which should only be used as an aid in understanding the intrinsic evidence, not to change the meaning of the patent claims.[40] Nothing stated in Plaintiff's Motion to Reconsider contradicts this claim construction standard put forth by the Court. Plaintiff does not dispute that courts should interpret design patent claims from the viewpoint of an ordinary designer,[41] and that extrinsic evidence should be viewed purely in the context of the intrinsic evidence.[42]

Plaintiff erroneously states in addition to courts construing its patent claims from the viewpoint of an ordinary designer, the Court, during claim construction, must also construe "the designs of dresses incorporating the patented design."[43] The cases cited by Plaintiff do not stand for this proposition,[44] and it is contradictory to the point of claim construction. As explained in the Court's January 15th Order, the "claim" of a patent is the portion of the patent document defining the scope of protection conferred by the patent. In other words, the claim defines the patentee's invention. Determining whether a patent claim has been infringed upon first requires a court, as a matter of law, to determine the

---

[39] For patent claims, intrinsic evidence consists of the claims themselves, the patent specification, and the patent's prosecution history. Extrinsic evidence includes all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises. *See Capstan AG Sys., Inc. v. Raven Indus., Inc.*, No. 16-4132-DDC-KGS, 2018 WL 953112, at *2 (D. Kan. Feb. 20, 2018).

[40] ECF No. 56, pp. 3-7, 12.

[41] ECF No. 59-1, p. 12.

[42] *Id.* at p. 17.

[43] *Id.* at p. 12.

[44] The cited cases can be found at ECF No. 59-1, p. 12. Those cases state obviousness of a design patent must be assessed from the viewpoint on an ordinary designer of skill in the relevant field, as opposed to from the viewpoint of an ordinary observer. They do not state that during claim construction, the court must construe the products incorporating the patented claim. *See High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301 (Fed. Cir. 2013); *In re Nalbandian*, 661 F.2d 1214 (C.C.P.A. 1981).

claim's meaning and scope. This is referred to as claim construction. Then, the claim, as properly construed, is compared to the accused design to determine whether infringement has occurred. The infringement determination is left to the fact finder.[45] Thus, by its own definition, claim construction requires the claim of the patent at issue to be construed, not the designs of products incorporating the patented design or the designs of any alleged infringing product.

In support of reconsideration, Plaintiff also argues this Court misunderstands that infringement discovery can overlap with, and happen concurrently with, claim construction discovery.[46] The Court does not misunderstand this. As pointed out by Plaintiff, during the October 5, 2018 conference, the Court stated it was aware claim construction and infringement discovery can overlap.[47] However, during that conference, after declining Plaintiff's request to modify the scheduling order to move claim construction proceedings to after the close of all discovery, the Court, based on statements from Plaintiff's counsel, became concerned claim construction discovery would turn into full blown infringement and invalidity discovery, thus defeating the purpose of early claim construction and the phased scheduling order as called for by the District's Patent Local Rules. Thus, the Court ordered the parties to focus on discovery only necessary for claim construction.

---

[45] *See* ECF No. 56, pp. 3-4 and accompanying footnotes for authority regarding these claim construction statements.
[46] ECF No. 59-1, pp. 13, 19-22.
[47] *See* ECF No. 59-1 at p. 13. The Court, however, did not state that "claim construction and infringement are inextricably intertwined," but did state it was aware the two could "overlap."

Based on this October 5, 2018 order and the claim construction standard outlined above, the Court held that deposition topics 1 through 4, 5, 8 and 12 were directed toward infringement, and not claim construction.[48] These depositions topics are as follows:

1. The manner in which the Alleged Infringing Products were created, including, but limited to, any drawings, figures, sketches or other visual depictions used in the creation of the Alleged Infringing products or that reflect the Alleged Infringing Products.

2. Any drawings, figures or visual depictions that reflect or constitute the design of the Alleged Infringing Products.

3. Figures, drawings and depictions contained in [Plaintiff's] patents and the applications for such patents, including but not limited to any analysis or study concerning such figures, drawings, and visual pictures.

4. Any comparison made by Defendant or others concerning drawings, figures or visual depictions that reflect or constitute the design of the Alleged Infringing Products and the drawings, figures or visual depictions contained in [Plaintiff's] patents and the applications for such patents.

5. How drawings, figures or visual depictions that reflect or constitute the design of the Alleged Infringing products compare with the drawings, figures and visual depictions contained in [Plaintiff's] patents and the application for such patents.

8. The meaning of [the] patent claims in [Plaintiff's] patents from the point of view of the ordinary observer.

12. Attempts and actions taken by Defendant to design around the claims in [Plaintiff's] patents.[49][50]

---

[48] ECF No. 56, pp. 11-17.

[49] *See id.* at pp. 11, 13 (citing ECF Nos. 44-7, pp. 7-9; 44-9, pp. 6-8; 44-10, pp. 6-8; 48-13, pp. 7-9).

[50] The Court also ruled topics 6 and 11 were not appropriate for claim construction discovery. Topic 6, which seeks information regarding "[t]he statements and assertions in Defendant's Invalidity Contentions . . . concerning the figures and drawings contained in [Plaintiff's] patents, and the factual basis for such statements and assertions," relates to invalidity discovery. *See* ECF No. 56, p. 14. The Court found topic 11, which asks about the Patent Trial and Appeal Board's (PTAB) interpretation of Plaintiff's patents in ruling on a petition filed by David's Bridal,

After the patent claim is properly construed, it is compared to the accused design to determine whether there has been infringement.[51]  In the infringement analysis, the patented and accused designs are compared to determine whether substantial similarities exist between the two such that an ordinary observer would be deceived into purchasing the accused design believing it is the patented design.[52]  Thus, topics 1 through 4, 5 and 12 inquire directly about how Defendant's designers designed the alleged infringing dresses and how those designs compare to the patent claims.  And, topic 8 relates to infringement discovery because it inquires about how an ordinary observer would construe the patent claims.  The ordinary observer standard comes into play during the infringement analysis, not during claim construction.[53]  Therefore, these topics are not aimed at determining the meaning and scope of Plaintiff's patent claims, which is the task of claim construction.[54]

To support its argument the above topics to Defendant's designers should be allowed during claim construction, Plaintiff cites cases stating a trial court may consult the accused product during claim construction.[55]  However, these cases do not support the

---

irrelevant to claim construction discovery.  Inquiry into how *Defendant's designers view* the PTAB's analysis of a petition filed by David's Bridal has no bearing on claim construction, which should be determined by this Court as a matter law.  *See id.*

[51] *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995).

[52] *Egyptian Goddess, Inc.,* 543 F.3d at 669-79 (citing *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)).

[53] *See* ECF No. 56, pp. 3-4, 14; *Egyptian Goddess, Inc.,* 543 F.3d at 669-79.

[54] Although not specifically addressed in the January 15, 2019 Order, topic 13, which asks for the "names, job titles, employees, and job responsibilities of any individuals with knowledge concerning any of the topics" set forth in the deposition notices would also relate to infringement discovery because Plaintiff is seeking the identification of witnesses involved in the designing of the alleged infringing dresses.  *See* ECF No. 59-7, p. 11.

[55] *See* ECF No. 59-1, p. 13.

proposition that the discovery sought by Plaintiff here should be allowed during claim construction. Those cases state a trial court may look to or consult the accused product during claim construction, they do not go as far to say testimony from creators of the accused products regarding how they designed those products and compared them to the patent claims should be allowed. Such detailed discovery may lead the trial court to construe the patent claims with reference to the accused device. This is not allowed during claim construction, and is a concern the Court initially noted in its January 15th Order.[56]

The full context of a quote from a case cited by Plaintiff puts this principle into proper perspective:

> This court, of course, repeats its rule that "claims may not be construed with reference to the accused device." . . . As noted earlier, that rule posits that a court may not use the accused product or process as a form of extrinsic evidence to supply limitations for patent claim language. Thus, the rule forbids a court from tailoring a claim construction to fit the dimensions of the accused product or process and to reach a preconceived judgment of infringement or noninfringement. In other words, it forbids biasing the claim construction process to exclude or include specific features of the accused product or process. The rule, however, does not forbid awareness of the accused product or process to supply the parameters and scope of the infringement analysis, including its claim construction component. In other words, the "reference" rule accepted in *Pall Corp., Multiform Desiccants, and Scripps Clinic* does not forbid any glimpse of the accused product or process during or before claim construction. . . . In light of these principles, if the litigants cannot themselves inform a trial court of the specific issues presented by the infringement inquiry—that is, issues of the breadth of the claim construction analysis and the most useful terms to facilitate that defining process—then a trial court may refer to the accused product or process for that context during the process.[57]

---

[56] ECF No. 56, pp. 15-16.
[57] *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330 (Fed. Cir. 2006) (internal citations omitted) (emphasis added).

Nothing in the Court's January 15th Order prevents either party from referring to the alleged infringing dresses when making their claim construction arguments to the District Judge. Similarly, nothing in the Order prevents the District Judge from looking at or consulting the accused dresses in making her claim construction determination, if deemed appropriate.

Finally, Plaintiff argues there is no stay on discovery precluding it from seeking the information requested in the deposition topics, and that D. Kan. Pat. Rule 2.6 does not prohibit concurrent discovery from proceeding during the claim construction phase.[58] However, Plaintiff neglects to mention this Court's order from the October 5, 2018 conference wherein it limited the parties to claim construction discovery only during this phase of discovery.[59] The Patent Local Rules allow the Court to modify the obligations set forth in the Rules based on the circumstances of any particular case.[60] Additionally, courts are given broad discretion to control and place appropriate limits on discovery.[61] As explained in Section II.A. above, this Court limited discovery to claim construction based

---

[58] ECF No. 59-1, pp. 19-22.

[59] *See* Section II.A. *supra* for information regarding the October 5, 2018 conference.

[60] D. Kan. Pat. Rule 1.3.

[61] *Semsroth v. City of Wichita*, No. CIV.A. 06-2376KHV-DJW, 2007 WL 2287814, at *1 (D. Kan. Aug. 7, 2007) (citing *Kutilek v. Gannon*, 132 F.R.D. 296, 297 (D. Kan. 1990)); *see also Antonson v. Robertson*, No. 88-2567-V, 1990 WL 58028, at *2 (D. Kan. Apr. 11, 1990) ("The court has complete control over the discovery process. The discovery rules permit the broadest scope of discovery and leave it to the discretion of the court to determine the limitations which may be proper in the circumstances of a particular case.") (internal citations omitted); *High Point Sarl v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2010 WL 1292710, at *2 (D. Kan. Mar. 29, 2010) ("This court is vested with a great deal of discretion in managing its docket, and directing the course and scope of discovery and other pretrial matters.").

on the circumstances presented to it during the October 5th conference.[62]  Suffice it to say, the Court saw good reason to impose the discovery limit.  As such, the discovery ruling was not arbitrary.

In conclusion, based on the foregoing, the Court did not (and does not) misapprehend the proper scope of claim construction discovery.  Accordingly, Plaintiff's Motion to Reconsider on these grounds is denied.

### 2. Plaintiff's Reason for Seeking the Discovery at Issue and Use of Extrinsic Evidence

In further support of reconsideration, Plaintiff insists the Court misunderstands the reason it is seeking information regarding the deposition topics the Court ruled were beyond the scope of claim construction discovery.[63]  In its Motion to Reconsider, Plaintiff states the deposition topics in question are relevant to claim construction because they involve the manner in which the allegedly infringing products were created by Defendant. Plaintiff argues that in designing the alleged infringing dresses, Defendant assumedly copied or designed around Plaintiff's patent claims, and therefore Defendant must have reached a conclusion regarding how the drawings in the patent claims should be construed.

---

[62]  Plaintiff cites *Bushnell Inc. v. Brunton Co.*, No. 09-2009-KHV, 2010 WL 11561389, at *2 (D. Kan. Jan. 11, 2010) for the proposition that claim construction should evolve as the case evolves. However, this case predates the District's Patent Local Rules calling for early claim construction. These rules became effective on August 14, 2017.  *See* D. Kan. Pat. Rule 1.4.  Additionally, the *Bushnell* court declined to stay discovery pending an appeal of a preliminary injunction that necessitated a preliminary claim construction.  The district court refused to stay discovery pending the appeal because the appellate court's findings would only affect the preliminary injunction, and would not be binding on the district court's ultimate claim construction of the patents at issue. *Bushnell*, 2010 WL 11561389, at *1.  The instant case does not involve an appeal of a preliminary injunction.

[63]  These deposition topics are 1-4, 5, 6, 8, 11, 12, and 13.  *See* ECF No. 56, pp. 11-17; *see also supra* notes 49, 50 and 54 and accompanying text regarding the substance of these topics.

Because courts construe design patent claims from the viewpoint on an ordinary designer of skill in the relevant field, which Defendant's designers presumably are, Plaintiff states this discovery from Defendant's designers is relevant to claim construction.[64]

The Court did not (and does not) misunderstand Plaintiff's argument. It is the same argument Plaintiff previously made to the Court.[65] In its January 15th Order, the Court summarized Plaintiff's argument as follows:

> Plaintiff . . . insists claims are construed from the viewpoint of a person skilled in the art, which in this instance would be an "ordinary designer." Based on this and the fact that parties are allowed to present extrinsic evidence during claim construction, Plaintiff argues it can present evidence from Defendant's designers because they are presumably skilled in the art and most likely interpreted the patent drawings in designing the alleged infringing dresses. Plaintiff further states all deposition topics seek evidence specifically related to how an ordinary designer would understand the patent drawings, and thus are narrowly tailored to claim construction.[66]

After considering and analyzing Plaintiff's argument, the Court disagreed with that position,[67] and it still does.

In its January 15th Order, the Court found the proper claim construction standard to be that while courts "interpret claims from the viewpoint of one skilled in the art, courts do so in light of the *intrinsic evidence*, as opposed to *extrinsic evidence*, which should only be used as an aid in understanding the intrinsic evidence, not to change the meaning of the claims."[68] Based on this standard, which Plaintiff does not dispute in its Motion to

---

[64] *See* ECF No. 59-1, pp. 14-15.
[65] *See Eckman*, 2007 WL 2333348, at *1 (a party is not to pursue a motion for reconsideration in order to rehash previously rejected arguments) (citing *Achey*, 174 F.R.D. at 490).
[66] ECF No. 56, p. 11.
[67] *Id.* at pp. 11-17.
[68] *Id.* at p. 12 (emphasis in original).

Reconsider, the Court found the deposition topics in question reached beyond claim construction, *i.e.*, reached beyond how an ordinary designer would interpret the patent claims at issue.[69]

First, the Court found because claim construction is a legal statement of the scope of Plaintiff's patent claims, and not the Defendant's dress designs or drawings, and because claim construction is an issue of law for the court to decide, such factual information about how Defendant designed its dresses would not be relevant to construction of Plaintiff's patent claims.[70]  Plaintiff argues this is incorrect because claim construction can involve factual disputes.[71]

The Court never stated in its Order that claim construction could not involve factual disputes, otherwise it would not have allowed any claim construction discovery or allowed the claim construction discovery deadline to be extended.  However, the Court maintained then, and maintains presently, that factual information regarding how Defendant designed the alleged infringing dresses is not relevant to construing the claims in Plaintiff's patents.[72] This is because the patent claims themselves, not Defendant's dresses or how Defendant compared its dresses to the patent claims, is at issue in claim construction.[73]  This information would be more relevant to infringement.  During the infringement analysis,

---

[69] *Id.* at 12-13.

[70] *Id.* at p. 14.

[71] ECF No. 59-1, p. 15.

[72] ECF No. 56, pp. 14, 18.

[73] *See, e.g., Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) ("In claim construction the words of the claims are construed independent of the accused product, in light of the specification, the prosecution history, and the prior art.") (internal citations omitted); *Wilson Sporting Goods Co.*, 442 F.3d at 1331 ("[A] court may not use the accused product or process as a form of extrinsic evidence to supply limitations for patent claim language.").

the patented and accused designs are compared to determine whether substantial similarities exist between the two such that a person would be deceived into purchasing the accused design believing it is the patented design.[74] This infringement decision is left to the fact finder.[75] As opposed to claim construction, which is a matter of law for the court to decide.

Additionally, Plaintiff does not explain what sort of "factual dispute" would present itself during claim construction that this discovery from Defendant's designers could resolve. For example, in the case cited by Plaintiff, *Teva Pharm. USA, Inc. v. Sandoz, Inc.*,[76] the Supreme Court stated that while the ultimate issue of proper construction of a claim should be treated as question of law, subsidiary fact finding is sometimes necessary:[77]

> We recognize that a district court's construction of a patent claim, like a district court's interpretation of a written instrument, often requires the judge only to examine and to construe the document's words without requiring the judge to resolve any underlying factual disputes. As all parties agree, when the district court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law . . . .
>
> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. . . . In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. . . .
>
> For example, if a district court resolves a dispute between experts and makes a factual finding that, in general, a certain term of art had a particular meaning

---

[74] *Id.* at pp. 3-4, 14.

[75] *Id.* at pp. 3-4.

[76] 135 S. Ct. 831 (2015).

[77] The Supreme Court also stated that "subsidiary factfinding is unlikely to loom large in the universe of litigated claim construction." *Id.* at 840.

to a person of ordinary skill in the art at the time of the invention, the district court must then conduct a legal analysis: whether a skilled artisan would ascribe that same meaning to that term *in the context of the specific patent claim under review.* That is because "[e]xperts may be examined to explain terms of art, and the state of the art, at any given time," but they cannot be used to prove "the proper or legal construction of any instrument of writing."[78]

In the *Teva Pharm. USA, Inc.* case, the district court was tasked with determining whether plaintiff's expert's explanation of a term of art used in the patent or defendant's expert's explanation of the term was more credible.[79] No factual determination had to be made regarding how the accused product was made or compared to the patent claim.

Also, as pointed out by the Court in its January 15th Order, neither party is using Defendant's designers as experts to aid the Court in claim construction.[80] As explained by the Court, expert testimony is one type of extrinsic evidence allowed during claim construction, with other types of extrinsic evidence usually consisting of inventor testimony, dictionaries, and learned treatises.[81] Plaintiff argues testimony from Defendant's designers could also be considered extrinsic evidence.[82] Technically speaking, Plaintiff is correct because the testimony would not be intrinsic evidence, which consists of the claims themselves, the patent specification, and the patent's prosecution history.[83] However, as explained previously by the Court, extrinsic evidence is considered

---

[78] *Id.* at 840–41 (emphasis in original) (internal citations omitted).
[79] *Id.* at 842-43.
[80] ECF No. 56, p. 15.
[81] *Id.* at pp. 5-6, 15.
[82] ECF No. 59-1, pp. 16-17.
[83] *See* ECF No. 56, pp. 5-6 (explaining the role of intrinsic and extrinsic evidence in claim construction).

less reliable than intrinsic evidence, and thus should only be used in the context of intrinsic evidence during claim constriction.[84]

While Plaintiff argues it intends to use the Defendant's designer testimony in light of the intrinsic evidence, it fails to explain how it will do so.[85] Will the testimony be used for background regarding the designs in the patents? Will it be used to ensure the Court's understanding of the patent claims is consistent with that of a hypothetical person of skill in the art? Will it be used to establish that a particular term or drawing in the patents have a particular meaning in the pertinent field?[86] The deposition topics allowed by the Court, as explained more fully in the section below, read like this is the intent. However, the prohibited deposition topics do not read like this is the intent. Rather, the topics appear to be aimed toward finding out how Defendant's designers construed Plaintiff's patent claims in designing its own dresses, which would enable Plaintiff to advocate for a claim construction more likely to lead to a finding of infringement, and thus different from the meaning of the claims as set forth in the patent. This, as previously pointed out by the Court, is an improper use of extrinsic evidence during claim construction.[87]

---

[84] *Id.* at p. 6.

[85] ECF No. 59-1, p. 17.

[86] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (explaining the reasons courts consult extrinsic evidence in claim construction).

[87] *See* ECF No. 56, pp. 15-16; *see also Seed Research Equip. Sols., LLC v. Gary W. Clem, Inc.*, No. 09-01282-EFM-KGG, 2011 WL 4376730, at *1 (D. Kan. Sept. 20, 2011) (in rejecting a party's attempt to provide context to interpret its claims, the court stated it is "cautious not to broaden the claims to give the patentee something different than what he has set forth."); *Wilson Sporting Goods Co.*, 442 F.3d at 1331 ("[A] court may not use the accused product or process as a form of extrinsic evidence to supply limitations for patent claim language. Thus, the rule forbids a court from tailoring a claim construction to fit the dimensions of the accused product or process and to reach a preconceived judgment of infringement or noninfringement. In other words, it forbids

Finally, Plaintiff argues testimony from Defendant's designers is a permissible type of extrinsic evidence because they would be "percipient witnesses," which are expressly allowed as extrinsic evidence in D. Kan. Pat. Rule 4.3.[88] Plaintiff argues the designers qualify as percipient witnesses because they have first-hand knowledge of how they, in making the alleged infringing dresses, construed Plaintiff's patent drawings.[89] Except, extrinsic evidence is to be used in light of the intrinsic evidence, which consists of the claims themselves, the patent specification, and the patent's prosecution history. The Defendant's designers have no first-hand knowledge of the intrinsic evidence. They were not involved in the drafting of, applying for, or securing of Plaintiff's patents.

For the reasons stated above, the Court did not (and does not) misapprehend the reason Plaintiff is seeking the discovery at issue, the law of extrinsic evidence in claim construction, or the use of extrinsic evidence. Thus, Plaintiff's Motion to Reconsider on these grounds is denied.

### 3. Manifest Injustice

Plaintiff also argues reconsideration is necessary to prevent manifest injustice.[90] Plaintiff argues the Court's January 15th Order improperly denies Plaintiff access to discovery it needs to oppose Defendant's claim construction arguments.[91] However, the Court allowed Plaintiff to propound interrogatories on four deposition topics because it

---

biasing the claim construction process to exclude or include specific features of the accused product or process.").
[88] ECF No. 59-1, pp. 16-17.
[89] *Id.*
[90] *Id.* at pp. 18-19.
[91] *Id.*

found those topics within the bounds of claim construction discovery. This ruling was based on the fact that pursuant to the claim construction standard, courts can construe design patent claims from the viewpoint of a hypothetical designer of ordinary skill and can rely on extrinsic evidence as long as it is in context of intrinsic evidence, which again consists of the claims themselves, the patent specification, and the patent's prosecution history.[92]

For example, Topic 7, a deposition topic allowed by the Court, seeks information regarding "[t]he meaning of [Plaintiff's] patent claims . . . from the point of view of a designer of ordinary skill."[93] Topic 9, also allowed by the Court, asks about "[t]he background and characteristics that define a 'designer of ordinary skill' and the factual basis for such definition."[94] These topics go to the heart of claim construction because they inquire about how a hypothetical designer of ordinary skill would interpret Plaintiff's patent claims. As such, the Court properly permitted Plaintiff to explore these topics through written discovery.

Topic 10, another allowed topic, asks "[h]ow a designer of ordinary skill would understand the terms and figures identified by Defendant in its letter of September 28, 2018 that Defendant contends need to be the subject of claim construction in this case, and the factual basis for such understanding."[95] This topic stays within the bounds of the claim construction because it regards how a hypothetical designer of ordinary skill would

_____
[92] *See* ECF No. 56, pp. 16-17.
[93] *Id.* at p. 15 (citing ECF Nos. 44-7, p. 8; 44-9, p. 7; 44-10, p. 7; 48-13, p. 8).
[94] *Id.*
[95] *Id.*

construe certain claim terms and figures. And, by permitting it, the Court allows Plaintiff direct access to discovery to oppose Defendant's claim construction arguments because the September 28, 2018 letter contains the patent claim terms and drawings Defendant contends should be construed by the Court during claim construction.[96]

Topic 14, also allowed by the Court, asks about the identity of documents reviewed by the witness in preparation for the deposition.[97] The Court found a similar question would be relevant for interrogatories on the above topics.[98]

Plaintiff also argues the Court's January 15th Order excluding deposition topic 6 from inquiry during claim construction is in error.[99] Topic 6 seeks information regarding "[t]he statements and assertions in Defendant's Invalidity Contentions . . . concerning the figures and drawings contained in [Plaintiff's] patents, and the factual basis for such statements and assertions."[100] The Court precluded this topic because it geared towards invalidity discovery, which the Court previously ordered on October 5, 2018 would not be a part of claim construction discovery. Plaintiff argues claim construction is the first step in any invalidity analysis and thus the discovery should be allowed. However, as explained above, claim construction is also the first step in the infringement analysis. Plaintiff does not state the invalidity analysis would change the claim construction standard set forth by

---

[96] *See* ECF No. 62-1 for a copy of Defendant's September 28, 2018 letter.
[97] ECF No. 56, p. 17 n.70.
[98] *Id.*
[99] ECF No. 59-1, pp. 18-19.
[100] ECF No. 56, p. 14 (citing ECF Nos. 44-7, p. 8; 44-9, p. 7; 44-10, p. 7; 48-13, p. 8).

the Court in its January 15th Order, which standard formed the basis for the Court allowing interrogatories on the topics set forth above, and precluding the other topics.[101]

Lastly, Plaintiff argues not allowing it access to the discovery at issue will permit Defendant to conceal evidence that may support Plaintiff's position on how the claims should be construed because Defendant "can submit contentions and arguments about how to construe [Plaintiff's] patent drawings in any manner it chooses, even if those contentions and arguments are inconsistent with how [Defendant's] designers themselves previously interpreted those drawings."[102]   However, Defendant is limited to the evidence it can submit for claim construction just as Plaintiff is limited.   According to the claim construction standard, both parties should rely on intrinsic evidence, and may use extrinsic evidence only in the context of the intrinsic evidence, and not to change the meaning of the patent claims.

Rather, Plaintiff's arguments are reasons it believes Defendant's proposed claim construction should be rejected, not reasons why the deposition topics in question should be allowed.   If Defendant relies on improper evidence to support is claim construction position, Plaintiff can make this point to the District Judge in opposing Defendant's claim construction arguments.   Also, Defendant represented to the Court it was not relying on the

---

[101] It should also be noted that per D. Kan. Pat. Rule 3.5 and the current scheduling order (ECF No. 58, p. 2), the parties are allowed to amend their infringement and invalidity contentions after the Court issues its claim construction order if the parties believe amendment is required by the claim construction order.   Discovery on infringement and invalidity can proceed at that time.   *See* Patent Local Rule 4.7; ECF No. 58, p. 2.
[102] ECF No. 59-1, p. 18; *see also* ECF No. 66, pp. 7-8.

proposed deponents for claim construction, and if it were, it would not oppose their depositions.[103]

As stated earlier in this Order, one of the reasons the Court ordered interrogatories in lieu of depositions on these topics was due to its concern a deposition would be unmanageable. Courts are vested with a great deal of discretion in managing their dockets, and directing the course and scope of discovery.[104] This Court in most cases, including in this case initially, does not favor controlling discovery in the manner ordered on January 15th. It prefers to allow the parties, relying on the experience and knowledge of their counsel, to conduct discovery as they see fit in their case. However, upon review of the deposition topics propounded by Plaintiff, the Court correctly discerned an inch would become a mile with Plaintiff inquiring about topics the Court ruled were improper and Defendant refusing to answer questions the Court ruled proper.[105] Additionally, under Fed. R. Civ. P. 26(c)(1), which governs protective orders, it was well within the Court's discretion to order interrogatories be propounded on limited topics rather than the depositions proceeding as noticed.[106]

Plaintiff can obtain reconsideration on grounds of manifest injustice "only by demonstrating that the injustice is 'apparent to the point of being indisputable.'"[107] As

---

[103] ECF No. 56, p. 15.

[104] *See* cases cited *supra* note 61.

[105] *See infra* Section III.A.3.a., b., and d.

[106] *See* Fed. R. Civ. P. 26(c)(1)(C) and (D) (allowing courts to issue protective orders "prescribing a discovery method other than the one selected by the party seeking discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.").

[107] *Layne Christensen Co.*, 2011 WL 6934112, at *2 (quoting *Tri-State Truck Ins., Ltd. v. First Nat. Bank of Wamego*, No. 09-4158-SAC, 2011 WL 4691933, at *3 (D. Kan. Oct. 6, 2011)).

shown above, the Court properly allowed Plaintiff to issue interrogatories on the deposition topics relevant to claim construction and, in doing so, has not denied Plaintiff access to discovery necessary to oppose Defendant's claim construction arguments. As such, no manifest injustice is present.[108]

### D.      Conclusion

Based on the foregoing, the Court has neither misapprehended the proper scope of claim construction discovery, the proper use of extrinsic evidence during claim construction, nor the reason Plaintiff seeks the discovery at issue. Neither has the Court prevented Plaintiff from seeking discovery necessary to oppose Defendant's claim construction arguments. Therefore, there is no clear error or manifest injustice present. Accordingly, Plaintiff's Motion to Reconsider Grant of Protective Order is **DENIED.**

### III.     Plaintiff's Motion to Strike Defendant's Exchange of Preliminary Claim Constructions and Extrinsic Evidence and to Compel Disclosure and Discovery Responses (ECF No. 63).

Because Plaintiff's motion to compel disclosure and discovery responses relates to the interrogatories permitted by the Court on deposition topics 7, 9, 10 and 14 in its January 15, 2019 Order granting Defendant's Motion for Entry of Protective Order, as immediately discussed above, the Court will address this issue before addressing Plaintiff's motion to strike Defendant's exchange of preliminary claim constructions and extrinsic evidence.

---

[108] *See Tri-State Truck Ins., Ltd.*, 2011 WL 4691933, at *3 ("Examples of manifest injustice under this rule include accepting a defendant's guilty plea that is involuntary or is based on a plea agreement that the prosecution has rescinded, and dismissing a *pro se* prisoner's civil rights case based upon procedural errors outside of his control.") (internal quotation marks and citations omitted).

## A. Plaintiff's Motion to Compel Disclosure and Discovery Responses

### 1. Duty to Confer

As a threshold matter, the Court first considers whether the parties have sufficiently conferred as is required by D. Kan. Rule 37.2. This Local Rule provides the court will not entertain any motion to compel unless the attorney for the moving party has conferred or made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion. A "reasonable effort to confer" means more than mailing or faxing a letter to the opposing party.[109] It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so.[110]

Plaintiff's brief states the parties conferred in-person regarding the instant discovery disputes after the December 12, 2018 hearing on Defendant's Motion for Entry of Protective Order, and also subsequently conferred by telephone. Defendant's responsive brief does not mention conferral; therefore, it is difficult for the Court to tell if Defendant participated in good faith, as required by D. Kan. Rule 37.2.[111] It is clear to the Court the parties went through the actions of conferring as required by the rules, but true conferral requires good faith. As previously stated in the Court's January 15, 2019 Order,[112] and as repeated at the conclusion of this Order, the Court expects good faith conferral – actually listening to and discussing the opposing party's arguments. However, for purposes of this

---

[109] D. Kan. Rule 37.2.

[110] *Id.*

[111] *See id.* ("A 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party. *It requires that the parties in good faith* converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so.") (emphasis added).

[112] *See* ECF No. 56, p. 9.

motion, and based on Plaintiff's statements, the Court is satisfied the parties at least attempted to confer.

## 2. Legal Standard

Under Fed. R. Civ. P. 37(a)(3)(B), a party may motion the court for an order compelling answers to its interrogatories or request for production of documents if the opposing party fails to answer such discovery. This is the reason for Plaintiff's request to compel discovery responses here. Plaintiff contends Defendant failed to answer Interrogatory Numbers 1 through 8 and Request for Production of Documents Numbers 4, 7, and 9. The Court has broad discretion in deciding whether to grant or deny a motion compel.[113]

## 3. Discussion

### a. Interrogatory Numbers 1, 2 and 3

Interrogatory Number 1 asks Defendant to:

Identify and set forth the substance of any comparison made by Defendant or others concerning drawings, figures or visual depictions that reflect or constitute the design of the Alleged Infringing Products and the drawings, figures or visual depictions contained in the 'D120 and 'D723 patents and the applications for such patents.[114]

Interrogatory Number 2 seeks the identity of every employee, agent or independent contractor of Defendant having knowledge of Interrogatory Number 1.[115]

Interrogatory Number 3 asks Defendant to:

---

[113] *Comeau v. Rupp*, 142 F.R.D. 683, 684-85 (D. Kan. 1992) (stating "a magistrate is afforded broad discretion in the resolution of non-dispositive discovery disputes").
[114] ECF No. 64-6, pp. 12-13.
[115] *Id.* at p. 13.

> Explain in detail the way in which drawings, figures or visual depictions that reflect or constitute the design of the alleged Infringing Products compare with the drawings, figures and visual depictions contained in the 'D120 and 'D723 patents and the application for such patents.[116]

Defendant objected to answering these interrogatories because they mirror deposition topics which the Court, as explained in Section II above, precluded Plaintiff from sending interrogatories on due to the topics being outside the scope of claim construction discovery. Defendant argues Interrogatory Numbers 1 and 2 mirror deposition topic 4, and Interrogatory Number 3 mirrors deposition topic 5.[117]

Plaintiff, however, insists the interrogatories are within the scope of claim construction because they seek information regarding how a designer of ordinary skill would understand the patent claims.[118] The Court finds Defendant correct in objecting to these interrogatories. The interrogatories mimic exactly the language of deposition topics 4 and 5.[119] As explained in Section II above, the Court found these deposition topics outside the bounds of claim construction discovery and precluded Plaintiff from sending interrogatories regarding the same.[120] Therefore, Defendant will not be compelled to answer Interrogatory Numbers 1, 2, and 3.

### b. Interrogatory Numbers 4 and 5

Interrogatory Number 4 asks Defendant to:

---

[116] *Id.*
[117] *See* ECF No. 64-9, pp. 2-4.
[118] ECF No. 64, p. 24.
[119] *See* January 15, 2019 Order granting protective order (ECF No. 56) at p. 13 (citing ECF Nos. 44-7, pp. 7-9; 44-9, pp. 6-8; 44-10, pp. 6-8; 48-13, pp. 7-9). In the Order, the Court replaced "the 'D120 and 'D723 patents" with "Plaintiff's patents" for ease of reading.
[120] *See also* ECF No. 56, pp. 11-17.

State how a designer of ordinary skill would understand the terms and figures identified by Defendant in its letter of September 28, 2018 that Defendant contends need to be the subject of claim construction in this case, and the factual basis that supports this understanding.[121]

Interrogatory Number 5 asks Defendant to:

Identify with specificity the background and characteristics that you contend define a "designer of ordinary skill" and identify the facts that support your contention.[122]

Defendant objected to both interrogatories by stating they are "vague and ambiguous" and fail to "specify what art or technology the referenced 'designer of ordinary skill' is supposedly skilled in."[123]  In response to Interrogatory Number 4, Defendant also objected to it "as being vague and ambiguous because the 'letter of September 28, 2018' is not identified with sufficient particularity."[124]  Defendant additionally stated "[w]ithout "waiving these objections, Defendant will produce its proposed claim constructions in accordance with the claim construction schedule ordered by the Court."[125]  And, in further response to Interrogatory Number 5, Defendant responded "[w]ithout waiving this objection, 'a designer of ordinary skill' is one who 'designs articles of the type involved.' *See MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1331 (Fed. Cir. 2014)."[126]

Plaintiff argues Defendant's objections are groundless because it is obvious from the nature of the litigation, which involves dress design, the standard is a dress designer of

---

[121] ECF No. 64-6, p. 13.
[122] *Id.*
[123] ECF No. 64-9, pp. 4-5.
[124] *Id.* at p. 4.
[125] *Id.* at pp. 4-5.
[126] *Id.* at p. 5.

ordinary skill, and Defendant only sent one letter on September 28, 2018 regarding its proposed claim construction terms and figures. Plaintiff also states Defendant's proposed claim constructions, sent on February 8, 2019, in a letter signed by Defendant's counsel is unresponsive to Interrogatory Number 4. Similarly, Plaintiff argues Defendant's response that a designer of ordinary skill is one who "designs articles of the type involved" is unresponsive to Interrogatory Number 5.[127]

The Court agrees with Plaintiff. Interrogatory Numbers 4 and 5 are identical to deposition topics 9 and 10, which the Court ordered Plaintiff could propound interrogatories to Defendant on in its January 15th Order.[128] During the December 12th hearing on the Motion for Entry of Protective Order, the Court instructed Defendant to answer the allowed interrogatories without objection.

Furthermore, as Plaintiff states, it strains credibility for Defendant to contend it does not know Plaintiff would be referring to a dress designer of ordinary skill or know which letter Plaintiff was referencing since only one letter of that type was sent on September 28, 2018. Additionally, the Court has reviewed Defendant's February 8, 2019 letter and finds it unresponsive to Interrogatory Number 4 as written above because it fails to state how a designer of ordinary skill would understand the referenced claim terms and figures. Likewise, considering Defendant should know a designer of ordinary skill refers to a dress designer, it finds Defendant's answer to Interrogatory Number 5 unresponsive. Therefore,

---

[127] ECF No. 64, pp. 24-25.
[128] *See* ECF No. 56, pp. 15-17.

Defendant shall fully respond to Interrogatory Numbers 4 and 5 **within 14 days from the date of this Order**.

<u>**c.**</u>      <u>**Interrogatory Numbers 6, 7, and 8**</u>

Interrogatory Number 6 asks Defendant to:

> Identify each employee, agent or independent contractor of Defendant who would qualify as a designer of ordinary skill.[129]

Interrogatory Number 7 requests Defendant to:

> Identify each and every employee, agent or independent contractor of Defendant that would understand how the terms and figures identified by Defendant in its letter of September 28, 2018 that Defendant contends need to be the subject of claim construction in this case would be understood by a designer of ordinary skill.[130]

Interrogatory Number 8 states:

> Identify the names, job titles, and job responsibilities of any officers, employees, agents, or independent contractors with knowledge concerning any of the topics set forth in these Interrogatories.[131]

Defendant objected to each interrogatory as being outside the scope of the topics allowed by the Court in its January 15th Order.[132] Plaintiff states each interrogatory is properly within the scope of the allowed topics because they seek the identity of Defendant's designers who would be considered designers of ordinary skill, and thus may have testimony relevant to claim construction. Plaintiff further argues this seeks

---

[129] ECF No. 64-6, p. 13.
[130] *Id.* at pp. 13-14.
[131] *Id.* at p. 14.
[132] ECF No. 64-9, pp. 5-6.

information regarding the "background and characteristics" of a designer of ordinary skill, which is a topic allowed by the Court.[133]

As relevant here, below are the topics the Court allowed Plaintiff to propound interrogatories on:

> 7.  The meaning of [Plaintiff's] patent claims . . . from the point of view of a designer of ordinary skill.
>
> 9.  The background and characteristics that define a "designer of ordinary skill" and the factual basis for such definition.
>
> 10.  How a designer of ordinary skill would understand the terms and figures identified by Defendant in its letter of September 28, 2018 that Defendant contends need to be the subject of claim construction in this case, and the factual basis for such understanding.[134]

Although these topics do not cross the line, as written, they do not seek the identities of Defendant's employees.   In fact, the Court precluded Plaintiff from propounding interrogatories regarding deposition topic 13, which expressly sought the names, job titles, and job responsibilities of any individuals with knowledge concerning any of the deposition topics.[135]   The  Court permitted interrogatories on the above topics to allow Plaintiff the ability to present evidence regarding the ordinary designer standard.[136]   As stated previously throughout this Order, during claim construction, courts may construe design patent claims from the viewpoint of a hypothetical designer of ordinary skill in the

---

[133] ECF No. 64, pp. 25-27.
[134] ECF No. 56, p. 15 (citing ECF Nos. 44-7, p. 8; 44-9, p. 7; 44-10, p. 7; 48-13, p. 8).  The Court also allowed interrogatories on topic 14, which asks about the identity of documents reviewed by the witness in preparation for the deposition. The Court found a similar question would be relevant for the interrogatories.  *See id* at p. 17 n.70.
[135] *See supra* note 54.
[136] ECF No. 56, pp. 16-17.

art of the relevant field, not a particular or specific designer. The Court compelling

Defendant to fully answer Interrogatory Numbers 4 and 5 above will provide Defendant

with evidence regarding the ordinary designer standard as allowed by the Court in its

January 15th Order, and will enable Plaintiff discovery regarding Defendant's specific

claim construction contentions. Therefore, Defendant will not be compelled to answer

Interrogatory Numbers 6, 7, and 8.

### d.     Request for Production of Documents Number 4

Request for Production of Documents ("RFP") Number 4 seeks:

> Documents relating to any comparison made by Defendant or others
> concerning drawings, figures or visual depictions that reflect or constitute the
> design of the Alleged Infringing Products and the drawings, figures or visual
> depictions contained in the 'D120 and 'D723 patents and the applications for
> such patents.[137]

Defendant objected to this RFP because the language mirrors deposition topic 4,

which the Court precluded Plaintiff from inquiring into in its January 15th Order.[138]

Plaintiff, on the other hand, argues the RFP is relevant to claim construction because it

relates to how a designer of ordinary skill would interpret the designs of Plaintiff's

patents.[139]

The Court finds RFP No. 4 is identical to deposition topic 4.[140]  As explained in

Section II above, the Court found this deposition topic outside the bounds of claim

---

[137] ECF No. 64-6, p. 5.
[138] ECF No. 64-9, pp. 10-11.
[139] ECF No. 64, p. 27.
[140] *See* January 15, 2019 Order granting protective order (ECF No. 56) at p. 13 (citing ECF Nos. 44-7, pp. 7-9; 44-9, pp. 6-8; 44-10, pp. 6-8; 48-13, pp. 7-9.)  In the Order, the Court replaced "the 'D120 and 'D723 patents" with "Plaintiff's patents" for ease of reading.

construction discovery, and precluded Plaintiff from pursuing it during claim construction discovery.[141]  Therefore, Defendant will not be compelled to answer RFP No. 4.

### e. Request for Production of Documents Numbers 7 and 9

In RFP No. 7,  Plaintiff requests "[d]ocuments relating to the meaning of JY's patent claims in the 'D120 and 'D723 patents from the point of view of a designer of ordinary skill."[142]   In RFP No. 9, Plaintiff requests "[d]ocuments relating to how a designer of ordinary skill would understand the terms and figures identified by Defendant in its letter of September 28, 2018 that Defendant contends need to be the subject of claim construction in this case, and the factual basis for such understanding."[143]

In response to both RFPs, Defendant answered "based on Defendant's understanding of what documents are being requested, Defendant produced such documents on September 14, 2018 (ESSENSE-000323 to ESSENSE-000361) and on November 8, 2018 (ESSENSE-000362 to ESSENSE-001261)."[144]

Plaintiff argues these documents are non-responsive to the RFPs.  Plaintiff states the documents Bates stamped 000323-000361 contain images of what Defendant alleges is prior art, the documents Bates stamped 000362-001251 are documents from the U.S. Patent and Trademark office regarding Plaintiff's patent applications and registrations, and 001251-001261 are comparisons of Defendant's garments with the patent illustrations. Plaintiff argues Defendant fails to explain to how these documents relate to how a designer

---

[141] *See also id.* at pp. 11-17.
[142] ECF No. 64-6, p. 6.
[143] *Id.*
[144] ECF No. 64-9, pp. 12-13.

of ordinary skill would understand the meaning of Plaintiff's patent claims and the terms and figures in the September 28, 2018 letter.[145]

First, the RFPs do not ask Defendant to explain anything, but only to produce relevant documents. Defendant responded to the RFPs by referencing certain documents already produced. Plaintiff cannot compel Defendant to produce different documents because it disagrees the documents produced correctly respond to the RFPs.[146]

However, the Court finds it odd Defendant represents that the same 938 documents are responsive to both RFPs. RFP No. 9 specifically asks for documents relating to how a designer of ordinary skill would understand the terms and figures identified by Defendant in its letter of September 28, 2018 that Defendant contends need to be the subject of claim construction. This seems to be a narrower request than RFP No. 7, which asks for documents relating to the meaning of Plaintiff's patent claims, as opposed to the specific terms and figures identified by Defendant in its September 28, 2018 letter. The Court also doubts *all 889* documents from the U.S. Patent and Trademark office regarding Plaintiff's patent applications and registrations (*see* Bates numbers 000362-001251 listed above) are responsive to the RFPs.

Therefore, **within 14 days of the date of this Order**, Defendant should review the documents it listed and specify, by Bates number, which documents are responsive to each

---

[145] ECF No. 64, pp. 27-28.
[146] *See, e.g., Thermal Sols., Inc. v. Imura Int'l U.S.A., Inc*., No. 2:08-CV-02220-JWL-DJW, 2009 WL 10668995, at *4 (D. Kan. Dec. 4, 2009) (stating a party cannot compel another party to change an interrogatory answer because they do not agree with the answer given).

RFP. If certain documents are not responsive to the RFPs, they should not be included in the document range.

### 4. Conclusion

For the reasons stated above, Plaintiff's motion to compel responses to Interrogatory Numbers 1, 2, 3, 6, 7, and 8, and RFP Number 4 are **DENIED**. However, Plaintiff's motion to compel responses to Interrogatory Numbers 4 and 5 and RFP Numbers 7 and 9 is **GRANTED**. Defendant shall, consistent with the above directions from the Court, provide those responses within **14 days from the date of this Order**.

### 5. Expenses under Fed. R. Civ. P. 37(a)(5)

Pursuant to Rule 37(a)(5), if a motion to compel is granted, the court must require the party whose conduct necessitated the motion to pay expenses incurred in making the motion unless circumstances make such an award unjust.[147] If such a motion is denied, the court must require the movant to pay the opposing party its reasonable expenses.[148] Here, however, Plaintiff's motion is granted in part and denied in part. Under these circumstances, the Court finds it appropriate and just to decline an award of expenses to either party.[149] Therefore, each party will bear their own expenses incurred relating to the Motion. But, the parties shall be on notice that further conduct inconsistent with the Court's order, however slight, will likely result in the imposition of sanctions.

---

[147] Fed. R. Civ. P. 37(a)(5)(A).
[148] Fed. R Civ. P. 37(a)(5)(B).
[149] When a motion to compel is granted in part and denied in part, a court has discretion in deciding whether to award expenses. *See* Fed. R Civ. P. 37(a)(5)(C) (stating a court "may" apportion reasonable expenses for the motion).

## B. Plaintiff's Motion to Strike Defendant's Exchange of Preliminary Claim Constructions and Extrinsic Evidence

The Second Revised Initial Patent Scheduling Order directs the parties to exchange Preliminary Claim Constructions and Extrinsic Evidence (referred to herein as "Claim Construction Exchange").[150] This Claim Construction Exchange is governed by D. Kan. Pat. Rule 4.2. Defendant submitted its Claim Construction Exchange to Plaintiff by letter dated February 8, 2019.[151] Its contents convey to Plaintiff Defendant's proposed constructions for the terms and figures Defendant contends should be construed by the Court.[152] Plaintiff moves to strike this February 8, 2019 letter, arguing it violates the Revised Initial Patent Scheduling Order, D. Kan. Pat. Rule 4.2, and the claim construction standard. Defendant contends its Claim Construction Exchange is proper and should not be stricken.

### 1. Legal Standard

Plaintiff moves to strike Plaintiff's Claim Construction Exchange letter pursuant to Fed. R. Civ. P. 16(f)(1)(c), which states "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Moreover, a district court has discretion to sanction a party who fails to follow local rules, federal rules, or a court order.[153]

---

[150] ECF No. 58, p. 2.
[151] ECF No. 64-2.
[152] *Id.*
[153] *See, e.g., Med. Supply Chain, Inc. v. Neoforma, Inc.*, No. 05-2299-CM, 2008 WL 11333741, at *4 (D. Kan. July 8, 2008), *aff'd*, 322 F. App'x 630 (10th Cir. 2009) (citing *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003); *Lynn v. Roberts*, No. 01-3422-MLB, 2006 WL 2850273, at *6 (D. Kan. Oct. 4, 2006) (citing *Gripe v. City of Enid, Okla.*, 312 F.3d 1184, 1188 (10th Cir. 2003))).

As stated above, the local rule governing Claim Construction Exchange is D. Kan. Pat. Rule 4.2. In relevant part, it provides:

> (a) [T]he parties must simultaneously exchange proposed constructions of each term identified by either party for claim construction. . . . .
>
> (b) At the same time the parties exchange their respective "Preliminary Claim Construction," each party must also identify all references from the specification or prosecution history that support its proposed construction and designate any supporting extrinsic evidence including, without limitation, dictionary definitions, citations to learned treatises and prior art, and testimony of percipient and expert witnesses. Extrinsic evidence must be identified by production number or by producing a copy if not previously produced. . . . .
>
> (c) The parties must thereafter meet and confer for the purposes of narrowing the issues and finalizing preparation of a Joint Claim Construction Statement.[154]

### 2. Discussion

In support of its Motion to Strike, Plaintiff first argues Defendant's February 8, 2019 letter does not contain any citations to the evidence supporting its proposed constructions, as required by D. Kan. Pat. Rule 4.2(b) cited above. In response, Defendant argues support for its proposed constructions can be found in the patents themselves, the prosecution histories, and the prior art, which documents (consisting of 1,186 pages) have already been provided to Plaintiff.

Defendant does not, however, explain why it did not include specific citations to the documents as required by Rule 4.2(b) in its February 8, 2019 letter. But, in footnote 2 on page 2 of its Response brief, Defendant states that pages 5 through 8 of the parties' Joint

---

[154] D. Kan. Pat. Rule 4.2.

Claim Construction Statement contains references to the record regarding its proposed constructions.[155]  A review of the Joint Claim Construction Statement shows this to be accurate.[156]  Additionally, the Joint Claim Construction Statement was filed jointly by the parties on February 22, 2019.[157]  Thus, information regarding Defendant's citations was in Plaintiff's knowledge and possession before it filed the instant Motion to Strike, which was filed on February 25, 2019.[158]

Therefore, because Plaintiff had in its possession specific references to the record supporting Defendant's proposed constructions before it filed the Motion to Strike, Plaintiff has not been harmed or prejudiced by Defendant's failure to comply with D. Kan. Pat. Rule 4.2(b) in its February 8, 2019 letter.  As such, no reason to strike the letter exists on this ground.

Next, Plaintiff argues the February 8, 2019 letter should be stricken because Defendant does not support its proposed constructions with extrinsic evidence of how an ordinary designer of skill would interpret the patent claims.  Rather, Plaintiff states Defendant improperly relies on its attorney's unsupported assertions about how the claims should be construed.  Plaintiff insists this is contrary to the claim construction standard, which requires claims to be construed from the viewpoint of an ordinary designer.  In response, Defendant argues claims are to be construed from the viewpoint of a hypothetical

---

[155] ECF No. 69, p. 2 n.2.
[156] ECF No. 62, pp. 5-8.
[157] *Id.*
[158] ECF No. 63.

designer of ordinary skill, and that its proposed constructions are supported by intrinsic evidence, with no corresponding need to reference extrinsic evidence.

As stated previously in this Order, the Court found the claim construction standard to be that while courts may interpret design patent claims from the viewpoint of a hypothetical designer of ordinary skill, courts do so in light of the intrinsic evidence, as opposed to extrinsic evidence, which should only be used as an aid in understanding the intrinsic evidence, not to change the meaning of the patent claims.[159] There is no requirement that this Court could find mandating a party to support its proposed constructions with extrinsic evidence.[160]

More importantly, Defendant's alleged failure to forego extrinsic evidence does not run afoul of D. Kan. Pat. Rule 4.2, the Second Revised Scheduling Order, or any other previous order of the Court.[161] Rather, Plaintiff's argument is a reason it believes the District Judge should not adopt Defendant's proposed constructions, and should be made to the District Judge during the relevant the claim construction proceedings. It is not, however, a reason to strike Defendant's February 8, 2019 letter to Plaintiff setting forth its proposed constructions.

---

[159] *See supra* Section II.C.1.

[160] *See* January 15, 2019 Order (ECF No. 56) at p. 5 (stating courts *may* rely on extrinsic evidence when construing patent claims).

[161] Patent Local Rule 4.2(b) states "each party must also identify all references from the specification or prosecution history that support its proposed construction and designate *any* supporting extrinsic evidence," which implies there may not be extrinsic evidence. (*See* D. Kan. Pat. Rule 4.2(b) (emphasis added).) The Second Revised Scheduling Order merely sets a deadline for exchange of the preliminary claim constructions and extrinsic evidence, which Defendant timely met. (*See* ECF No. 58, p. 2.) The Court is unaware of any other Orders requiring Defendant to submit extrinsic evidence supporting its claim construction. The Court has ruled on Plaintiff's Motion to Compel as stated in Section III.A. of this Order.

Finally, Plaintiff argues Defendant's letter should be stricken because it improperly relies on written descriptions in construing Plaintiff's design patent claims, which are based on technical drawings. Plaintiff argues this violates the claim construction standard because design patent claims are described by drawings, not words.

In support, Plaintiff incorrectly states this Court has already held that design patents must be construed by drawings, and not words.[162] This Court held no such thing. In its January 15, 2019 Order, in providing a general overview of the claim construction process, the Court stated design patent claims are typically described by drawings, not words.[163] The Court then noted the Federal Circuit has cautioned trial courts against providing a detailed verbal description of a claimed design.[164] However, the Court never stated the design patent claims at issue here cannot be construed verbally. This decision is left to the sound discretion of the District Judge.[165]

Thus, similar to the above argument by Plaintiff, this argument is another reason Plaintiff believes Defendant's proposed constructions should be not be accepted by the District Judge in making the ultimate claim construction decision. Again, it is not a reason

---

[162] ECF No. 64, p. 20.

[163] ECF No. 56, p. 3 (citing *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010) (stating "design patents are *typically* claimed as shown in drawings"); 37 C.F.R. § 1.153 (stating "[n]o description, other than reference to the drawing, is *ordinarily* required.") (emphasis added)).

[164] *Id.* at. pp. 4-5.

[165] *See Egyptian Goddess, Inc.,* 543 F.3d at 679("[I]t is important to emphasize that a district court's decision regarding the level of detail to be used in describing the claimed design is a matter within the court's discretion, and absent a showing of prejudice, the court's decision to issue a relatively detailed claim construction will not be reversible error.").

to strike Plaintiff's February 19, 2019 letter, which merely conveys Defendant's proposed constructions to the opposing party.[166]

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Strike Defendant's Exchange of Preliminary Claim Constructions and Extrinsic Evidence.

## IV. Plaintiff's Requests to Set New Discovery Schedule and Stay Defendant's Motion for Summary Judgment

On July 9, 2019, Plaintiff emailed the undersigned's chambers a letter seeking reconsideration of its October 5, 2018 order setting a schedule allowing for early claim construction and limiting discovery to claim construction issues.[167] In support, Plaintiff cites Judge Robinson's June 28, 2019 decision granting Plaintiff's motion to reconsider the prior dismissal of its federal and common law trade dress infringement claims.[168] Judge Robinson's Order (ECF No. 87) is clear to this Court and the parties, and it will not be fully recounted here. However, pertinent parts thereof will be addressed as appropriate.

In allowing Plaintiff's trade dress infringement claims to proceed forward, Judge Robinson ruled Plaintiff's Amended Complaint, with its combination of visual and linguistic descriptions, provided Defendant with adequate notice of its alleged trade dress claims to survive a motion to dismiss for failure to state a claim.[169] In her Order, Judge Robinson also stated "[t]o the extent the components of [Plaintiff's] *trade dress* result in

---

[166] *See* D. Kan. Pat. Rule 2.5 ("[T]he statements and disclosures provided for in D. Kan. Pat. Rule 4.1 and *4.2* are not admissible for any purpose other than in connection with motions seeking an extension or modification of the time periods within which actions contemplated by these Patent Local Rules must be taken.") (emphasis added).
[167] *See supra* Section II.A. regarding the Court's October 5, 2018 order.
[168] *See supra* Section I for information regarding these claims.
[169] June 28, 2019 Memorandum and Order (ECF No. 87) at pp. 10-13.

'seamless blending,' the determination of the meaning of 'seamless blending' is best left to summary judgment, where [Plaintiff] will be required to show that it is not contradictory and does not require analyses of beauty."[170]  Plaintiff argues this one sentence calls for the undersigned to rescind the October 5, 2018 order setting a schedule allowing for early claim construction and limiting discovery to claim construction in favor of allowing all discovery to proceed concurrently.

Judge Robinson's Order, however, mentions nothing about claim construction discovery regarding Plaintiff's *design patent infringement claims*, when that discovery or the resulting claim construction decision should happen, what particular discovery is necessary for Plaintiff's *trade dress allegations*, or whether that discovery overlaps with or should occur concurrently with claim construction discovery.   Rather, it discusses Plaintiff's burden in surviving the motion to dismiss stage, which the Court ruled Plaintiff sufficiently met in its Amended Complaint.  Additionally, when the undersigned ordered early claim construction and limited discovery to claim construction on October 5, 2018, Plaintiff's trade dress claims were a part of the lawsuit at that time.[171]  Thus, the Court can see no reason to change the current scheduling order because claims that were originally part of the case when the scheduling order was made are still a part of the case.  Therefore, after reviewing Plaintiff's July 9, 2019 letter and Judge Robinson's June 28, 2019 Order, the Court declines Plaintiff's request to set a new schedule.

---

[170] *Id.* at p. 13 (emphasis added).
[171] Defendant's motion to dismiss the trade dress claims was not granted until April 8, 2019.  (*See* ECF No. 72.)

On July 24, 2019, Plaintiff sent the undersigned chamber's another email. This email requests a stay of Defendant's recently filed motion for summary judgment regarding the reinstated trade dress infringement claims until all discovery is complete in this case.[172] However, pursuant to Fed. R. Civ. P. 56(d), this request should be directed to the District Judge.

As stated in the Court's January 15, 2019 Order, this case needs to move past claim construction.[173] In the Court's view, the issue in doing so appears to be the parties' (and their counsel's) unwillingness and inability to follow the Court's orders and to work with each other in a civil manner. Since October of 2018, the Court has ordered this case to proceed by early claim construction in accordance the Patent Local Rules. To comply with the Patent Local Rules in an efficient manner and to avoid unnecessary discovery disputes, the Court also limited discovery to claim construction issues. The parties seem to struggle with compliance of these orders. As an example, Plaintiff issued interrogatories to Defendant containing the exact language the Court ordered was outside the scope of claim construction discovery.[174] However, when Plaintiff issued interrogatories the Court found proper, Defendant, despite the Court's clear instruction to answer without objection, refused to answer the interrogatories.[175]

The issuance of sanctions is a rare instance in the undersigned's Court. However, as stated above, continued efforts by either party to circumvent the Court's orders will be

---

[172] *See* ECF No. 89 regarding Defendant's motion for summary judgment.
[173] ECF No. 56, p. 9.
[174] *See supra* Section III.A.3.a. and d.
[175] *See supra* Section III.A.3.b.

met with strong consideration of sanctions. If the parties' mindset to litigating this case was focused on doing so in a fair manner, rather than on impeding the Court's prior rulings and on one-upmanship, this case would be much further along.

As this case proceeds, the Court expects the parties to abide by the Court's orders. Additionally, it expects counsel to confer in good faith regarding their disputes as required by D. Kan. Rule 37.2. Counsel are also strongly encouraged to review and consult the Pillars of Professionalism regarding their interactions with each other.[176]

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reconsider Grant of Protective Order (**ECF No. 59**) is **DENIED** and Plaintiff's Motion to Strike Defendant's Exchange of Preliminary Claim Constructions and Extrinsic Evidence and to Compel Disclosure and Discovery Responses (**ECF No. 63**) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 31st day of July, 2019.

s/Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[176] *See* ECF No. 29, p. 6 at ¶ 4.