# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JENNY YOO COLLECTION, INC.,

     Plaintiff,

     v.

ESSENSE OF AUSTRALIA, INC.,

     Defendant.

Case No. 17-2666-JAR-GEB

## MEMORANDUM AND ORDER REGARDING
## DESIGN PATENT CLAIM CONSTRUCTION

Plaintiff Jenny Yoo Collection, Inc. ("JY") asserts claims against Defendant Essense of Australia, Inc. ("Essense") for design patent infringement of the 'D120 Patent and 'D723 Patent (the "Design Patents").[1] This matter is before the Court on the parties' competing briefs regarding claim construction of eight terms in the Design Patents, as supplemented, as well as Essense's Motion *in Limine* to Exclude Reports and Testimony of Jeffrey A. Trexler (Doc. 103); Essense's Motion *in Limine* to Exclude Affidavit and Testimony of Kay H. Chin (Doc. 102); Essense's Motion to Strike Supplement, or Alternatively, Motion *in Limine* to Exclude Supplemental Report of Jeffrey A. Trexler (Doc. 123). The Court previously entered an order declining to conduct a claim construction hearing.[2] JY subsequently moved to submit additional briefing, transcripts, and evidence from the claim construction hearing in a related pending case in the Southern District of New York (Doc. 131).[3]

---

[1]Also pending is Essense's Motion for Partial Summary Judgment on Counts I and II, JY's Lanham Act/Trade Dress claims (Doc. 89), which the Court addresses in a separate order.

[2]Doc. 128.

[3]*Jenny Yoo Collection, Inc. v. David's Bridal Inc., et al.*, No. 18-cv-09926 (PGG).

The parties' approach to design patent claim construction is widely divergent. Essense asks the Court to provide a detailed written description of the scope of the two Design Patents, effectively taking the position that a design patent claim construction is analogous to utility patent construction. Essence argues that by claiming the designs are "as shown and described," construction of the written terms in the drawing descriptions is proper as a matter of law. In contrast, JY urges the Court to allow the drawings in the Design Patents to speak for themselves. Not willing to hedge its bets, however, JY also asks the Court to consider the extrinsic declarations and reports of the designer, patent prosecutor, and expert in the art of dress design to explain how a designer of ordinary skill in the art would interpret the claimed designs.

The Court has carefully considered the parties' briefs and all other relevant documents as well as the relevant case law and argument at the pre-*Markman* hearing held October 22, 2019 and concludes that JY's initial position is supported by the Federal Circuit's guidance on construction of design patents. Although the Court further concludes that Essense's position invites error by viewing the designs element-by-element instead of by the overall visual impression, the Court provides guidance regarding the scope of both design patents-in-suit with respect to drafting conventions and prosecution history of the Design Patents. Additionally, the Court defers ruling on invalidity issues with respect to alleged indefiniteness as well as any limitations to the scope of the Patents that may arise from prosecution history estoppel, functional elements.

## I.    The Patents-in-Issue

JY and Essense both design and sell wedding gowns and bridesmaid dresses. JY filed this lawsuit on November 22, 2017, asserting claims against Essense for infringement of two of JY's design patents for the "Aidan" and "Annabelle" bridesmaid dresses. In connection with its

"Aidan" and "Annabelle" dresses, JY secured design patents—D 698,120 (the 'D120 Patent short dress) and D 744,723 (the 'D723 Patent long dress).

**The 'D120 Patent**

As originally filed, the 'D120 Patent claimed both a short version and long version of a "Convertible Dress," with eleven drawings.[4]  The examiner determined that the eleven drawings reflected two embodiments of a related yet distinct inventive concept and issued a restriction requirement, identifying two designs for the dress: 1) Group I: Embodiment 1 made up of Figures 1–4, 6, 7, and 11 showing a short dress; and 2) Group II: Embodiment 2 made up of Figures 5, and 8–10 showing a longer length dress, grouped together "because the length of the flaps which are converted into a halter dress, by moving over the shoulder and wrapping around the neck and then tied around the waist, appears to be only made by a longer length dress."[5]  The examiner stated that Embodiment 1 is distinct from Embodiment 2 because it "shows a short-length strapless dress whereas Embodiment 2 shows a long-length strapless dress that is convertible into a long-length halter dress which is significantly different in overall ornamental appearance."[6]  The examiner suggested JY elect Group I because Group II "appears to be indefinite and nonenabling because of the lack of sufficient views, i.e. side view, to understand the exact shape and profile of the Convertible Dress."[7]

In response, JY elected Group I, Embodiment 1, without traverse, accepting the examiner's restriction requirement and selection of the figures.[8]  As a result, JY cancelled the

---

[4]Doc. 73-6 at 136–46.

[5]*Id.* at 115.  *See* Manual of Patent Examination Procedure ("MPEP") (9th ed. Rev. Jan. 2018) § 1504.05.

[6]Doc. 73-6 at 116.

[7]*Id.*

[8]*Id.* at 101.

drawings in Group II, Embodiment 2 without prejudice to file a continuing application, renumbered the drawings, and submitted a substitute specification.[9]

The examiner then made an Examiner's Amendment to the application that: 1) objected to the title since the dress "does not appear to be a Convertible Dress," and amended to read "Dress"; 2) required a new formal set of drawings with sharp well-defined lines; and 3) amended the figure descriptions of Figs. 1–7.[10]  In response, JY amended the title from "Dress" back to "Convertible Dress," arguing the term "Convertible" was unilaterally deleted from the title by the examiner's amendment, and that "convertible" more clearly defines the intended use and nature of the article and requesting the amendment restoring the originally filed title be entered.[11] The examiner rejected JY's amended title and arguments stating that "based on the election of Group I, Embodiment 1, Figs. 1–4, 6, 7, and 11, without traverse, . . . the elected embodiment does not show a dress that is shown in different conversions."[12]  Specifically, the examiner stated that although JY states the panels of the dress can be tied into a bow to convert the dress into a different appearance, the drawing figures do not show a "convertible dress" or alternate conversions, so JY's requested title is not accurate or accepted.[13]

JY accepted the examiner's final determination without reconsideration or appeal and the 'D120 Patent was issued to JY on January 24, 2014 for "[t]he ornamental design for a dress, as shown and described," with seven drawings that include short descriptions of what is shown in the drawings covered by the Design Patent:

---

[9]*Id.* at 102–112.

[10]*Id.* at 94–95.

[11]*Id.* at 74–76.

[12]*Id.* at 70.

[13]*Id.*

- **Figure 1:** a front elevational view of a dress shown with the two side panels shown open showing my new design;
- **Figure 2:** an enlarged rear elevational view of the dress showing my new design;
- **Figure 3:** a front elevational view thereof;
- **Figure 4:** a side view in which the center of the back bodice is not visible;
- **Figure 5:** a partial view of one of the liners of the skirt having a soft tulle attached to the hem of the lining creating a slight A-line skirt;
- **Figure 6:** an enlarged partial front elevational view of FIG. 3 thereof; and,
- **Figure 7:** an enlarged partial rear elevational view of FIG 2 thereof.



FIG. 1      FIG. 2      FIG. 3

FIG. 4      FIG. 5      FIG. 6

FIG. 7

**'D723 Patent**

On August 10, 2013, JY filed a "divisional application" under 37 C.F.R. § 1.53(b) for a "Convertible Dress" covering the long dress design claiming the benefit of the 'D120 Patent.[14] The examiner amended the drawing specifications "for accuracy," and JY accepted the changes without requesting reconsideration, objection, comment, or appeal.[15]

The 'D723 Patent was issued December 8, 2015 for "[t]he ornamental design for a convertible dress, as shown and described," with eight drawings that include short descriptions of what is shown in the drawings covered by the Design Patent:

- **Figure 1:** a front elevational view of a convertible dress shown with the two side panels shown open showing my new design;
- **Figure 2:** a front elevational view of a convertible dress showing my new design;
- **Figure 3:** an enlarged rear elevational view thereof;
- **Figure 4:** a left side elevational view thereof; the right side elevational view being an identical mirror image thereof;
- **Figure 5:** a partial enlarged front elevational view of the convertible dress showing my new design;
- **Figure 6:** a partial enlarged rear view of the convertible dress showing my new design;
- **Figure 7:** a partial front elevational view showing an alternate position of the convertible dress showing my new design; and,
- **Figure 8:** a partial front elevational view showing an alternate position of the convertible dress showing my new design.

---

[14]Doc. 73-8 at 124–34.

[15]*Id.* at 101–105.



FIG. 1                    FIG. 2                    FIG. 3

FIG. 4                    FIG. 5                    FIG. 6

FIG. 7                    FIG. 8

**PTAB Proceedings**

After the 'D723 Patent was issued, David's Bridal, Inc. ("David's Bridal") filed a Petition for Post-Grant Review ("PGR") with the United States Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB"), asserting that the convertible dress design patent was invalid because of the additional new figures to the application.[16] David's Bridal argued that because this "new matter" was not included in the 'D120 Patent, the 'D723 Patent for the long dress was not entitled to the priority date of the original application. The PTAB denied David Bridal's petition and concluded that JY had not added new matter to the 'D723 Patent application, which entitled JY to the original application's filing date and stripped the PTAB of jurisdiction over David Bridal's petition.[17] The PTAB thus declined to initiate a PGR proceeding and David's Bridal was statutorily prohibited from taking an appeal.[18] The PTAB expressly stated: "Here, neither party contends that any aspect of the claim need be explicitly construed for purposes of this Decision . . . .We agree and find that, for purposes of this Decision, the figures alone provide a complete construction of the challenged claim."[19]

## II. Design Patent Claim Construction

"In general terms, a 'utility patent' protects the way an article is used and works (35 U.S.C. 101), while a 'design patent' protects the way an article looks (35 U.S.C. 171)."[20] Whereas a utility patent claims "any new and useful process, machine, manufacture, or composition of matter,"[21] a design patent may be obtained for "any new, original and ornamental

---

[16]*Id.* at 57. *See* 35 U.S.C. § 325(e)(2).

[17]Doc. 73-8 at 75.

[18]35 U.S.C. § 324(e).

[19]Doc. 73-8 at 74–75.

[20]MPEP § 1502.01.

[21]35 U.S.C. § 101.

design for an article of manufacture."[22]  A design patent thus only protects the novel, ornamental features—essentially, the appearance of—the patented design.[23]  Only the ornamental aspects of the design are protected—any functional elements are beyond the scope of the patent.[24]

"Whether a design patent is infringed is determined by first construing the claim to the design, when appropriate, and then comparing it to the design of the accused device."[25]  The test for infringement of a design patent looks to the overall appearance of the patented and accused designs to determine whether, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, [the] two designs are substantially the same[.]"[26]  The designs are "'substantially the same, if the resemblance [between the accused device's design and the patented design] is such as to deceive [an ordinary] observer, inducing him to purchase one supposing it to be the other.'"[27]  In applying the ordinary observer test, the focus should be on "the appearance of the design as a whole."[28]

Before infringement can be assessed, however, the court must first construe the claims.[29]  Claim construction is a matter of law for the court.[30]  "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not

---

[22]*Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (quoting 35 U.S.C. § 171).

[23]*OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

[24]*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293–94 (Fed. Cir. 2010).

[25]*OddzOn*, 122 F.3d at 1404.

[26]*Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871).

[27]*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham*, 81 U.S. at 528).

[28]*OddzOn*, 122 F.3d at 1405 (citing *Gorham*, 81 U.S. at 528).

[29]*See OddzOn*, 122 F.3d at 1405.

[30]*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384–91 (1996).

to change, the scope of the claims."[31]  In utility patents, claim construction involves determining

what the technical words in the claim mean.  Construction of design patent claims differ because

drawings, not words, must be construed.[32]  "In a design patent application, the subject matter

which is claimed is the design embodied in or applied to an article of manufacture (or portion

thereof) and *not* the article itself."[33]  "The design for an article consists of the visual

characteristics embodied in or applied to an article."[34] While a utility patent is analyzed claim

term by claim term, a design patent is analyzed based on the design as a whole.[35]

The scope of a design patent differs from the scope of a utility patent in several key ways.

First, "[n]o description, other than a reference to the drawing, is ordinarily required."[36]  "Thus,

while the metes and bounds of a utility patent are established by the language of its claims, the

metes and bounds for a design patent are established by its figures."[37]  Second, design patents are

limited to a single claim.[38]  Third, design patent drawings are subject to technical requirements,

"and must contain a sufficient number of views to constitute a complete disclosure of the

appearance of the design."[39]

---

[31]*Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (quoting *Scripps Clinic v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991)).

[32]*Egyptian Goddess*, 543 F.3d at 679.

[33]MPEP § 1502 (citation omitted).

[34]*Id.*

[35]*Egyptian Goddess*, 543 F.3d at 680.

[36]37 C.F.R. § 1.153(a); *see also* MPEP § 1503.01, ¶ 15.59(II) ("No description of the design in the specification beyond a brief description of the drawing is generally necessary, since as a rule the illustration in the drawing views is its own best description.").

[37]*Reddy v. Lowe's Cos., Inc.*, 60 F. Supp. 3d 249, 252 (D. Mass. 2014).

[38]37 C.F.R. § 1.153(a).

[39]37 C.F.R. § 1.152.

The Federal Circuit "has cautioned, and continues to caution, trial courts about excessive reliance on a detailed verbal description in a design infringement case."[40]  In *Egyptian Goddess, Inc. v. Swisa, Inc.*, the Federal Circuit recognized "as a general matter, [trial] courts should not treat the process of [design patent] claim construction as requiring a detailed verbal description of the claimed design, as would typically be true in the case of utility patents."[41]  Although "trial courts have a duty to conduct claim construction in design patent cases," there is no "particular form that the claim construction must take," leaving the process up to the discretion of the trial court.[42]  The court explained that "design patents 'typically are claimed as shown in drawings,' and that claim construction 'is adapted accordingly.'"[43]  In other words, "a design is better represented by an illustration than it could be by any description."[44]  *Egyptian Goddess* provided the following guidance for the court to exercise its discretion as to how much detail to use in describing a claimed design:

> [I]t should be clear that the court is not obligated to issue a detailed verbal description of the design if it does not regard verbal elaboration as necessary or helpful.  In addition, in deciding whether to attempt a verbal description of the claimed design, the court should recognize the risks entailed in such a description, such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole.[45]

---

[40]*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302–03 (Fed. Cir. 2010) (citing *Egyptian Goddess*, 543 F.3d at 679).

[41]543 F.3d at 680.

[42]*Id.* at 679–80.

[43]*Id.* at 679 (quoting *Ariminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1319 (Fed. Cir. 2007)).

[44]*Id.* (citation and internal quotation marks omitted) ("[T]he preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design.").

[45]*Id.* at 679–80.

### III.    Motions *in Limine*

In connection with its responsive *Markman* claim construction brief, JY submitted: 1) a summary of the purported expert opinions of Jeffrey Trexler (the "Trexler Summary"), as supplemented after the pre-*Markman* hearing, and 2) the Declaration of Kay H. Chin, who was retained by JY to prepare and prosecute the 'D120 Patent application (the "Chin Declaration"). Essense moves to exclude or limit the report and declaration of both witnesses as experts at the claim construction stage of the proceedings.  Essense also moves to strike Trexler's supplemental report, which is essentially a legal brief in support of JY's proposed claim construction.

Fed. R. Evid. 702 governs the admissibility of expert testimony.  That rule provides, in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[46]

The Court has broad discretion in deciding whether to admit expert testimony.[47]  It is within the discretion of the trial court to determine how to perform its gatekeeping function under *Daubert*.[48]  The most common method for fulfilling this function is a *Daubert* hearing, although such a process is not specifically mandated.[49]  The Court heard argument on the

---

[46]Fed. R. Evid. 702.

[47]*Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996).

[48]*Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

[49]*Id.*

motions and has carefully reviewed the submissions filed with the motions and believes this review is sufficient to render a decision for purposes of claim construction.

As detailed in its order granting Essense's Motion for Protective Order and denying JY's Motion to Continue the *Markman* hearing, the Court exercised its discretion and chose not to conduct a claim construction hearing. [50] Accordingly, there will be no expert testimony, but the Court will instead construe the Design Patent claims based upon the parties' written submissions and record. Those submissions include the Trexler Summary, as supplemented, and the Chin Declaration. Essense raises various arguments in support of its request to exclude these written submissions, including: 1) JY does not offer a complete expert report from Mr. Trexler, but merely a summary of what his testimony would be, and his supplemental report is effectively a legal opinion, and 2) Ms. Chin was not identified as an expert witness at the claim construction stage and is not qualified as an expert because she is not a patent agent or patent attorney and did not prosecute the 'D723 Patent.

Because claim construction is a matter of law "exclusively within the province of the court,"[51] however, the Court does not rely on either the Trexler Summary report or supplement, or the Chin Declaration in construing the claim of either the 'D120 Patent or 'D723 Patent. Accordingly, the Court denies Essense's motions as moot. Should JY attempt to rely on either witness's testimony, report or declaration at a later stage of this proceeding, Essense may renew or refile its motions.

---

[50]Doc. 128 at 12–13. Likewise, the Court would not rely on Ms. Chin and Mr. Trexler's deposition testimony taken in the *David's Bridal* lawsuit in construing the claims for the Design Patents.

[51]*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

## IV. Discussion

### A. Invalidity for Indefiniteness

Essense argues that the figures as drawn and described are inconsistent and collectively incapable of being construed as a single design, and thus invalid for indefiniteness pursuant to 35 U.S.C. § 112. Essense contends that "my new design" cannot be determined because of the irreconcilable inconsistencies in the drawings and written description. Specifically, Essense argues that the shape of the side panels is different in various drawings and not a unitary design as required; there is no way to determine which design is claimed or to determine a uniform design, rendering the patents "hopelessly invalid."

Indefiniteness is a question of law.[52] "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."[53] "[A] design patent is invalid for indefiniteness if the errors and inconsistencies in the patent drawings are of such magnitude that the drawings, taken as a whole, fail to inform, with reasonable certainty, those skilled in the art about the overall appearance of the design."[54] However, district courts have generally been reluctant to consider whether a patent is indefinite at the claim construction phase, rather than at the summary judgment phase.[55]

---

[52]*Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015) (citing *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1365–66 (Fed. Cir. 2011)).

[53] *Tinnus Enter., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017) (quoting *Nautilus, Inc. v. Biosig Instr., Inc.*, 572 U.S. 898, 901(2014)).

[54]*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 2:15-cv-02812-ODW(CWx), 2016 WL 7017219, at *4 (C.D. Cal. Dec. 1, 2016).

[55]*See, e.g., Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, No. 3:17-cv-3197-M, 2018 WL 3330025, at *6 n.10 (N.D. Tex. June 6, 2018) (deferring ruling on indefiniteness until after claim construction; *Junker v. Med. Components, Inc.*, 2017 WL 4922291, at *2 (E.D. Pa. Oct. 31. 2017) (deferring ruling on indefiniteness until summary judgment stage); *Gilead Scis., Inc. v. Mylan Inc.*, No. 1:14CV99, 2015 WL 1534067, at *2 (N.D. W. Va. Apr. 6, 2015); *Indus. Tech. Research Inst. v. LG Elecs. Inc.*, No. 3:13-CV-02016-GPC-WVG, 2014 WL 6907449, at *2 (S.D. Cal. Dec. 8, 2014) (deferring "determination of indefiniteness to a later stage of the proceedings so the

Based on the particular circumstances of this case, the Court will defer ruling on indefiniteness until the summary judgment stage. As noted in several orders issued in this case, discovery has been limited to claim construction at this time in accordance with the local patent rules.[56] Given the potentially dispositive nature of an invalidity ruling, that decision is better left for when the parties have had a full opportunity to conduct discovery and fully brief and argue this issue.[57] Moreover, federal precedent cuts against a ruling on invalidity at the claim construction stage where, as here, the patent challenger's argument for invalidity is based on alleged inconsistencies in the patent figures; such alleged inconsistencies do not meet a patent challenger's burden of proving indefiniteness by clear and convincing evidence.[58]

Essense previously raised the invalidity for indefiniteness issue on a Fed. R. Civ. P. 12(b)(6) motion and the Court joined the Northern District of Texas court in declining to entertain the issue as premature.[59] As the Texas court explained, a court must "first attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness."[60] This does not mean the indefiniteness issue is appropriate for claim construction; although it turns on general principles of construction, a patent claim is presumed

---

parties may thoroughly brief the Court on the matter."); *CSB-Sys. Int'l Inc. v. SAP Am., Inc.*, No. 10-2156, 2011 WL 3240838, at *17 (E.D. Pa. July 28, 2011) ("Several well-settled principles [including the dispositive nature of an indefiniteness finding] . . . tend to discourage rulings on indefiniteness at the *Markman* stage."). *But see Eclectic Prods., Inc. v. Painters Prods., Inc.*, 2015 WL 930045 (D. Or. Mar. 2, 2015) (holding a design patent invalid at the claim construction stage based on indefiniteness, and noting that while "[c]laim construction generally resolves disputes over the meaning of the patent, . . . in some cases, the patent is so lacking in clarity as to be invalid as indefinite." (internal quotation marks omitted)).

[56]*See* Docs. 23, 56, 93, 128.

[57]*See Indus. Tech. Research Inst.*, 2014 WL 6907449, at *2.

[58]*See, e.g., Junker*, 2017 WL 4922291, at *3; *Deckers*, 2016 WL 7017219, at *4.

[59]Doc. 25 at 18–19.

[60]*Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, No. 3:17-cv-3197-M, 2018 WL 3330025, at *6 n.10 (N.D. Tex. June 6, 2008) (quoting *Mannatech, Inc. v. Techmedia Health, Inc.*, No. 3:06-CV-00813-P, 2009 WL 3614359, at *15 (N.D. Tex. Oct. 29, 2009)).

valid and therefore the challenging party bears the burden of proving indefiniteness by clear and convincing evidence.[61]  Accordingly, the Court declines to determine whether the Design Patents are invalid for indefiniteness at this time, and will proceed with construing the 'D120 Patent and 'D723 Patent's single claims.

**B.      Disputed Claim Construction Issues**

Essense's construction argument can be divided into four categories: 1) disputed claim terms; 2) scope limited by prosecution history estoppel; 3) scope limited by functionality; and 4) scope circumscribed by prior art.[62]  The Court discusses each argument in turn.

**1.      "As Shown and Described"**

Essense seeks to construe the following terms from the specification descriptions in the figures of the drawings for the 'D120 Patent and 'D723 Patent:

- **Dress**: ['D120 Patent] non-convertible outer garment for women with only two side panels

- **Convertible Dress**: ['D723 Patent] an outer garment for women with only two side panels that may be converted or change positions

- **Side panels**: panels on the sides of the dress

- **The two side panels**: the two (and only two) panels on the sides of the dress

- **Left side**: the view of the dress from the left side

---

[61]*Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344–45 (Fed. Cir. 2007); 35 U.S.C. § 282.

[62]As a threshold issue, JY briefly argues, without citation to authority, that Essense is precluded from pursuing construction of the 'D120 and 'D723 Patents on the ground that the PTAB issued a final judgment on the merits relating to the issue of the scope and construction of the disputed patents and thus has already adopted the claim construction proposed by JY here. This argument is without merit.  David Bridal's petition was denied because PGR proceedings are not applicable to patents with an effective date prior to March 16, 2013.  Doc. 73-8 at 75; 35 U.S.C. § 325(e)(2).  Even if there had been a final PGR, however, Essense was not a real party in interest to the PGR proceedings and the actual claim construction was not litigated at the PTAB, which applied a different legal standard for construction than this Court does and specifically limited its construction findings to the motion before it.  *See* 35 U.S.C. § 325(e)(2).

JY contends that the Court should not attempt to construe the patented designs because a detailed verbal description is not necessary or helpful to the jury, would place undue emphasis on particular features of the designs, and construes words used to identify the drawings in a manner that is inconsistent with the drawings. JY requests the Court construe the Design Patents as shown and described in the figures contained therein, with no verbal construction. Nevertheless, JY expands its argument to assert that a designer of ordinary skill in the art of women's fashion would conclude that the ornamental designs shown in the drawings for both the 'D120 and 'D723 Patents, considered as a whole, show a convertible dress with two front and rear panels that can be raised and adjusted to create different looks while "seamlessly blending" into the bottom of the dress.

Essense cites the recent Federal Circuit decision in *Curver Luxembourg, SARL v. Home Expressions, Inc.,*[63] in support of its argument that the Court is required to construe the terms in the specification descriptions of the figures of the drawings. In *Curver*, the Federal Circuit held, on an issue of first impression, that claim language specifying an article of manufacture could limit the scope of a design patent even when the article was not illustrated in the figures.[64] Curver Luxembourg is the assignee of a design patent titled "Pattern for a Chair" and claimed an overlapping "Y" design pattern for a chair.[65] The title, description of figures, and claim of the patent all consistently recited a "pattern for a chair, . . . [b]ut none of the figures illustrate[d] a design being applied to a chair."[66] The original claim recited a "design for a furniture part," not a chair specifically, and each of the figures was described as illustrating a design for a furniture

---

[63]938 F.3d 1334 (Fed. Cir. 2019).

[64]*Id.* at 1341–42.

[65]*Id.* at 1336.

[66]*Id.*

part.[67]  None of the figures, however, illustrated a chair, any furniture, or any furniture part.[68]

The PTO allowed the claim but objected to the title.[69]  The examiner stated that under 37 C.F.R.

§ 1.153 and MPEP § 1503.01 (I), the title must designate a "particular article" for the design and

that under those provisions, the title and specification's use of "part" were "too vague" to

constitute an article of manufacture.[70]  The examiner suggested the title be amended to read

"Pattern for a Chair," and that "[f]or consistency," the "title [ ] be amended throughout the

application."[71]  Curver adopted the examiner's suggestion and replaced the original title with

"Pattern for a Chair" and replaced "furniture part" with "pattern for a chair" in the claim and

figure descriptions to be consistent with the amendment to the title.[72]  Curver did not amend the

figures to newly illustrate a chair.[73]

     Curver sued Home Expressions, Inc. for infringement of its design patent, claiming that

the baskets Home Expressions sold incorporated Curver's claimed "Y" design.[74]  Home

Expressions moved to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that the patent was limited

to chairs only and therefore its baskets did not infringe the patent.[75]  The district court agreed

with Home Expressions and granted the motion.[76]

---

[67] *Id.* at 1337.

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.* (noting that "[t]he claim in a design patent must be directed to the design for an article" under 35 U.S.C. § 171).

[72] *Id.*

[73] *Id.*

[74] *Id.* at 1338.

[75] *Id.*

[76] *Id.*

On appeal, the Federal Circuit affirmed the dismissal, holding that Curver's amendment of the title of its design patent application from an ornamental design directed to a pattern for a "furniture part" to one for a "pattern for a chair" to overcome a rejection by the examiner for failing to designate the particular article to which the design was affixed, created a prosecution history estoppel limiting the scope of the ornamental design to something applied to a chair.[77] Curver argued that the district court improperly applied prosecution history estoppel to limit the scope of its design patent to a chair by focusing on the design patent's text instead of the figures and that because the originally-filed claim reciting a design for "a furniture part" was allowed by the examiner before the claim was amended, Curver did not surrender the broader scope encompassed by the original claim.[78]  The Federal Circuit disagreed, explaining

> While we agree that courts typically look to the figures to define
> the invention of the design patent, it is inappropriate to ignore the
> only identification of an article of manufacture just because the
> article is recited in the design patent's text, rather than illustrated in
> its figures.  Here, the prosecution history shows that Curver
> amended the title, claim, and figure descriptions to recite "pattern
> for a chair" in order to satisfy the article of manufacture
> requirement necessary to secure its design patent.  The examiner
> found that Curver's original title of "FURNITURE (PART OF)"
> was "too vague" to constitute a "particular article" under §
> 1.153(a) and suggested that the title be amended to read "Pattern
> for a Chair."  Curver did not dispute the validity of that
> requirement and instead amended the title, claim, and figure
> descriptions to clarify that the pattern was for a chair "as required
> in the Office Action." The Patent Office accepted these
> amendments and did not require Curver to supply new drawings
> illustrating the ornamental design applied to a chair.  Because the
> "pattern for a chair" amendments were made pursuant to § 1.153
> requiring the designation of a particular article of manufacture, and
> this requirement was necessary to secure the patent, we hold that
> the scope of the '946 patent is limited by those amendments,

---

[77]*Id.* at 1341–42.

[78]*Id.* at 1341.

> notwithstanding the applicant's failure to update the figures to
> reflect those limiting amendments.[79]

Essense argues that *Curver* instructs that because the 'D120 Patent and 'D723 Patent are claimed "as shown and described," the written descriptions in the patents must be construed along with the drawings. PTO regulations require that "[t]he title of the design must designate the particular article" to which the ornamental design is applied.[80] "No description, other than a reference to the drawing, is ordinarily required. The claim shall be in formal terms to the ornamental design for the article (specifying name) as shown, or as shown and described."[81] As the *Curver* court explained, "[t]his regulation tells us two things: 1) the claim is not directed to a design *per se*, but a design for an identified article, and 2) the scope of the design claim can be defined either by the figures ('as shown'), or by a combination of the figures and the language of the design patent ('as shown and described')."[82] Essense argues that this language requires the Court to construe the terms in the specification descriptions of the figures in the drawings. The Court disagrees.

The MPEP states that "[n]o description of the design in the specification beyond a brief description of the drawing is generally necessary, since as a rule the illustration in the drawing views is its own best description."[83] If the applicant includes a verbal description, the MPEP refers to the following as permissible statements in the specification of an "as described" claim:

> (1) Description of the appearance of portions of the claimed design
>     which are not illustrated in the drawing disclosure. . . .
> (2) Description disclaiming portions of the article not shown in the
>     drawing as forming no part of the claimed design.

---

[79]*Id.* at 1341–42.

[80]37 C.F.R. § 1.153(a).

[81]*Id.*

[82]938 F.3d at 1340–41.

[83]MPEP § 1503.01.

(3) Statement indicating the purpose of broken lines in the drawing
. . . .
(4) Description denoting the nature and intended use of the claimed design, if not included in the preamble pursuant to 37 C.F.R. 1.154 and MPEP § 1503.01, subsection I. . . .
(5) A "characteristic features" statement describing a particular feature of the design that is considered by applicant to be a feature of novelty or nonobviousness over the prior art. . . .[84]

The MPEP further provides that "[d]escriptions of the figures are not required to be written in any particular format, however, if they do not describe the views of the drawing clearly and accurately, the examiner should object to the unclear and/or inaccurate descriptions and suggest language which is more clearly descriptive of the views."[85]   The narrative description of the drawings "is incorporated into the claim by use of the language 'as shown and described.'"[86]

Neither the MPEP nor *Curver* treat the inclusion of narrative description of the drawings as grounds for expanding claim construction with detailed verbal interpretations of discrete descriptive terms.  The *Curver* court dealt with an "atypical" situation where all of the drawings failed to depict an article of manufacture for the ornamental design, while the claim language specified the article of manufacture.[87]  This holding does not change the MPEP's call for the claim to include more than a "brief" verbal description that meets the standards in accordance with 35 U.S.C. § 112.  Essense does not cite, nor did the Court find, case law that construes "as shown and described" in this manner.  Accordingly, the Court proceeds to construe the design patents under long-standing Federal Circuit precedent.

---

[84]*Id.*

[85]*Id.*

[86]MPEP § 1504.04.

[87]938 F.3d 1334, 1339 (Fed. Cir. 2019).

The construction of design patents presents a special challenge to the courts, as "[d]esign patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting."[88] "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design."[89] Since *Egyptian Goddess* was decided nearly twelve years ago, district courts have declined to stray from the Federal Circuit's standard that explains the risk entailed in detailed descriptions such as those proposed by Essense because it places "undue emphasis on particular features" of the patented design and "away from consideration of the design as a whole."[90] JY's proposed "seamlessly blend" description of the designs similarly focuses on particular features of the designs. In light of this discussion, the Court joins those courts and will avoid a detailed written claim construction describing various elements of the 'D120 Patent and 'D723 Patent, but instead defines the Design Patents by figures and claim language as outlined in the respective patents themselves.

---

[88]*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010).

[89]*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc).

[90]*See, e.g., Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1102 (S.D. Cal. 2018); *P.S. Prods., Inc. v. Activision Blizzard, Inc.*, 140 F. Supp. 3d 795, 802 (E.D. Ark. 2014); *Reddy v. Lowe's Cos., Inc.*, 60 F. Supp. 3d 249, 254–57 (D. Mass. 2014); *Kao v. Snow Monster, Inc.*, No. CV 17-08934-RSWL-GJSx, 2019 WL 2164192, at *2 (C.D. Cal. May 16, 2019); *Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*, No. 3:15-cv-849-J-34PDB, 2019 WL 1304290, at *11 (M.D. Fla. Mar. 21, 2019); *Deckers Outdoor Corp. v. Romeo % Juliette, Inc.*, No. 2:15-cv-02812-ODW(CWx), 2016 WL 7017219, at *6 (C.D. Cal. Dec. 1, 2016); *Blackberry Ltd. v. Typo Prods. LLC*, No. 14-cv-00023-WHO, 2014 WL 6603126, at *5–6 (N.D. Cal. Nov. 20, 2014); *OraLabs, Inc. v. Kind Group LLC*, No. 13-CV-00170-PAB-KLM, 2014 WL 1630690, at *4 (D. Colo. Apr. 24, 2014); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846-LHK, 2012 WL 3071477, at *3 (N.D. Cal. July 27, 2012); *Depaoli v. Daisy Mfg. Co., Inc.*, No. 070cv-11778-DPW, 2009 WL 2145721, at *2–*5 (D. Mass. July 14, 2009).

That being said, the Court recognizes that "resolution of discrete disputes regarding claim scope may be appropriate, rather than a verbal description of the entire claim."[91]  Instead of attempting to reduce to words the designs at issue, which are best represented by the Design Patents' drawings, the Court directly addresses the fundamental issues raised concerning the 'D120 and 'D732 Patents' scope: are the claimed designs limited to two side panels on the front of the dress or do they encompass side panels on the rear of the dress as well?

The Court finds that the 'D120 Patent and 'D723 Patent claim four side panels—two front side panels and two rear side panels, as made apparent from the drawings of the design considered as a whole.  Essense's claim construction urges the court to construe the claims so that the rear features shown in several figures of the Design Patents are not part of the protected design.  This proposed construction simply ignores 'D120 Figures 2, 4, and 7 and 'D723 Figures 3, 4, and 6, which depict two panels in the rear of the respective dresses.  Nothing in either Design Patent indicates that the rear features of the articles of manufacture are not part of the claimed design, such as broken lines that form no part of the claimed designs.[92]  The Court stops short, however, of resolving the parties' remaining dispute about whether JY surrendered a claim for a convertible dress with both front and rear panels, as explained below.

### 2.      Prosecution History Estoppel

Essense further argues that the scope of the 'D120 and 'D723 Patents is limited by the amendments to the design patent's text.  Essense urges that prosecution history estoppel requires that JY's patents are limited to dresses claiming only two panels.  Specifically, Essense contends

---

[91]*Three Times Clothier, LLC v. Spanx, Inc.*, Nos. 13 Civ. 2157, 13 Civ. 7260 (DLC), 2014 WL 1688130, at *3 (S.D.N.Y. Apr. 29, 2014) (citing *Egyptian Goddess*, 543 F.3d at 679); *Artskills, Inc. v. Royal Consumer Prods., LLC*, No. 3:17-cv-1552 (VAB), 2019 WL 1930751, at *14 (D. Conn. May 1, 2019) (same).

[92]35 C.F.R. § 1.152.

that by accepting the amended title and description, JY conceded to the amendments required in the USPTO Action—thus, as in *Curver*, the scope of the 'D120 Patent is limited to "a dress with only two side panels that cannot be converted." Likewise, it argues *Curver* supports construing the 'D723 Patent as limited to a convertible dress with only two side panels.

The Court notes there is a distinction between using the prosecution history of a proceeding to understand the meaning of claim terms at issue and invoking prosecution history estoppel, where the applicant's characterization of the invention can prevent the applicant from recapturing aspects of the invention. The former, which is intrinsic evidence consisting of "the complete record of the proceedings before the PTO," is properly considered at the claim construction stage.[93] The latter, however, is a defense to infringement and not properly raised at construction.[94]

The doctrine of prosecution history estoppel bars a patentee from "asserting as an equivalent subject matter surrendered during prosecution of the patent application."[95] The patentee may not attempt to recapture this surrendered ground during later infringement proceedings.[96] The Federal Circuit has applied the doctrine to bar all infringement claims of a design patent and instructs that whether prosecution history estoppel limits the scope of a design patent "turns on the answers to three questions: (1) whether there was a surrender; (2) whether it

---

[93]*Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).

[94]*See, e.g.*, *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1376 (Fed. Cir. 2008) (holding prosecution history estoppel "prevents a patentee from recapturing under the doctrine of equivalents subject matter surrendered during prosecution to obtain a patent."); *Senior Techs., Inc. v. R.F. Techs., Inc.*, 76 F. App'x 318, 320 (Fed. Cir. 2003) ("prosecution history estoppel does not apply to claim construction.").

[95]*Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1316 (Fed. Cir. 2002).

[96]*EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1203 (Fed. Cir. 2014).

was for reasons of patentability; and (3) whether the accused design is within the scope of the surrender."[97]

There is no question that the article of manufacture for the 'D120 Patent is a "dress" and for the 'D723 Patent is a "convertible dress." It is also clear from the prosecution history that the examiner distinguished between "dress" and "convertible dress" for the two Design Patents. However, determination of whether there was a surrender of scope with respect to the title or figure descriptions is inappropriate as part of claim construction. To the extent the scope of either Patent claim must be limited by prosecution history estoppel, the Court will address the issue on summary judgment.[98]

---

[97] *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 700, 702 (Fed. Cir. 2014). Indeed, prosecution history estoppel has been applied by other courts to the 'D120 Patent in the context of motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, No. 3:17-cv-3197-M, 2018 WL 3330025, at *5–6 (N.D. Tex. June 6, 2018) (holding prosecution history estoppel applied to preclude JY from asserting that the 'D120 Patent should cover floor-length dresses, and the infringement claims were thus dismissed where Watters' accused dresses were all floor-length); *Jenny Yoo Collection, Inc. v. Watters Design, Inc.*, Nos. 16-CV-2205 (VSB), 16-CV-2647 (VSB), 16-CV-3640 (VSB), 2017 WL 4997838, at *9 (S.D.N.Y. Oct. 20, 2017) (same).

[98] It is not clear whether Essense means to invoke prosecution history disclaimer, which "preclude[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)). The doctrine applies "where an applicant, whether by amendment or by argument, unequivocally disavowed a certain meaning to obtain his patent." *Schindler Elevator Corp.v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) (citation omitted). Disclaimer "ensures that claims are interpreted by reference to those 'that have been cancelled or rejected.'" *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002) (citing *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220–21 (1940)). "The party seeking to invoke prosecution history disclaimer bears the burden of proving the existence of a 'clear and unmistakable' disclaimer that would have been evident to one skilled in the art." *Trivascular, Inc. v. Samuels*, , 812 F.3d 1056, 1063–64 (2016) (citing *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007)). While there are no strict requirements mandating when disclaimer arguments are to be heard, numerous district courts have held this argument is also better addressed during the infringement stage, i.e., summary judgment, rather than the construction stage. *See, e.g., J.R. Simplot Co. v. McCain Foods USA, Inc.*, No. 1:16-cv-00449-DCN, 2018 WL 3945374, at *12 (D. Idaho Aug. 16, 2018) (citing cases), *reconsidered on other grounds*, 2019 WL 177292 (D. Idaho Jan. 11, 2019). To the extent Essense makes a disclaimer argument, it will have to raise it on summary judgment.

### 3. Functionality

Essense contends that the convertible side panels visible in the 'D723 Patent's illustrations should be excluded from the scope of the patent because they are functional in nature. Design patents "protect the overall ornamentation of a design, not an aggregation of separable elements."[99] The Federal Circuit has recognized that "a design may contain both functional and ornamental elements, even though the scope of a design patent claim must be limited to the ornamental aspects of the design."[100] A particular design element or feature of an article of manufacture may be deemed purely "functional," and therefore must be factored out of a design patent's claim, if its basic design is "dictated" by its functional purpose or is otherwise "essential to the use of the article."[101] Accordingly, "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."[102] Even where certain features of an article of manufacture serve a functional or utilitarian purpose, however, the Federal Circuit has reiterated that district courts must still consider whether certain ornamental aspects of otherwise functional elements contribute to a design's overall ornamentation.[103] Thus, district courts must be careful not to eliminate "whole aspects" of a claimed design, even where a design may have "many functional elements" and "minimal ornamentation" that results in an "overall

---

[99]*Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1322 (Fed. Cir. 2016).

[100]*Id.* at 1320 (internal citations omitted).

[101]*Id.*; *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1334 (Fed. Cir. 2015).

[102]*Sport Dimension*, 820 F.3d at 1320 (quoting *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)).

[103]*See, e.g., id.* at 1321 (explaining the court has "construed design patent claims so as to assist a finder of fact in distinguishing between functional and ornamental features. But in no case did we entirely eliminate a structural element from the claimed ornamental design, even though that element also served a functional purpose.") (citing *OddzOn*, 122 F.3d at 1396; *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010); *Ethicon Endo-Surgery*, 796 F.3d at 1334).

claim scope" that is accordingly narrow.[104] "Increasingly, in the wake of *Egyptian* Goddess,
courts recognize that it makes little sense to extract *aspects* of a design at claim construction
when the ultimate inquiry is supposed to be about the *overall* design."[105]

In this case, Essense has failed to adequately establish how the side panels are purely
functional and thus do not contribute to the overall ornamentation of the design. JY construes
the patent to cover the "general design concept" of a four-panel convertible dress. The side
panels enable the claimed dress to be convertible, as they can be converted or change positions.
However, the panels also have ornamental design elements, such as the shape, attachment to the
waist, and drape. Essense has not demonstrated how or why the design of the side panels feature
is dictated by function or how they serve some type of utilitarian advantage based on their shape
to warrant exclusion from the overall ornamentation of the design. Instead, Essense's proposed
construction impermissibly deletes the ornamental features of the design because they also have
functional characteristics. Accordingly, the Court construes the claim of the 'D723 Patent to
include the side panels.

### 4. Prior Art

Finally, Essense argues that the scope of the 'D120 and 'D723 Patents is circumscribed
by prior art designs of formal and convertible dresses, in particular dresses with two side panels.
The limitation in scope of a design patent in light of prior art is necessarily folded into the
infringement analysis. As *Egyptian Goddess* explained,

> Particularly in close cases, it can be difficult to answer the
> [infringement] question . . . without being given a frame of
> reference. The context in which the claimed and accused designs
> are compared, i.e., the background prior art, provides such a frame

---

[104]*Sport Dimension*, 820 F.3d at 1320–24.

[105]*Graphic Packaging Int'l, LLC v. Inline Packaging, LLC*, No. 15-cv-03476, 2019 WL 4786148, at *4 (D. Minn. Oct. 1, 2019) (emphasis in original).

of reference and is therefore often useful in the process of comparison."[106]

The infringement analysis necessarily involves a three-way comparison between the patent-in-suit, the accused device, and the prior art references. "Where the frame of reference consists of numerous similar prior art designs, those designs can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer."[107] The Court agrees that Essense's proposed claim construction is essentially an attempt to "back into" prior art in an attempt to encourage the Court to adopt its position on infringement. This would invade the province of the jury to determine infringement under the "ordinary observer" test and is inappropriate as part of claim construction.[108]

## V. Conclusion

For the reasons explained in detail above, the Court **denies as moot** Essense's Motion *in Limine* to Exclude Reports and Testimony of Jeffrey A. Trexler (Doc. 103); Essense's Motion *in Limine* to Exclude Affidavit and Testimony of Kay H. Chin (Doc. 102); Essense's Motion to Strike, or Alternatively, Motion *in Limine* to Exclude Supplemental Report of Jeffrey A. Trexler (Doc. 123); and JY's Motion to Submit Additional Briefing and Exhibits (Doc. 131).

Based on the foregoing analysis, and all of the files, records, and proceedings herein, the Court adopts the following constructions of the two Patents-in-Suit:

> The 'D120 Patent claims the ornamental design for a dress, as shown and described in Figures 1–7.

> The 'D723 Patent claims the ornamental design for a convertible dress, as shown and described in Figures 1–8.

---

[106] 543 F.3d 665, 676–77 (Fed. Cir. 2008) (en banc).

[107] *Id.* at 677.

[108] *Id.* ("An ordinary observer, comparing the claimed and accused designs in light of the prior art, will attach importance to differences between the claimed design and the prior art depending on the overall effect of those differences on the design").

**IT IS SO ORDERED.**

Dated: <u>January 17, 2020</u>

                                             <u>S/ Julie A. Robinson</u>
                                             JULIE A. ROBINSON
                                             CHIEF UNITED STATES DISTRICT JUDGE