# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JENNY YOO COLLECTION, INC.,

    Plaintiff,

v.

ESSENSE OF AUSTRALIA, INC.,

    Defendant.

Case No. 17-2666-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiff Jenny Yoo Collection, Inc. ("JY") asserts claims against Defendant Essense of Australia, Inc. ("Essense") for trade dress infringement in violation of Section 43(a) of the Lanham Act,[1] trade dress infringement and unfair competition under New York common law, and patent infringement of both its 'D723 Patent and 'D120 Patent. This matter is before the Court on Essense's Motion for Partial Summary Judgment (Doc. 89) as to JY's claims of trade dress infringement under the Lanham Act (Count I) and common law trade dress infringement and unfair competition (Count II).[2] JY filed a response and moves to defer ruling on the motion under Fed. R. Civ. P. 56(d) (Doc. 99). As explained below, the Court denies summary judgment on the issue of preemption and, under Rule 56(d), denies without prejudice Essense's motion on the issue of nonfunctionality.

---

[1] 15 U.S.C. § 1125(a).

[2] Essense does not move for summary judgment on JY's patent infringement claims in Counts III and IV; Plaintiff's claims for unfair business practices (Count V) and unjust enrichment (Count VI) were previously dismissed. Doc. 72.

**I.     Background**

The facts of this case are well known and will only be briefly recited here. JY introduced convertible "Aidan" and "Annabelle" bridesmaid dress designs in 2012. Design patents were issued for the dresses in 2014 and 2015. JY also filed utility patent applications for "multi-use" garments, which have not been granted.

In December 2017, JY filed this action against Essense, asserting claims of alleged trade dress infringement and design patent infringement on the bridesmaid dresses. On August 7, 2018, this Court denied Essense's first motion to dismiss with respect to the patent infringement claims and granted JY leave to amend its Complaint with respect to two issues surrounding the trade dress infringement claims.[3] Essense subsequently moved to dismiss JY's Amended Complaint and on April 8, 2018, this Court dismissed JY's trade dress claims without leave to amend on the grounds that JY did not sufficiently allege a distinct trade dress.[4] In so ruling, the Court did not consider whether the Amended Complaint sufficiently alleged the required discrete elements of secondary meaning and nonfunctionality.[5]

On August 21, 2018, Magistrate Judge Gwen E. Birzer entered a phased Initial Patent Scheduling Order allowing for early claim construction.[6] The claim construction discovery deadline was ultimately continued until March 15, 2019.[7] This Court, at its discretion, was to then set a date to hear and decide the parties' claim construction issues, after which a scheduling

---

[3]Doc. 25 at 8–12.
[4]Doc. 72.
[5]*Id.* at 8–11; 15 U.S.C. § 1125(a)(3).
[6]Doc. 29.
[7]Doc. 58.

order for the remainder of discovery and other pretrial maters would be set. Despite JY's efforts to modify or expand the initial order, Judge Birzer stood firm on the phased discovery.[8]

On June 28, 2019, the Court granted JY's Motion to Reconsider the order dismissing JY's trade dress infringement claims, finding that JY plausibly pled a protected trade dress at the motion to dismiss stage, and that the determination of the key phrase "seamless blending" is best left to summary judgment.[9] The Court also found it plausible that JY's trade dress is nonfunctional.[10] Three weeks later, without a scheduling conference or any fact discovery, Essense moved for summary judgment on the trade dress claims.[11] In response, JY requested that the Court either deny the motion or, at a minimum, that consideration be delayed under Fed. R. Civ. P. 56(d).

Meanwhile, the parties engaged in protracted argument about the design patent claim construction proceedings, culminating in this Court's claim construction order entered January 17, 2020.[12] Per the Second Revised Initial Patent Scheduling Order, the parties had forty-two days to submit their proposed schedule for the post-claim-construction phase of the case.[13] Judge Birzer took up fact and expert discovery matters at the March 6, 2020 scheduling conference for both the trade dress and patent infringement claims. Of course, until the trade dress claims were reinstated in June of 2019, there was no need to address discovery on those claims. On March 10, 2020, Judge Birzer entered a Scheduling Order setting the following relevant deadlines: fact discovery completed by August 19, 2020; expert disclosures by October

---

[8] *See* Docs. 56, 93.
[9] Doc. 87 at 12–13.
[10] *Id.* at 14–15.
[11] Doc. 89.
[12] Doc. 133.
[13] Doc. 58.

15 and November 19, 2020; expert discovery completed by December 18, 2020; and dispositive motion deadline February 12, 2021.[14]

Finally, Essence was recently granted unopposed leave to amend its answer and assert counterclaims of patent unenforceability due to inequitable conduct and fraud.[15]

**II.     Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[16] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[17] "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[18] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[19] A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[20]

There is no rule against early summary judgment motions. "[A] party may file a motion for summary judgment at any time until 30 days after the close of discovery."[21] But under Fed.

---

[14]Doc. 140 at 11.

[15]Doc. 144.

[16]Fed. R. Civ. P. 56(a).

[17]*City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008)).

[18]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[19]*Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[20]*Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

[21]Fed. R. Civ. P. 56(b).

R. Civ. P. 56(d), if a party shows by affidavit that it cannot present facts essential to justify its opposition, "the court may: (1) defer considering the [summary judgment] or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[22]

The Tenth Circuit does not impose a high burden on a party seeking relief under Rule 56(d). Instead, the court has made clear that, "[u]nless dilatory or lacking in merit, [a Rule 56(d)] motion should be liberally treated."[23] As such, the Circuit analyzes four so-called "*Gutierrez* factors" for a party trying to secure relief under Rule 56(d): a party "must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [him] to obtain those facts and rebut the motion for summary judgment."[24] "A party may not invoke Rule 56[d] 'by simply stating that discovery is incomplete but must state with specificity how the additional material will rebut the summary judgment motion.'"[25]

Whether to grant a Rule 56(d) motion is left to the court's discretion, but if the party filing the motion "has been dilatory" or "the information sought is either irrelevant to the summary judgment motion or merely cumulative, no extension will be granted."[26]

---

[22]"When Rule 56 was rewritten in 2010, the provisions in Rule 56(f) were moved to a new subdivision (d), without any substantial changes." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740 (3d ed. 2015). Cases referencing the pre-2010 version of the rule cite subsection (f).

[23]*Jensen v. Redev. Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993) (citations omitted).

[24]*Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015)).

[25]*Garcia v. U.S. Air Force*, 533 F.3d 1171, 1179 (10th Cir. 2008) (quoting *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1308 (10th Cir. 2007)).

[26]*Jensen*, 998 F.2d at 1554 (citing *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264–65 (10th Cir. 1984)).

## III. Discussion

The Lanham Act, 15 U.S.C. § 1125(a), provides a federal cause of action for trade dress infringement.[27] "A product's trade dress 'is its overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques.'"[28] The New York common law tort of unfair competition allows a similar cause of action to prevent confusion between parties' products. Under New York law, "the essence of unfair competition . . . is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods."[29] Essense moves for summary judgment on two grounds: (1) JY's trade dress claims must fail because the trade dress features alleged in the Complaint and utility patent applications are functional; and (2) JY's trade dress claims are preempted by the Patent Clause of the U.S. Constitution. The Court addresses the issues in reverse order.

### A. Preemption

Essense argues that because JY alleges that its trade dress protection and design patents cover the same articles of manufacture, the Patent Clause prohibits JY from claiming both state and federal trade dress protection. This argument is not well taken.

First, as JY notes, Essense cites to a number of largely pre-Lanham Act cases in support of its state law trade dress preemption argument.[30] In the *Sears-Compco* decisions, the Supreme Court held that a state cannot use unfair competition law to protect articles within the scope of

---

[27]*Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

[28]*Id.* (quoting *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002)).

[29]*Int'l Diamond Imps., Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 514 (S.D.N.Y. 2014) (internal quotations omitted) (quoting *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 447 (S.D.N.Y. 2011)).

[30]*See* Doc. 90 at 12–14.

6

patentable subject matter because this protection "clashes with the objectives of the federal patent laws."[31] In *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, the Supreme Court retreated from that rigid view of federal preemption under the patent laws, holding that the patent clause does not explicitly or implicitly prohibit a state "from offering limited protection which does not impermissibly interfere with the federal patent scheme."[32] Thus, a state may, without conflicting with patent law, give limited protection to a particular design to prevent consumer confusion.[33] In this case, the standard for a showing of trade dress infringement under New York common law is similar to that of the Lanham Act and does not go beyond the limited regulation permitted by *Bonito Boats*.[34]

Second, the authority and cases relied on by Essense do not support its argument that JY's federal Lanham Act trade dress claims are preempted by the Patent Clause. Simply put, the *Sears-Compo* federal-state preemption rationale has no application to a federal statute like the Lanham Act. Essense's suggestion that the law precluding dual protection for both design patent and trade dress is settled and that courts have strayed from Supreme Court precedent is without merit. Essense inaccurately quotes McCarthy on Trademarks in support, relying only on a favorable proposition that goes on to state:

> In the early years of the Lanham Act, the Patent Office held that a configuration covered by a design patent was unregistrable as a trademark. But by 1959, the Office had changed that position.

---

[31]*See Sears, Robuck & Co. v. Stiffel Co.*, 376 U.S. 225, 230–31 (1964) ("[W]hen the patent expires the monopoly created by it expires, too, and the right to make such an article—including the right to make it in precisely the shape it carried when patented—passes to the public.") (citing *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 120–22 (1938))); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 237–38 (1964) ("When an article is unprotected by a patent or copyright, state law may not forbid others to copy the article.").

[32]489 U.S. 141, 165 (1989).

[33]*Id.* at 157–58.

[34]*See Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 250 (S.D.N.Y. 2004) (citation omitted). As noted, the Court previously granted Essense's motion to dismiss JY's state common law claims for unfair competition, unfair business practices, and unjust enrichment. Doc. 72.

> Today, it is clear that the law permits dual protection from both
> design patent and trademark law for both registered and
> unregistered marks.[35]

Citing the 2001 Supreme Court decision in *TrafFix Devices, Inc. v. Marketing Displays, Inc.*,[36] Essense further argues that because JY alleges that its trade dress protection and design patents cover the same articles, the Patent Clause prohibits JY from claiming trade dress protection. In *TrafFix*, the Court addressed a circuit split on the issue of whether "the existence of an expired utility patent foreclose[s] the possibility of the patentee's claiming trade dress protection in the products' design."[37] As the Court recognized, this issue raised policy considerations concerning how patent and trade dress law should interact: "Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products. In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying."[38] The Court held that while prior patents on a product's design do not foreclose the possibility of obtaining trade dress protection, patents nevertheless have "vital significance" in trade dress functionality analysis, and that a "utility patent is strong evidence that the features therein claimed are functional."[39] Prior patents thus add "great weight to the statutory presumption that features [of the product] are deemed functional until proved otherwise by the party seeking trade dress protection."[40]

The Court ultimately found that the feature on which trade dress protection was sought was "the reason the device works," and thus functional, and that plaintiff was prevented from

---

[35] 1 MCCARTHY ON TRADEMARKS, § 7:91 (5th ed. 2018) (collecting cases).

[36] 532 U.S. 23 (2001).

[37] *Id.* at 28 (citations omitted).

[38] *Id.* at 29.

[39] *Id.*

[40] *Id.* at 30.

asserting trade dress protection on it.[41]  Contrary to Essense's argument, however, the Court did not hold that the Patent Clause prohibits JY from claiming dual protection from both design patent and trademark law.  The complete quote from *TrafFix* states:

> TrafFix and some of its amici argue that the Patent Clause of the Constitution, Art. I, § 8, cl. 8, of its own force, prohibits the holder of an expired utility patent from claiming trade dress protection. We need not resolve this question. If, despite the rule that functional features may not be the subject of trade dress protection, a case arises in which trade dress becomes the practical equivalent of an expired utility patent, that will be time enough to consider the matter.[42]

Instead, the Court found that "it is the functionality rule that mediates conflicts between patent and trade dress law," leaving the issue open.[43]  Thus, Essense both misrepresents the quoted text and mischaracterizes TrafFix's argument as legal authority on the preemption issue.

Finally, it bears noting that Essense's preemption argument fails to reconcile numerous cases on appeal at the Federal Circuit addressing both design patent and trade dress claims.[44]  Summary judgment is thus denied on grounds of preemption.

### B. Functionality

Essense also moves for summary judgment on the issue of nonfunctionality.  JY's Rule 56(d) motion requires the Court to decide whether factual issues justify its request for additional discovery.

---

[41] *Id.* at 33–34.

[42] *Id.* at 35 (internal citations omitted).

[43] 1 MCCARTHY ON TRADEMARKS, § 7:89.70 (5th ed. 2018) "[I]n the author's opinion, the implicit message of the *TrafFix* decision is that the functionality rule is an adequate safeguard to ensure that there is no conflict between patents and trade dress." *Id.*

[44] *See, e.g., Evans v. Bldg. Materials Corp. of Am.*, 858 F.3d 1377, 1379 (Fed. Cir. 2017); *Apple Inc. v. Samsung Elecs. Corp. of Am.*, 735 F.3d 1352, 1355 (Fed. Cir. 2013).

"The trade dress of a product consists of its 'total image and overall appearance,' including 'its size, shape, color or color combinations, texture, graphics, or even particular sales techniques,'"[45] To prevail on a trade dress infringement claim under the Lanham Act, a plaintiff must show: "(1) The trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) There is a likelihood of confusion among consumers as to the source of the competing products; and (3) The trade dress is nonfunctional."[46] The elements of an unfair competition claim under New York law are essentially identical to the elements of an unfair competition claim under the Lanham Act, namely that a plaintiff must show (1) it owns a valid, protectable trade dress and (2) the defendant's actions are likely to cause confusion,[47] except the plaintiff must also show "bad faith by the infringing party."[48]

JY asserts that its aesthetic, ornamental trade dress includes, as a "special feature," front and back panels of fabric that are stitched into the waist seam and naturally hang down the skirt of the dress, overlaying the full length of the skirt ending just above the bottom hemline. The panels "seamlessly blend" with the dress, regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress. When the panels are in the hanging position as an overlay of the skirt, they layer over the full length of the entire skirt and "seamlessly blend with the natural and gentle soft folds," creating the illusion that the panels and the skirt are integrated. This "seamless blending" of the panels

---

[45]*Ashley Furniture Indus., Inc. v. SanGiacoma N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir. 1999) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992)).

[46]*Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1227 (citing *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002); *see Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 250 (S.D.N.Y. 2004) (citation omitted); *see also* 15 U.S.C. § 1125(a)(3).

[47]*Int'l Diamond Imps., Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 524 (S.D.N.Y. 2014) (quoting *Estate of Ellington ex rel. Ellington v. Harbrew Imps. Ltd.*, 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011)).

[48]*Id.* (quoting *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 541 (S.D.N.Y. 2012)).

also occurs when the panels are raised over the bodice into different configurations of the dress, creating the illusion that the panels blend into the bodice, skirt, and/or entire dress to create a "singular, integrated look." The Court found that JY's description of "seamless blending" did not prevent the Court from finding, on a motion to dismiss, that JY had placed Essense on notice of its trade dress, but warned that as the case progressed, JY would be required to clearly and specifically articulate the meaning of "seamless blending" in a manner that is not contradictory and does not require analyses of beauty.[49]

Essense does not move for summary judgment on JY's articulation of its trade dress, but instead limits its motion to a single element of JY's trade dress claims: that the trade dress features alleged in the Complaint and utility patent applications are functional. There is a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection."[50]

Whether a trade dress is functional is a question of fact.[51] The Supreme Court has promulgated two tests for determining the functionality of a trade dress. First, under the "traditional test," a "'product feature is functional,' and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'"[52] Only if the feature or design is nonfunctional under the traditional test, do courts apply a second "competitive necessity" test, under which a product feature is functional if it "is one the

---

[49]Doc. 87 at 12–13.

[50]*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 30 (2001); *see Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000) (citing 15 U.S.C. § 1125(a)(3)). If a trade dress is registered, however, the burden of proof on functionality shifts to defendant as the party asserting nonfunctionality. MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 7:72 (5th ed. 2018). JY does not hold trade dress registrations in this case.

[51]*Brunswick Corp. v. Spirit Reel Co.*, 832 F.2d 513, 520 (10th Cir. 1987).

[52]*TrafFix*, 532 U.S. at 32 (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)); *Inwood Labs, Inc.*, 456 U.S. 844, 850 n.10 (1982).

'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'"[53]

Essense's motion challenges JY's unregistered trade dress under the traditional test for functionality. To determine whether a proposed mark is functional, the following four factors are considered: (1) the existence of a utility patent that discloses the utilitarian advantages of the design sought to be registered; (2) advertising by the applicant that touts the utilitarian advantages of the design; (3) facts pertaining to the availability of alternative designs; and (4) facts pertaining to whether the design results from a comparatively simple or inexpensive method of manufacture.[54] "The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather, functional elements that are separately unprotectable can be protected together as part of a trade dress."[55] As previously discussed, the existence of an expired utility patent is weighty evidence of functionality.[56]

The Court finds that Essense's motion for partial summary judgment has simply been filed too early for the Court to make an informed ruling. JY has persuaded the Court that several material questions of fact remain with respect to the issue of functionality. JY's counsel, Maurice Ross, filed a declaration outlining what areas require further discovery, noting the phased discovery strictly implemented by Judge Birzer, which has only recently been revised in

---

[53]*Id.* (quoting *Qualitex*, 514 U.S. at 165).

[54]*In re Becton, Dickson and Co.*, 675 F.3d 1368, 1374 (Fed. Cir. 2012) (citing *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340–41 (USCCPA 1982)).

[55]*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) (emphasis and internal quotation marks omitted); *Antioch Co. v. W. Trimming Corp.*, 347 F.3d 150, 157–58 (6th Cir. 2003).

[56]*TrafFix*, 523 U.S. at 29–30.

light of this Court's claim construction order.[57] This is not a case where fact discovery is merely incomplete; fact discovery had not even commenced. The close of fact discovery is over five months away, expert discovery must be completed by the end of 2020, and the dispositive motion deadline does not expire for nearly a year.[58] Indeed, when Essense filed its motion, no fact discovery had commenced as the Court had implemented phased discovery strictly limited to claim construction. In his declaration, Mr. Ross outlines the proposed discovery JY intends to pursue and explains what the intended discovery will likely reveal that will assist JY in defeating Essense's motion. A Rule 56(d) ruling is therefore appropriate.

In opposition to JY's motion, however, Essense argues that JY has not met its burden under Rule 56(d) because all of the evidence needed to prove nonfunctionality—the utility patent applications—is in JY's possession. The gravamen of Essense's argument that JY's claim fails as a matter of law is that JY has "conceded" or "admitted," in its applications to the U.S. Patent and Trademark Office ("PTO") for utility patents, that each and every feature claimed as its trade dress is functional. Essense cites an opinion from the Federal Circuit holding that "an applied-for utility patent that never issued has evidentiary significance for the statements and claims made in the patent application concerning the utilitarian advantages, just as an issued patent has evidentiary significance."[59] That case, however, involved a determination that the Trademark Trial and Appeal Board may consider the content of an abandoned patent application, and Essense cites no authority requiring this Court to do the same in a case brought under the Lanham Act.[60] As this Court previously held, although a utility patent is "strong evidence that

---

[57] Doc. 99-4.

[58] Doc. 140.

[59] *Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1279 (Fed. Cir. 2002).

[60] *See M3Girl Designs, LLC v. Blue Brownies, LLC*, No. 3:09-cv-2390-F, 2012 WL 12885058, at *2 (N.D. Tex. Mar. 9, 2012) (distinguishing *Valu Eng'g, Inc.*, 278 F.3d at 1279).

the [elements] therein claimed are functional,"[61] *pending* applications do not bar a plaintiff, as a matter of law, from asserting the trade dress claim.[62] Further, JY argues that it has not claimed as its trade dress the same elements that are claimed in the patents, specifically the concept of "seamless blending." While JY concedes that the convertible dress is functional, the concept of "seamless blending" is nowhere addressed in the utility patent applications.[63] Moreover, as JY asserts, it obtained a design patent covering the overall ornamental design for the bridesmaid dresses, and design patents are probative of nonfunctionality.[64] Thus, JY's trade dress infringement claims do not fail as a matter of law and functionality remains a question of fact where discovery is needed.

JY addresses nonfunctionality in Mr. Ross's declaration and sets forth the necessary discovery that will be important to this element of its trade dress claims. In addition, JY intends to present expert testimony on the issue of nonfunctionality, which necessarily requires review of evidence.[65] The Court finds that all of the requirements have been met to invoke Rule 56(d). The motion for summary judgment is premature and it is clear that JY requires discovery in order

---

[61]Doc. 87 at 15.

[62]*Id.* at 15–16 (citing *Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, No. 3:17-cv-3197-M, 2018 WL 3330025, at *3 n.5 (N.D. Tex. June 6, 2018)). *See TrafFix*, 552 U.S. at 34 (recognizing the significance of a utility patent to the issue of functionality, but also considering the case where the manufacturer seeks to protect arbitrary, incidental, or ornamental aspects of a product found in the patent claims; "[t]here the manufacturer could perhaps prove that those aspects do not serve a purpose within the terms of utility patent.").

[63]Essense represents that the language "seamless blending is a term of art well known in the fashion industry" appears in the '422 Patent Application. Doc. 90 at 26. As JY points out, this language does not appear in any claim. Doc. 90-5 and 6.

[64]*See Blumenthal Distr., Inc. v. Herman Miller, Inc.*, No. ED CV14-01926 JAK, 2016 WL 6948339, at *10 (C.D. Calif. Mar. 31, 2016) (citing *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., Ltd.*, 668 F.3d 677, 685 (9th Cir. 2012), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1180–81 (9th Cir. 2016)) (holding a design patent can help rebut the functionality defense but is insufficient, without more, to prove a design is nonfunctional). *Accord* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 7:93 (5th ed. 2018).

[65]*See Blumenthal Distr., Inc.*, 2016 WL 6948339 at *10 (denying summary judgment on nonfunctionality issue when defendant provides expert witness on design to review utility patents to opine whether they claimed the particular nonfunctional aesthetic of the chairs at issue).

to controvert the facts asserted by Essense in its motion. It is therefore in the interest of judicial efficiency to deny Essense's motion for summary judgment on this issue without prejudice under Fed. R. Civ. P. 56(d)(1), subject to refiling after the parties have had an opportunity to conduct fact and expert discovery.

**IT IS THEREFORE ORDERED BY THE COURT** that Essense's Motion for Partial Summary Judgment (Doc. 89) on Counts I and II is **denied** on the issue of preemption and **denied without prejudice** on the issue of nonfunctionality under Rule 56(d).

**IT IS SO ORDERED.**

Dated: March 24, 2020

                                                          s/ Julie A. Robinson
                                                          JULIE A. ROBINSON
                                                          CHIEF UNITED STATES DISTRICT JUDGE